# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

National Labor Relations Board,
*Petitioner and Cross-Respondent,*

vs.

ArrMaz Products Inc.,
*Respondent & Cross-Petitioner.*

---

On Application for Enforcement and
Cross-Petition for Review of
an Order of the National Labor Relations Board

---

**BRIEF OF RESPONDENT AND CROSS-PETITIONER
ARRMAZ PRODUCTS INC.**

---

Bernard J. Bobber
bernard.bobber@ogletree.com
Jesse R. Dill
jesse.dill@ogletree.com
David M. DeMaio
david.demaio@ogletree.com
Brian Hayes
brian.hayes@ogletree.com

Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI  53205

Telephone: 414-239-6400
Facsimile:  414-755-8289

Attorneys for Respondent ArrMaz Products, Inc.

_____

U.S. Court of Appeals Docket No. 23-10291
NLRB Case No. 372 NLRB No. 12

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

National Labor Relations Board,
*Petitioner and Cross-Respondent & Cross-Respondent,*

vs.

ArrMaz Products Inc.,
*Respondent & Cross-Petitioner.*

---

On Application for Enforcement and
Cross-Petition for Review of
an Order of the National Labor Relations Board

---

## RESPONDENT AND CROSS-PETITIONER'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

---

Pursuant to 11th Cir. R. 26.1-2, Respondent ArrMaz Products Inc. hereby files its notice regarding Respondent's Certificate of Interested Persons and Corporate Disclosure Statement:

1.    **Certificate of Interested Persons**

The following constitute interested persons and entities in this case.

Arkema Delaware Inc. – Parent Corporation of Respondent. Pursuant to 11th Cir. R. 26.1-3(b), Respondent identifies that Arkema Delaware Inc. is wholly owned by Arkema Ameriques S.A.S, which in turn is wholly owned by Arkema S.A., which is publicly traded on the Euronext Paris stock exchange under stock symbol AKE.

Abruzzo, Jennifer A. – General Counsel, National Labor Relations Board

ArrMaz Products Inc. – Respondent

Bobber, Bernard J. – Counsel to Respondent

Burdick, Ruth E. – Counsel to Petitioner

Cohen, David – Regional Director (Region 12), National Labor Relations Board

DeMaio, David M. – Counsel to Respondent

Dheenan, Usha – Counsel to Petitioner

Dill, Jesse R. – Counsel to Respondent

Hayes, Brian – Counsel to Respondent

International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union – Charging Party and Intervenor

McFerran, Lauren – Chairman, National Labor Relations Board

National Labor Relations Board – Petitioner

Ogletree, Deakins, Nash, Smoak & Stewart, P.C. – Law Firm of Counsel to Respondent

Ring, John F. – former Member, National Labor Relations Board

Vehar, August Randall – Counsel to Charging Party and Intervenor International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union

Wilcox, Gwynn A. – Member, National Labor Relations Board

## 2.    Corporate Disclosure Statement

The parent corporation of Respondent ArrMaz Products Inc. is Arkema Delaware Inc. Arkema Delaware Inc. is wholly owned by Arkema Ameriques S.A.S, which in turn is wholly owned by Arkema S.A., which is publicly traded on the Euronext Paris stock exchange the under stock symbol AKE.

**STATEMENT REGARDING ORAL ARGUMENT**

This case presents important issues concerning whether the NLRB should open and count the ballots of employees described as eligible to vote in a Stipulated Election Agreement between an employer and a union to determine whether a majority of voting unit employees chose to certify the union as their collective bargaining representative. Respondent and Cross-Petitioner ArrMaz Products Inc. respectfully requests oral argument because it will assist this Court's understanding of the facts, issues, and law.

# Table of Contents

Certificate of Interested Persons ......................................................... C-1

Corporate Disclosure Statement........................................................ C-3

STATEMENT REGARDING ORAL ARGUMENT ............................................i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF CITATIONS ........................................................................iv

STATEMENT REGARDING ADOPTION BRIEFS OF OTHER PARTIESvii

STATEMENT OF SUBJECT-MATTER AND APPELLATE
    JURISDICTION ................................................................................ viii

STATEMENT OF THE ISSUE.................................................................1

STATEMENT OF THE CASE...................................................................1

    A.    Course of Proceedings and Disposition Below.......................1

    B.    Statement of Facts .................................................................10

    C.    Statement of the Standard of Review ...................................12

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT AND CITATIONS OF AUTHORITY .........................16

    I.    The Court Should Reject the NLRB's Application for
        Enforcement Because Its Decision and Process Below is
        Incomplete. ............................................................................17

    II.    The Stipulated Election Agreement Clearly and
        Unambiguously Requires the NLRB to Count the Votes of *All*
        Maintenance Technicians Working at the Mulberry, Florida
        Facility. ..................................................................................19

    III.    Extrinsic Evidence Also Conclusively Demonstrates the Parties
        Intended to Include the Single Employer's Maintenance
        Technicians in the Voting Unit..............................................27

**IV.    Alternatively, if the Court concludes that the Parties' Intent on This Material Issue is Neither Clear nor Readily Discernible, Then it Should Conclude That There Was No Meeting of the Minds Sufficient to Form a Valid Contract.** .........................................**34**

**CONCLUSION** ...............................................................................**36**

**CERTIFICATE OF COMPLIANCE** .................................................**39**

**CERTIFICATE OF SERVICE** .........................................................**40**

# TABLE OF CITATIONS

**Page(s)**

## Cases

*American Federation of Labor v. NLRB*,
 308 U.S. 401 (1940)..............................................................................7

*Associated Milk Producers, Inc. v. NLRB*,
 193 F.3d 539 (D.C. Cir. 1999)............................................................16

*The Boeing Company*,
 368 NLRB No. 67 (2019) ...................................................................24

*Bolivar-Tees, Inc.*,
 349 NLRB 720 (2007) .........................................................................22

*Brickell Financial Servs. – Motor Club, Inc. v. Road Transportation, LLC*,
 298 So. 3d 62 (Fla. Dist. Ct. App. 2020)............................................34

*Buchanan v. NLRB*,
 597 F.2d 388 (4th Cir. 1979) .................................................................x

*Caesar's Tahoe*,
 337 NLRB 1096 (2002) ...........................................13, 16, 24, 25, 26

*Dear v. Q Club Hotel, LLC*,
 933 F.3d 1286 (11th Cir. 2019) ..........................................................12

*Domsey Trading Corp.*,
 357 NLRB 2161 (2011) .......................................................................21

*Ex-Cell-O Corp.*,
 185 NLRB 107(1970) ............................................... vii, ix, xi, 9, 10, 18

*Excelsior Underwear, Inc.*,
 156 NLRB 1236 (1966) ...................................................................3, 32

*Griffith Co. v. NLRB*,
 545 F.2d 1194 (9th Cir. 1976) ...............................................................x

iv

*Holo-Krome Co. v. NLRB*,
    954 F.2d 108 (2d Cir. 1992) ...............................................................17

*King v. Bray*,
    867 So. 2d 1224 (Fla. Dist. Ct. App. 2004)........................................34

*Kovach v. NLRB*,
    229 F.2d 138 (7th Cir. 1956) ................................................................x

*M&G Polymers USA, LLC, v. Tackett*,
    574 U.S. 427 (2015)..............................................................................19

*Naperville Ready Mix, Inc.*,
    329 NLRB 174 (1999) ..........................................................................22

*NLRB v. Barker Steel, Inc.*,
    800 F.2d 284 (1st Cir. 1986)..................................................25, 26, 27

*NLRB v. G & T Terminal Packaging Co., Inc.*,
    246 F.3d 103 (2d Cir. 2001) ...............................................................17

*NLRB v. Ideal Laundry & Dry Cleaning Co.*,
    330 F.2d 712 (10th Cir. 1964) .............................................................15

*NLRB v. Imperial House Condominium, Inc.*,
    831 F.2d 999 (11th Cir. 1987) .............................................................17

*PCC Structurals*,
    365 NLRB No. 160 (2017) ...................................................................24

*Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex
Const. Co., Inc.*,
    932 F.2d 1443 (11th Cir. 1991) ...........................................................29

*Ridgewood Health Care Ctr., Inc. v. NLRB*,
    8 F.4th 1263 (11th Cir. 2021) ..............................................................12

*Sun Life Assurance Co. of Canada v. Imperial Premium Finance,
LLC*,
    904 F.3d 1197 (11th Cir. 2018) ...........................................................34

**Statutes**

29 U.S.C. § 153 ................................................................... viii

29 U.S.C. § 158 ................................................................. viii, 7

29 U.S.C. § 158(a)(1) and (5) ............................... viii, 7, 8, 9

29 U.S.C. § 159 ............................................................. viii,4

29 U.S.C. § 160(e) ................................................ viii, x, 17

29 U.S.C. § 160(f) ..............................................................6, 7

**Regulations**

29 C.F.R. §§ 102.11 – 102.114 ...........................................5

29 C.F.R. § 102.24 ..............................................................8

29 C.F.R. § 102.50 ..............................................................8

29 C.F.R. § 102.62(a) .........................................................35

79 FR 74307, 74335 (2014) (to be codified at 29 C.F.R. pts. 101, 102, and 103) .........................................................................32

**Other**

(Sept. 2020) (available at https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides)..........................................3

## STATEMENT REGARDING ADOPTION
## BRIEFS OF OTHER PARTIES

At the time of this filing, Respondent and Cross-Petitioner ArrMaz Products Inc. does not adopt briefs or portions of briefs of any other party.

In the lower proceedings, The Council on Labor Law Equality, The Coalition for a Democratic Workplace, Associated Buildings and Contractors, The Chamber of Commerce of the United States of America, The National Association of Manufacturers, and The National Association of Wholesaler-Distributors filed *amicus curie* briefs opposing the National Labor Relation Board ("NLRB") General Counsel's argument for extraordinary remedies and request for the NLRB to overturn *Ex-Cell-O Corp.*, 185 NLRB 107 (1970). (R. 2365-87.) The National Labor Relations Board "decided to sever this issue and retain it for further consideration to expedite the issuance of this decision regarding the remaining issues in this case." (R. 2442.) Due to the NLRB's decision to hold this issue in abeyance, the extraordinary remedy issue is not currently before this Court, and raises a serious question discussed below as to whether the NLRB's incomplete decision is a final Order over which this Court may exercise jurisdiction. Thus, Respondent and Cross-Petitioner reserves the right to adopt the filed *amicus curie* briefs described above if and when the issue of remedies is before the Court.

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

**A.**     **Jurisdiction of the National Labor Relations Board**. On August 25, 2021, the National Labor Relations Board ("NLRB"), Region 12 Regional Director, pursuant to authority granted to him under 29 U.S.C. §§ 153 and 159, certified the International Chemical Workers Union Council of the United Food & Commercial Workers International Union, AFL-CIO (the "Union") as the collective bargaining representative of a unit of employees at ArrMaz in NLRB Case No. 12-RC-255997. (R. 1655-56.) On February 17, 2022, the NLRB denied ArrMaz Products Inc.'s ("ArrMaz") Request for Review of the Regional Director's Decision on Challenged Ballots and Certification of Representative. (R. 2053.) On April 14, 2022, Union filed its Charge Against Employer against ArrMaz Products, Inc., NLRB Case No. 12-CA-294086, pursuant to 29 U.S.C. § 158, alleging ArrMaz refused and failed to recognize and bargain with it. (R. 2054.) On December 6, 2022, the NLRB granted the Union's motion for summary judgment in Case No. 12-CA-294086. (R. 2441-43.)

**B.**     **Appellate Jurisdiction**. On January 31, 2023, the NLRB applied to this Court for enforcement of its order in Case No. 12-CA-294086. (Dkt. 1.) ArrMaz filed a Cross Petition for Review of the same order. (Dkt. 13.) The NLRB urges this Court to accept jurisdiction in this matter under 29 U.S.C. § 160(e), but ArrMaz disputes that the exercise of such jurisdiction is appropriate.

As more fully discussed below, while the Court has jurisdiction over NLRB orders generally, ArrMaz respectfully submits the Court should, as a threshold matter, remand this case to the NLRB since the order it seeks to enforce is incomplete, the NLRB having severed and held in abeyance critical components of the order relating to remedy. For obvious reasons of fairness, cost, judicial and party economy, as well as the law of this Circuit, the Court should not allow the NLRB to engage in such wasteful and prejudicial piecemeal litigation.

The severed remedial decision involves an issue of enormous consequence to national labor policy and contemplates the reversal of more than 50 years of unbroken and controlling precedent. In its Motion for Summary Judgment, the General Counsel of the NLRB "request[ed] that [the NLRB] adopt a compensatory remedy requiring the Respondent to make its employees whole for the lost opportunity to bargain at the time and in the manner contemplated by the [National Labor Relations] Act. To do so would require overruling *Ex-Cell-O Corp.*, 185 NLRB 107 (1970), and outlining a methodological framework for calculating such a remedy." (R. 2442.) In refusing to issue a complete final order that includes resolution on the ground-breaking damages remedy sought by the General Counsel, the NLRB is presently denying the Court an opportunity to review the extraordinary change in law it considers making in the present case were it to overturn more than five decades of consistent and controlling precedent first established in *Ex-Cell-O*

*Corp.* The NLRB did not explain its reasoning to issue such piecemeal decisions and no good cause exists for this procedure.

**C.    Timeliness**. The NLRB entered its order for ArrMaz to recognize and bargain with Union on December 6, 2022. (R. 2441.) On January 31, 2023, the NLRB filed its Application for Enforcement of an Order of the NLRB. (Dkt. 1.) There is no time limit by when applications for enforcement filed pursuant to 29 U.S.C. § 160(e) must be filed by the NLRB. *Buchanan v. NLRB*, 597 F.2d 388, 392 (4th Cir. 1979) (citing *Griffith Co. v. NLRB*, 545 F.2d 1194 (9th Cir. 1976); *Kovach v. NLRB*, 229 F.2d 138 (7th Cir. 1956).

## STATEMENT OF THE ISSUE

Whether the NLRB improperly excluded and refused to count the votes of maintenance technicians Jesse Hargadine and Robert Strickland in a manual ballot election administered by the NLRB when the voting unit agreed to by the parties in the Stipulated Election Agreement includes maintenance technicians who work at the Employer's Mulberry, Florida facility, and where the NLRB has ruled, and the parties agree, that the corporate entities housed at the Mulberry facility constitute a single employer.

## STATEMENT OF THE CASE

This case asks the Court to determine whether the NLRB improperly excluded the votes of two maintenance technician employees cast in an election conducted pursuant to a Stipulated Election Agreement to determine whether a union should be certified as its representative for collective bargaining for a unit of employees.

### A.    Course of Proceedings and Disposition Below.

On February 10, 2020, the Union filed a petition with the NLRB to hold an election to determine whether it should be certified as the collective bargaining representative of "Production, Warehouse, Rail Side Workers, **Maintenance** & **Electrical Workers**" at "Arkema." (R. 2151; emphasis supplied.) The petition was assigned Case No. 12-RC-255997 by the NLRB, Region 12. (*Id.*) In the petition, the

Union identified the unit it sought to represent as consisting of 51 employees. (*Id.*, at Sect. 6a.)

On February 18, 2020, the NLRB, Region 12, Regional Director, David Cohen, approved a Stipulated Election Agreement in Case No. 12-RC-255997 recommended by Region 12 Field Attorney Caroline Leonard, in which the employer was not specifically defined, but was referenced as ArrMaz Products, Limited Partnership[1] and the petitioner was the Union. (R. 1485-88.)

The Stipulated Election Agreement included a "Commerce" description of the Employer at Section 2, which stated,

> ArrMaz Products, Limited Partnership is a Delaware limited partnership with an office and place of business located at 4800 State Road 60 E. Mulberry, Florida, and is engaged in the business of manufacturing **and providing** specialty chemical additives to the fertilizer manufacturing, mining, and asphalt paving industries. During the past 12 month period, in conducting these business operations described above, the Employer purchased **and received** at its Florida facilities goods valued in excess of $50,000 directly from points located outside the State of Florida.

(R. 1485.) (emphasis added). Additionally, the Stipulated Election Agreement identified the "Unit and Eligible Voters" who would vote in an election to determine whether the Union would be certified as their collective bargaining representative:

---

[1] On July 21, 2020, ArrMaz Products Limited Partnership changed its name to ArrMaz Products Inc.

> **Included**: All full-time and regular part-time production operators, sulfonation operators, railside operators, small blends and warehouse operators, *maintenance technicians*, electrical and instrumentation technicians, custodians and parts clerks employed by the Employer at its Mulberry, Florida facility.
>
> Excluded: All other employees, professional laboratory technicians, quality assurance laboratory technicians, engineers, office clerical employees, managers, guards, and supervisors as defined in the Act.

(R. 1485-86.) (bold in original; italics supplied).) Within two business days after the Regional Director's approval of the Stipulated Election Agreement, as required by the Agreement and NLRB election rules, ArrMaz provided a list of eligible voters, with names, , and contact information, to the Regional Director and the Union. (R. 1507, 2153, 2156.) The voter eligibility, or *Excelsior,*[2] list, specifically contained the names of the two contested voters.[3]

---

[2] The voter list required to be produced in election proceedings is commonly referred to as the Excelsior list after the case in which the NLRB implemented this requirement, *Excelsior Underwear, Inc.*, 156 NLRB 1236, 1240-41, 1242-43, 1246 (1966).

[3] ArrMaz included the two challenged voters at issue in this matter, Jesse Hargadine and Robert Strickland, on the voter list it submitted to the Union and filed with the NLRB. Without clear explanation, the Board did not include this voter list in the agency record filed with this Court (*See* Dkt. 18-1.) Regardless, no party has ever contested the fact that ArrMaz included Hargadine and Strickland on the timely-served voter list. The Board Agent conducting the election would have initiated a Board challenge to the ballots if the employees' names were not on the voter eligibility list served weeks earlier. NLRB Casehandling Manual, Part 2, § 11322.1 (Sept. 2020) (available at https://www.nlrb.gov/guidance/key-reference-materials/manuals-and-guides).

Pursuant to the Stipulated Election Agreement, Region 12 administered a manual election on March 12 and March 13, 2020. (R. 2158.) For the Union to be certified as the collective bargaining representative, a majority of employees choosing to vote (*i.e.* 50% plus 1) needed to vote in favor of the Union. 29 U.S.C. § 159(a). Of the 42 eligible voters at the time of the election, two voters abstained from voting. Of the 40 voters who cast ballots, 20 employees voted for representation by the Union, 18 employees voted against representation by the Union, and two votes were not counted and remained in sealed envelopes because they were challenged by the Union. (R. 2159.) Specifically, the Union challenged the votes of maintenance technicians Jesse Hargadine and Robert Strickland. (R. 2159.) The challenges to the votes were determinative of the election outcome because if Hargadine and Strickland voted against representation by the Union, then the Union as petitioner would not have received a majority of the votes cast (*i.e.* 20 votes in favor, 20 votes against).The Union challenged these votes based on a single argument—the Union objected that Hargadine and Strickland were employees of AMP Trucking, Inc., a subsidiary of and single employer with ArrMaz that is located at the same Mulberry, Florida facility. (R. 1549.) The Union has never disputed that both Hargadine and Strickland held the job of "maintenance technicians" and were working at the "Mulberry, Florida facility" per the unit description in the Stipulated

Election Agreement. Nor has the Union ever claimed that these employees' names were not on the voter eligibility list it received weeks before the election.

ArrMaz opposed the Union's challenges to both Hargadine's and Strickland's votes. (*Id*.) To resolve the challenged ballots, an NLRB hearing officer conducted a hearing from September 24, through October 1, 2020. (R. 2159.) On January 29, 2021, the Hearing Officer, NLRB Field Attorney Marinelly Maldonado, issued her Hearing Officer's Report on Challenged Ballots (the "Report"). (R. 1549-77.) In her Report, the Hearing Officer concluded that "the Employer and AMP constitute a single integrated enterprise" but "the parties only intended to include certain employees employed by the Employer, not by AMP." (R. 1577.) The Hearing Officer recommended the challenges to the ballots of Hargadine and Strickland be sustained and not counted, thus, disenfranchising both employees. (*Id*.)

On March 12, 2021, pursuant to 29 C.F.R. §§ 102.11 – 102.114, ArrMaz filed its Employer's Exceptions to Hearing Officer Recommended Decision on Challenged Ballots. (R. 1580-1606.) Following the parties' briefing, on August 25, 2021, NLRB Region 12 Regional Director David Cohen issued his Regional Director's Decision on Challenged Ballots and Certification of Representative (the "Regional Director's Decision"). (R. 1619-56.) The Regional Director's Decision sustained the Union's challenges to the votes of Hargadine and Strickland and certified the Union as the exclusive bargaining representative of the voting unit

employees. (R. 1655.) The Regional Director also reasoned that although "AMP and the Employer constitute a single employer[,]" (R. 1640.), "the plain language of the Stipulated Election Agreement . . . establishe[d] the parties' unambiguous intention to exclude AMP maintenance technicians from the unit." (R. 1643.)

As demonstrated by its inclusion of Hargadine and Strickland on the voter list, ArrMaz never had the "intention" attributed to it by the Regional Director. Rather, ArrMaz always intended for all maintenance technicians working at the Mulberry, Florida facility to be included in the unit and eligible to vote. There is no evidence that the Employer "intended" otherwise. Clearly, the Union likewise intended to include Hargadine and Strickland since it raised no objection to their inclusion on the voter list until the moment they sought to cast their ballots.

Following issuance of the Regional Director's Decision, ArrMaz timely filed a Request for Review with the NLRB. On February 17, 2022, the NLRB issued its Order in response to ArrMaz's Request for Review. (R. 2053.) In a single page, the NLRB's Order stated that ArrMaz "raises no substantial issues warranting review," with a footnote explanation that it relied solely on the Regional Director's determination that "the stipulated election agreement expressed the parties' intent in clear and unambiguous terms to exclude the two challenged employees." (*Id.*)

It bears mention that only a "final order" of the NLRB may be appealed by an employer to a United States court of appeals. 29 U.S.C. § 160(f). An order that

certifies a bargaining representative is not a final order under § 160(f). *See American Federation of Labor v. NLRB*, 308 U.S. 401, 411 (1940). Thus, the only way for an employer to seek court review of the NLRB's decision affirming certification of the Union as the bargaining representative of the voting unit employees is to refuse to recognize and bargain with the union, and wait for that union to file a Charge Against Employer alleging a violation of 29 U.S.C. § 158. (*See* R. 2443, Member John F. Ring dissenting and explaining, "Refusing to bargain is the only way that the Respondent could obtain judicial review of the representation-case decision, a procedure deliberately chosen by Congress and embodied in the National Labor Relations Act.")

On February 24, 2022, the Union submitted to ArrMaz a request for information that it described as a necessary precursor to prepare for collective bargaining. (R. 2235-43.) On April 11, 2022, ArrMaz responded to the Union, confirming that it respectfully declined to recognize and bargain with the Union as the certified unit's collective bargaining representative because "the Regional Director and the NLRB erred by granting the Union's objection and ignoring the votes of employees Jesse Hargadine and Robert Strickland." (R. 2244-45.) ArrMaz explained that it refused to recognize the Union as the collective bargaining representative of employees so that "courts can determine what voting unit is

appropriate for bargaining, and specifically whether the votes of Mr. Hargadine and Mr. Strickland were improperly ignored." (R. 2244.)

On April 14, 2022, the Union filed a Charge with the NLRB against ArrMaz, which the NLRB assigned as Case No. 12-CA-294086 (the "Charge"). (R. 2054.) In the Charge, the Union alleged ArrMaz violated § 158(a)(5) of the Act when it refused to recognize and bargain with it as the certified exclusive bargaining agent of the voting unit employees. (*Id*.)

On May 4, 2022, NLRB Region 12 Regional Director issued the Complaint and Notice of Hearing in Case No. 12-CA-294086. (R. 2055-69.) On June 8, 2022, the NLRB Region 12 Regional Director issued an Amended Complaint and Notice of Hearing. (R. 2077-85.)

On July 1, 2022, the NLRB General Counsel filed its Motion to Transfer Case to the Board and for Summary Judgment, pursuant to 29 C.F.R. §§ 102.24, 102.50. (R. 2092-2149.) In addition to seeking a standard order that ArrMaz violated 29 U.S.C. §§ 158(a)(1) and (5) when it refused to recognize or bargain with the Union, the General Counsel's Motion asked the Board to "use this case as an opportunity to revisit outdated precedent" and "adopt[] a make-whole remedy requiring employers to make their employees whole for the lost opportunity to bargain at the time and in the manner contemplated by the Act." (R. 2100.) In seeking such relief, the General Counsel acknowledged that she was asking the NLRB "to overrule its decision in

*Ex-Cell-O Corp.*, 185 NLRB 107 (1970)," and, thus, asked the NLRB to reverse over five decades of standing precedent that employers have relied countless times to access the courts for review of a certification decision, utilizing the only procedure "deliberately chosen by Congress" for this purpose. (*See* R. 2443, Member John F. Ring dissenting.)

On July 22, 2022, the NLRB issued its Order Transferring Proceeding to the Board and Notice to Show Cause. (R. 2290.) Following the parties' and *amicus curie* briefing,[4] the NLRB issued its Decision and Order in Case No. 12-CA-294086. (R. 2441-51.) The NLRB's Decision and Order was a 2-1 split ruling, with Chairwoman Lauren McFerran and Member Gwynn A. Wilcox writing for the majority and Member John Ring dissenting in part. (*Id*.) With regard to the issue of whether ArrMaz refused to recognize or bargain with the Union, as all expected, the NLRB concluded that ArrMaz violated 29 U.S.C. § 158(a)(1) and (5) when it refused to recognize and bargain with the Union since February 24, 2022. (R. 2442.) On the issue of the remedy requested by the General Counsel, however, the Board "decided to sever this issue and retain it for further consideration to expedite the issuance of

---

[4] Parties that filed *amicus curie* briefs included The Council on Labor Law Equality, The Coalition for a Democratic Workplace, Associated Buildings and Contractors, The Chamber of Commerce of the United States of America, The National Association of Manufacturers, and The National Association of Wholesaler-Distributors.

this decision regarding the remaining issues in this case[,]" leaving it unresolved, for now. (*Id.*)

Member, and former Chairman, John Ring issued a lengthy dissent opposing the General Counsel's request for expansive remedies through the request to overturn *Ex-Cell-O Corp.* (R. 2443-51.) Member Ring's dissent explained in detail the procedural limits imposed on employers to challenge election certifications to obtain court review of an NLRB decision. This procedural background was complemented with a critique of the authority on which the General Counsel relied to support her request for precedent-defying remedies.

The NLRB's application for enforcement of its decision with this Court followed. (Dkt. 1.)

## B.    Statement of Facts

ArrMaz is a specialty chemical company that supplies custom-blended chemicals to the fertilizer, mining and road construction industries. (R. 96.) Arkema, Inc. acquired ArrMaz in July of 2019. (R. 106:25-107:5.)

ArrMaz wholly-owns its subsidiary AMP Trucking, Inc. ("AMP"). (R. 1505.) The "AMP" in AMP Trucking, Inc. stands for **A**rr**M**az **P**roducts. (R.100:10-12 (emphasis supplied).) Both companies operate out of the same facility in Mulberry, Florida. (R. 99:23-100:4.) AMP exclusively transports ArrMaz products and

ArrMaz raw materials from the ArrMaz facility to customers or other ArrMaz facilities. (R. 110:4-5; 152:20-23.)

The sole purpose for AMP's existence is to serve ArrMaz. (R. 110:4-5.) AMP was established for corporate tax and liability reasons because it owns tractors and trailers that transport chemicals across federal, state, and county roads. (R. 111:21-25; 112:1-2; 143:13-23; 163:4-14.) AMP supports its operation solely through funding provided by ArrMaz. (R. 187:15-17.) ArrMaz files a consolidated federal tax return that includes AMP. (R. 186:14-19.) AMP's accounting and human resource functions are performed by ArrMaz. (R. 108:4-15, 111:9-11.)

The Hearing Officer and Regional Director both agreed in lower proceedings that ArrMaz and AMP are a single employer, and neither the NLRB nor the Union have ever disagreed with that conclusion. (R. 1577, 1640, 2053.) In comparing the AMP maintenance technicians to the other employees in the voting unit, the Hearing Officer concluded their interests are consistent and aligned in multiple respects. The AMP maintenance technicians are functionally integrated with the other employees because they are "responsible for inspecting, maintaining, and repairing the mobile equipment needed by the employees in the petitioned-for unit to perform their work." (R. 1572.)

**C.    Statement of the Standard of Review**

The Court reviews the NLRB's legal conclusions *de novo* while findings of fact are reviewed for substantial evidence. *Ridgewood Health Care Ctr., Inc. v. NLRB*, 8 F.4th 1263, 1274 (11th Cir. 2021). Even in those circumstances where the Court evaluates a finding of fact by the NLRB, the Court does not "rubber stamp" NLRB determinations and "will not enforce a Board decision that fails to engage in reasoned decision making." *Ridgewood Health Care Ctr*., 8 F.4th at 1274-75 (11th Cir. 2021). But this case turns on interpretation of the Stipulated Election Agreement, and any questions of contract interpretation are subject to *de novo* review by the Court as questions of law. *See Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293-94 (11th Cir. 2019).

## SUMMARY OF THE ARGUMENT

The Court should deny the NLRB's application for enforcement and remand this case because the NLRB's order is incomplete. As noted, the Board has held in abeyance its decision with respect to the ground-breaking remedy sought by its General Counsel.  As noted, a remedy of "compensatory damages" predicated solely on a technical refusal to bargain for purposes of obtaining appellate review would constitute a fundamental change in US labor law and the reversal of a half-century of precedent. Thus, should the Board's partial order be sustained and the General Counsel's severed remedial claim later be endorsed by the Board, the instant case

will undoubtedly be before this Court yet again. The Court should reject the NLRB's attempt at such piecemeal review of its decisions in this case.

If the Court substantively reviews this case now, it should reject the NLRB's application for enforcement because the clear, unambiguous terms of the Stipulated Election Agreement require that the NLRB count the challenged ballots. The Hearing Officer, Regional Director, and the NLRB all agreed that ArrMaz and AMP constitute a single, integrated employer at the Mulberry, Florida facility. Not even the Union disagrees with that obvious and unanimous conclusion. Yet, all these deny two maintenance technicians assigned to the AMP subsidiary the opportunity to have their votes counted. The Board's decision disenfranchises these individuals despite the fact that a Stipulated Election Agreement entered into by the case parties specifically identified the unit, including the eligibility of "maintenance technicians" at the Mulberry, Florida facility in the election. These votes are determinative with respect to the question of certification.

The NLRB resolves disputes concerning the meaning of election agreements through a three-step analysis under *Caesar's Tahoe*, 337 NLRB 1096 (2002). The first step of this analysis examines whether the agreement terms are clear and unambiguous. If relevant agreement terms are ambiguous, the second step allows the fact finder to examine extrinsic evidence to determine the parties' intent. Only if the parties' intent cannot be resolved through extrinsic evidence does NLRB

precedent direct the fact finder to examine whether the excluded employees share a community of interest with the undisputed employees included in the unit.[5]

The terms of the Stipulated Election Agreement between the parties in this case are clear, unambiguous, and require the votes of the challenged maintenance technicians to be included in the final tally of ballots. There is only one "employer" at the Mulberry, Florida facility. There is no dispute in this regard. The fact that a nominally separated parent and subsidiary corporation are housed at the Mulberry facility is of no moment since collectively they are, as conceded by all, the statutory "employer" under well-settled law. The two disputed employees are "maintenance employees" at the Mulberry facility. The clarity and lack of ambiguity about their inclusion under the terms could hardly be more evident. Indeed, under the clear and unambiguous standard, the only way Hargadine and Strickland could be excluded is if the Agreement clearly excluded "maintenance technicians assigned to the AMP subsidiary." The Board's determination turns the clear and unambiguous standard on its head.

Even if the Court were to find any ambiguity in the contract terms, which it should not, extrinsic evidence nevertheless leads to the same result. The Union's intent is evident from: 1) the petition it filed that sought to represent the broadest

---

[5] This third step in the *Caesar's Tahoe* analysis need not be reached in this case because ArrMaz's challenge should prevail at either of the first two steps.

possible unit; 2) its lack of any objection to the two individual's eligibility despite being their inclusion on the voter eligibility list for 22 days under the NLRB's then-new election rules; and 3) its intentional exclusion in the petition of drivers assigned to AMP without excluding the maintenance technicians assigned to AMP.

Section 7 of the Act ensures employees' right to vote on the question of whether or not to have union representation in their workplace. The strong presumption, or at least preference in any cases of doubt, should be in favor of enfranchisement. *See NLRB v. Ideal Laundry & Dry Cleaning Co.*, 330 F.2d 712, 717 (10th Cir. 1964) ("While the desires of employees with respect to their inclusion in a bargaining unit [are] not controlling, it is a factor which the Board should take into consideration in reaching its ultimate decision. . . . Indeed, it may be the single factor that would 'tip the scales.'") All the votes of employees at the relevant workplace who work the jobs specifically included by agreement in the voting group should be counted. Here, the parties agreed these individuals would be eligible to vote. Their ballots should be opened and counted.

Finally, ArrMaz recognizes the possibility that the Court might conclude that the Stipulated Election Agreement was actually not an enforceable agreement at all if the parties had no mutual assent, *i.e.*, no "meeting of the minds," on the material issue of whether "maintenance technicians" listed in the agreement's unit description included the AMP maintenance technicians, or only the ArrMaz maintenance

technicians. If the Court concludes that no actual agreement was reached on this outcome determinative issue, whether through lack of clear communication by the Board Agent who brokered the deal, or otherwise, then the Court should declare the "agreement" and all subsequent proceedings premised on it to be void. In that circumstance, the Court should remand the case to the Board for the opportunity to redo the process correctly from the outset.

## ARGUMENT AND CITATIONS OF AUTHORITY

Questions about the scope of a voting unit and challenged ballots following execution of a stipulated election agreement are resolved through a three-step analysis. *Caesar's Tahoe*, 337 NLRB 1096, 1097 (2002) (citing *Associated Milk Producers, Inc. v. NLRB*, 193 F.3d 539 (D.C. Cir. 1999). First, the Court determines if the parties' intent is clear and unambiguous from the terms of the stipulated election agreement. *Id*. If there is no ambiguity, the Court enforces the terms as written. *Id*. Second, if there is ambiguity in the stipulation terms, the Court determines the parties' intent "through normal methods of contract interpretation, including the examination of extrinsic evidence." *Id*. Only if the parties' intent cannot be determined from the methods of contract interpretation will the Court review whether the challenged voters share a community-of-interest with the rest of the voting unit. *Id*.

## I. The Court Should Reject the NLRB's Application for Enforcement Because Its Decision and Process Below is Incomplete.

This case should not be before this Court at this time because the NLRB asks the Court to review a non-final order. The National Labor Relations Act ("NLRA") grants the NLRB the right to petition for enforcement of an order. 29 U.S.C. § 160(e). However, the Court does not have jurisdiction if the NLRB applies for enforcement of an order that is not final. *NLRB v. Imperial House Condominium, Inc.,* 831 F.2d 999, 1002 (11th Cir. 1987). The Court should remand a case where more substantive decision making is required than merely determining the remedial details that are deferred to the compliance stage of litigation. *NLRB v. G & T Terminal Packaging Co., Inc*., 246 F.3d 103, 124-125 (2d Cir. 2001) (explaining that for an NLRB order to be considered final, "the remedial 'details' that are deferred to the compliance stage must be true 'details': they must merely flesh out and follow from the remedy ordered by the NLRB."). Limiting the Court's jurisdiction over NLRB applications for enforcement "enable[s the Court] to avoid 'piecemeal review of Board orders." *Id*. at 125 (quoting *Holo-Krome Co. v. NLRB*, 954 F.2d 108 (2d Cir. 1992)).

The Court should remand this case and require that the NLRB issue a complete order before it may seek enforcement. The NLRB made clear in the Decision and Order that it seeks to enforce that it had not issued a final order in this case. In the lower proceedings, the NLRB General Counsel urged the NLRB to issue

a financial award by overturning over five decades of established precedent in *Ex-Cell-O Corp*., 185 NLRB 107(1970). In response, the NLRB "decided to sever this issue and retain it for further consideration to expedite the issuance of this decision regarding the remaining issues in this case." (R. 2442.)

The NLRB's chosen procedure creates the likelihood of piecemeal appeals that will unnecessarily occupy the Court's docket for an extended period. In his dissenting opinion below, NLRB Member John Ring extensively critiqued that the NLRB contemplated overturning *Ex-Cell-O Corp.* and explained in detail the limited recourse any employer has to contest NLRB orders of bargaining representative certification orders because of the procedure Congress established for such review in the NLRA. (R. 2443-51.) If nothing else, Member Ring's dissent demonstrates the highly unorthodox remedy the NLRB continues to consider, which in itself establishes the near-certainty that any such remedial order would be the subject of a petition for review to this Court.

Moreover, allowing the NLRB to seek review of fragmented orders while holding a party like ArrMaz to a wholly different standard of requiring a "final order" for review is unfairly prejudicial. ArrMaz is forced to incur additional costs to litigate multiple orders before the Court. Moreover, the NLRB receives undue advantage by focusing the Court's attention on narrow issues of its choosing rather than defending all decisions it makes over the case as a whole. Both as a matter of

equity and under the limitations afforded any party by the NLRA, the Court should return this case to the NLRB for it to issue a final order for review, including one that addresses all remedial requirements it currently considers.

## II. The Stipulated Election Agreement Clearly and Unambiguously Requires the NLRB to Count the Votes of *All* Maintenance Technicians Working at the Mulberry, Florida Facility.

If the Court retains the case to decide the issues presented so far, it should reverse the Board ruling and remand the case with an order to count the challenged ballots because the Stipulated Election Agreement requires the NLRB to count the votes of all the maintenance technicians employed at the Mulberry, Florida facility. The Court need look no further than the Stipulated Election Agreement's voting unit description to decide this case. *See M&G Polymers USA, LLC, v. Tackett*, 574 U.S. 427, 435 (2015) ("Where the words of a contract in writing are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." (internal citations omitted).) The "Unit and Eligible Voters" describes both those employees included in and those employees excluded from the unit who the parties agreed may vote in the election and would be included in any unit to which the Union would be the certified bargaining representative:

> **Included**: All full-time and regular part-time production operators, sulfonation operators, railside operators, small blends and warehouse operators, maintenance technicians, electrical and instrumentation technicians, custodians and parts clerks employed by the Employer at its Mulberry, Florida facility.

> Excluded: All other employees, professional laboratory technicians, quality assurance laboratory technicians, engineers, office clerical employees, managers, guards, and supervisors as defined in the Act.

(R. 1485-86.) This description contains three essential elements to be an eligible voter, all of which are met by the AMP maintenance technicians: (1) job title, (2) work location, and (3) the Employer. None of these elements can be contested. The challenged voters hold a position that precisely matches one of the multiple job titles in the description: maintenance technicians. Additionally, the AMP maintenance technicians work at the same Mulberry, Florida facility as all other employees who voted in the election. Neither the NLRB nor the Union can present any plausible argument to distinguish the AMP maintenance technicians based on these two material elements of the unit description.

Likewise, whether the AMP maintenance technicians work for the "Employer" identified in the description of voters also cannot be disputed by any party. At every step of the underlying proceedings, the reviewing individuals have universally concluded that AMP and ArrMaz are one and the same employer. The Hearing Officer initially evaluating the Union's voter challenges concluded:

> The record shows that the Employer and AMP have interrelations of operations, share common management, share centralized control of labor relations, and share common ownership and financial control. Therefore, I find that the Employer and AMP are a single employer.

(R. 1568.) After "[n]either party contested that finding," the Regional Director agreed with the Hearing Officer and "concluded that ArrMaz and AMP are a single integrated enterprise and single employer." (R. 1622.) Then, after review and analysis of the Regional Director's conclusion, the NLRB agreed and adopted it. (R. 2053.) For its part, the Union has never even attempted to argue that these entities are anything other than one and the same "single" employer. This was obvious to all parties, and decision makers, throughout all of the underlying proceedings.

There is no legitimate debate that the term "Employer" as used in the Stipulated Election Agreement was intended to reference ArrMaz and its wholly-owned subsidiary, AMP, to include Hargadine and Strickland in the voting unit as maintenance technicians, just like the other maintenance technicians working at the Mulberry, Florida facility. Any conclusion to the contrary ignores reality, and rests on a corporate-structure hyper-technicality that no union, nor Regional Director, nor the General Counsel of the NLRB would ever respect if an employer tried to use the corporate formalities as a shield. *See, e.g., Domsey Trading Corp.*, 357 NLRB 2161 (2011) (holding principal shareholders derivatively liable for financial award to employees by piercing the corporate veil of the employer-respondent).

That is the whole point of the "single employer" doctrine: entities that are technically separated as a matter of the formality of the corporate family structure still share labor law obligations and even liabilities if the practical reality is that they

act as a "single employer."[6] However, in this case the Board does not follow the consequences of the "single employer" reality, apparently because the Union asks it to ignore two votes that might upset its apparent election victory.

In addition to the Unit and Eligible Voters section, the Stipulated Election Agreement also demonstrates the parties intended to include the AMP maintenance technicians in the voting unit through the Commerce section. At Section 2, the description of the ArrMaz's business includes direct references to the work performed by, and only by, AMP:

> ArrMaz Products, Limited Partnership is a Delaware limited partnership with an office and place of business located at 4800 State Road 60 E. Mulberry, Florida, and is engaged in the business of manufacturing ***and providing*** specialty chemical additives to the fertilizer manufacturing, mining, and asphalt paving industries. During the past 12 month period, in conducting these business operations described above, the Employer purchased ***and received*** at its Florida facilities goods valued in excess of $50,000 directly from points located outside the State of Florida.

---

[6] *E.g. Bolivar-Tees, Inc.*, 349 NLRB 720 (2007)(concluding two American corporations and two Mexican corporations constituted single employer so that all entities, including individual owner, were jointly and severally liable for award of over $96,000); *Naperville Ready Mix, Inc.*, 329 NLRB 174 (1999)(concluding three corporations comprised single employer and held collectively responsible in order to remedy unfair labor practice violations that included unilateral implementation without impasse, refusal to provide union with requested information to bargain, direct dealing over terms and conditions of employment, threats that interfered with employees' protected concerted activity, and terminations from employment).

(R. 2155 (emphasis added).)

The parties' use of the terms "providing" and "received," as highlighted from the Commerce section reproduced above, describe the logistics and transportation functions that AMP provides ArrMaz. ArrMaz by itself does not engage in transporting its products to other ArrMaz facilities or customers. Only AMP conducts that work through its drivers and maintenance technicians who support both them and ArrMaz. (R. 1572 (Hearing Officer describing "AMP was created to serve as the Employer's private truck fleet to deliver those chemical additives to the Employer's customers.") While the ArrMaz group does the "manufacturing" of the products, it is the AMP group that is responsible for "providing" the products. Additionally, the AMP group "received" at the Mulberry, Florida facility the goods ArrMaz purchased to support its manufacturing at that same site.

The Union cannot plausibly deny knowledge of AMP at the Mulberry facility. AMP labeling appeared on trucks entering and leaving the premises (R. 1298-99.) and AMP signage was placed on the exterior of the building (R. 1302.). Had there been any intent to exclude AMP maintenance technicians, the statement of commerce would have been limited to "manufacturing" and would not have specifically included "providing" and "receiving."

The Hearing Officer erred after she concluded that ArrMaz and AMP are a single employer because she failed to apply her single employer conclusion to the

first step in the *Caesar's Tahoe* analysis to determine the clear and unambiguous terms of the Stipulated Election Agreement and its reference to the "Employer." Instead, ignoring the clear terms of the Stipulated Election Agreement, the Hearing Officer concluded that her finding that ArrMaz and AMP were a single employer "has no relevance to a determination regarding the intention of the parties in signing the Agreement." (R. 1564.) Rather than applying the clear terms of the Stipulated Election Agreement, the decisional analysis simply jumps to a community-of-interest test analysis under *PCC Structurals*, 365 NLRB No. 160 (2017) and *The Boeing Company*, 368 NLRB No. 67 (2019). (R. 1568.)

This is a classic example of placing the cart before the horse. Before one even considers a community-of-interest standard, one must first convincingly demonstrate that neither of the first two prongs of *Caesars Tahoe* have been met. Nothing below does that. Moreover, the Board's unit making-jurisprudence in the face of disagreement about the unit has nothing to do with construing the language of the parties' Stipulated Election Agreement. The parties are free to agree to whatever bargaining unit they want as long as it is not contrary to the statute. This case requires contract interpretation, not unit-making.

The failure to find the agreement clear and unambiguous on its face was patent error. There is only one "Employer" at the Mulberry facility and all of its maintenance technicians are expressly included. Moreover, there is no language

24

whatsoever in the exclusions from the unit that remotely supports the notion that any maintenance technicians at this site would be excluded. The only maintenance technicians involved in the "providing" of the manufactured goods, or the "receiving" of incoming materials were Hargadine and Strickland, the two challenged voters at issue here. These words had meaning. *See Q Club Hotel, LLC*, 933 F.3d at 1293-94 ("[W]e will construe [a contract] as a whole and will avoid treating terms 'as redundant or mere surplusage' if 'any meaning, reasonable and consistent with other parts, can be given to it.'" (Internal citations omitted).)

Yet, without explanation, the Hearing Officer disregarded the relevance of her undebatable conclusion that ArrMaz and AMP were a single employer and completely skipped over the first two steps of the *Caesar's Tahoe* analysis. Instead, the Hearing Officer jumped to the third step and evaluated the community of interest shared by the AMP maintenance workers with all other undisputed voters in the unit. In this regard, the Hearing Officer's decision was based on material error.

The Hearing Officer and the Regional Director also erred in relying on *NLRB v. Barker Steel, Inc.,* 800 F.2d 284 (1st Cir. 1986) and analogizing it to the facts and circumstances in the unit the Union seeks to represent in the instant case. In *Barker Steel, Inc.*, the First Circuit overruled the Regional Director's decision to include an employee in a voting unit based on a finding that two legal entities were a single employer and the challenged employee shared a community of interests with the

25

other voting unit employees. *Id*. at 286-87. The First Circuit's decision pre-dated *Caesar's Tahoe* and did not apply the NLRB's three-step analysis. *Id*. The First Circuit concluded that the unambiguous intent of the parties expressed in the election agreement was to exclude the challenged employees. *Id*.

However, the *Barker Steel Co., Inc*. Court relied on a description of the employer's business in the election agreement of that case that isolated the scope of the business in a manner not present in the Stipulated Election Agreement here. In its cursory analysis of the agreement at issue there, the First Circuit explained that the agreement described the Employer at Paragraph 8 as "engaged in the fabrication of steel reinforcing bars." *Id*. at 287. In reaching its conclusion to exclude the challenged voter, the court relied on its observation that "the description of the Employer in Paragraph 8 simply does not fit BNP. BNP is engaged in the transportation of Steel Products, not in manufacture, as is Barker Steel." (*Id*. (emphasis in original).)

The instant case presents precisely the opposite scenario. The Stipulated Election Agreement between ArrMaz and the Union contains multiple references that describe – exclusively – AMP's business. Specifically, the Section 2 Commerce description contained in the Stipulated Election Agreement includes AMP's purpose to "provid[e]" ArrMaz products and to "receive[]" ArrMaz materials. (R. 2155.) These are direct references to the logistics/transportation services that AMP wholly

provides to ArrMaz and on which ArrMaz entirely relies on AMP to create and sell its products. Neither the Hearing Officer, nor the Regional Director, nor the NLRB reconciled this crucial distinction when relying on the First Circuit's decision. Yet, upon thoughtful reflection, the rationale of *Barker Steel Co., Inc.* supports ArrMaz's position that the Stipulated Election Agreement here demonstrates the two AMP maintenance technicians unambiguously are to be included in the vote.

The logical conclusion from the inclusion in the agreement of these references to AMP's transportation functions, along with the unwavering, unanimous conclusion by all finders of fact that ArrMaz and AMP are a single, integrated employer unit, leaves no doubt of the parties' intent in executing the Stipulated Election Agreement: all maintenance technicians working at the Mulberry, Florida facility, including those under the AMP entity heading, must have their votes counted.

## III. Extrinsic Evidence Also Conclusively Demonstrates the Parties Intended to Include the Single Employer's Maintenance Technicians in the Voting Unit.

Assuming for sake of argument the Court were to seek any confirmation of the parties' clear, unambiguous intent in the Stipulated Election Agreement, that intent is confirmed by extrinsic evidence. The Union evinced its intent regarding the persons it wished to include in the election and maybe represent is clear from the petition it filed. (R. 2151.) The petition itself demonstrates the Union's intent to seek

the broadest possible unit and, thus, make eligible the broadest swath of voters possible in the election, with the AMP maintenance technicians among them. Such intent is patent in at least three respects.

First, the Union identified Arkema as the Employer on Section 2a of the Petition. (*Id*.) "Arkema" references the highest and broadest level of the corporate structure as the parent company over both ArrMaz and AMP. (R. 1552, 2162.) While ArrMaz owns AMP, ArrMaz is owned by ArrMaz Custom Chemicals, Inc., which is owned by AMZ holding Corp., which is owned by Arkema.[7] (*Id*.) By naming the Arkema entity as the Employer, the Union expressed a clear intent to broadly include in the voting unit the maintenance technicians of any Arkema entity so long as those persons worked at the Mulberry, Florida facility, without regard to corporate structural formalities that Arkema might utilize. The Union's petition shows it sought to represent all hourly employees on site, regardless of how the company may choose to employ them under any of the various entities in the corporate family tree.

The Union's intent is also expressed elsewhere on its petition. At Section 5b, the Union's petition described the Unit it sought to include in the election as "Production, Warehouse, Rail Side Workers, Maintenance & Electric Workers" and to exclude "Office & Clerical, Truck Drivers, Lab, Guards and Supervisors as

---

[7] This description is with respect to the corporate entities and their place in the corporate hierarchy at the time of events at issue in this matter.

defined in the Act." (*Id.*) Instead of a specific job title, the Union relied on a broader term by describing "Maintenance . . . Workers" that should be included in the voting unit. (*Id.*) By using this broader identification to describe the employees it sought to include in the election, the Union left no question that the subsequent Stipulated Election Agreement intended to reference the AMP maintenance technicians.

This point is emphasized by the Union's reference on the following line to exclude "Truck Drivers." (*Id.*) The only Truck Drivers at the Mulberry, Florida facility are employed by AMP. (R. 1359.) The Union made clear in this description that it was aware of the AMP functions but chose to expressly exclude only one of the job classifications held by AMP employees. Under the well-settled contract interpretation principle of *expressio unius est inclusio alterius*, the specific mention of the AMP drivers as being outside of the petitioned-for voting unit, and the failure to similarly specify "AMP maintenance technicians" as being outside the unit, evidences a clear intent to treat the maintenance technicians differently than the excluded drivers; *i.e.*, to include them. *Plumbers and Steamfitters Local No. 150 Pension Fund v. Vertex Const. Co., Inc.*, 932 F.2d 1443, 1449 (11th Cir. 1991) ("The doctrine of *expressio unis est exclusion alterius* instructs that when certain matters are mentioned in a contract, other similar matters not mentioned were intended to be excluded."). This intent is then confirmed in the Stipulated Election Agreement where the "Included" portion of the agreement specifically references all

"maintenance technicians" at the Mulberry, Florida facility. The Union's petition, plus the Stipulated Election Agreement, confirms the Union's conscious choice about which employees assigned to the wholly-owned AMP subsidiary that it sought to exclude (drivers), and, thus, those that it did not (maintenance technicians).

Additionally, the broad reach of the voting unit the Union intended to include in the Stipulated Election Agreement is apparent from the number of employees in the unit the Union identified in its petition. At Section 5a of the petition, the Union claimed there were 51 employees in the unit. (R. 2151.) When actually counted there were 42 employees in the total number. However, the fact that the Union so significantly over-counted the individuals comprising the unit it sought to represent demonstrates it wished to represent the largest possible group of employees working on site in the designated job classifications, including all the maintenance technicians.

From Arkema's perspective in the discussions with the NLRB agent to negotiate the information included on the Stipulated Election Agreement, it agreed to include a narrower business entity than Arkema, which the Union named on its petition, but still one that owned the AMP entity under which the challenged voters were technically employed. It would be illogical to attribute any intent on the part of ArrMaz to exclude AMP maintenance technicians when ArrMaz owned AMP, the Commerce section identified the transportation services AMP exclusively provided

to ArrMaz, and the description of eligible voters described "maintenance technicians."

The parties' intent is also revealed and confirmed in the steps immediately following their execution of the Stipulated Election Agreement and the approval by the Regional Director. Pursuant to the terms of the Stipulated Election Agreement, ArrMaz promptly filed a list of the eligible voters with the NLRB and submitted a copy of the same to the Union. (R. 1583, Exception 1; R. 2153, Section 6.)[8] This list specifically named both Jesse Hargadine and Robert Strickland as part of the group of employees eligible to vote in the election. (*Id*.) Hargadine's and Strickland's eligibility to vote was confirmed early in the process by ArrMaz, and was never contested by the Union at any time during the 22-day campaign period. Nor did the Union object to these listed voters at the pre-hearing conference conducted by the Board agent just prior to the voting. Presumably, the Union waited until the last possible moment to object to these two voters to use a full opportunity to try to persuade them to vote in favor of Union representation, and only challenged their

---

[8] The Court should infer that the challenged voters were properly disclosed on the voter list because the Union did not raise any challenge based on any failure by the Employer to include them. Moreover, the NLRB Agent conducting the election presumably would have registered a Board challenge to the ballots of Hargadine and Strickland were they not listed on the voter eligibility list, Casehandling Manual, § 11322.1, but there was no Board challenge in this case. Moreover, the agent retained the ability to refuse a ballot to an individual excluded from voting by a unit description. *See* Casehandling Manual, § 11338.7.

votes once the Union concluded that it had failed in that effort. This is the flipside of "stuffing" a ballot box with favorable votes. Here, the Union sought to drain the box of votes it must have concluded were unfavorable to its own business interests.

Indeed, in changing the representation election rules to shorten the period of time that the NLRB allowed an employer to file and serve its voter list from seven days to two days, the NLRB specifically highlighted that this additional time advanced two objectives:

> (1) Ensuring the fair and free choice of bargaining representatives by maximizing the likelihood that all the voters will be exposed to the *nonemployer* party arguments concerning representation; and (2) facilitating the public interest in the expeditious resolution of questions of representation by enabling the parties on the ballot to avoid having to challenge voters based solely on lack of knowledge as to the voter's identity.

NLRB Representation – Case Procedures, 79 FR 74307, 74335 (2014) (to be codified at 29 C.F.R. pts. 101, 102, and 103) (citing *Excelsior Underwear, Inc.*, 156 NLRB 1236, 1240-41, 1242-43, 1246 (1966)). Moreover, in the day-to-day administration of elections, the NLRB requires that after the employer submits the voter list, the agent administering the election "should have the parties check and approve the list promptly, to allow maximum time to resolve eligibility questions and thus reduce the number of challenges." Casehandling Manual, § 11312.3.

These objectives illustrate why it is significant and illustrative of the Union's intent in the meaning of the Stipulated Election Agreement terms when it chose to

wait until the election to raise any challenge to Hargadine's and Strickland's votes despite their appearance on the voter eligibility list served weeks earlier. As described by the NLRB, the Union gained the advantage to expose Hargadine and Strickland to the Union's arguments concerning representation and undoubtedly came to appreciate the side on which those votes fell. If the Union truly disputed whether the parties intended Hargadine and Strickland to participate in the voting unit, the time to raise any concern was promptly after it received the voter list. This early issue identification is exactly what the NLRB sought to require when it promoted "expeditious resolution of questions of representation" by shortening the time to disclose a voter list.

Of course, to the extent the Court views it as extrinsic evidence, the consistent conclusions of the Hearing Officer and the Regional Director that ArrMaz and AMP comprise a single-integrated unit is also relevant to intent. The two companies are so interrelated that an outside petitioner, such as the Union, could not reasonably maintain any intent at the time of its petition and the execution of the Stipulated Election Agreement other than that the AMP maintenance technicians would vote in the subsequent election. The Union simply lacked any basis to distinguish ArrMaz from AMP to claim an intent to exclude the AMP maintenance technicians when the Stipulated Election Agreement called for the voting unit to include this exact position.

## IV. Alternatively, if the Court concludes that the Parties' Intent on This Material Issue is Neither Clear nor Readily Discernible, Then it Should Conclude That There Was No Meeting of the Minds Sufficient to Form a Valid Contract.

ArrMaz always intended to include the AMP maintenance technicians in the agreed-upon voting group. (R. 1485-88.) Despite the language of the Stipulated Election Agreement, and "single employer" reality unequivocally obvious to all parties involved here, the Union may claim that it never intended to agree to include the AMP maintenance technicians in the voting group. If the Court concludes that both of these things are true, then there was not mutual assent, no "meeting of the minds," on this material element. As a matter of law,[9] an alleged contract that lacks mutual assent on a material element is unenforceable. *Brickell Financial Servs. – Motor Club, Inc. v. Road Transportation, LLC*, 298 So. 3d 62, 67 (Fla. Dist. Ct. App. 2020)("[T]o be enforceable a [contract] must be sufficiently specific and mutually agreeable as to every essential element." (internal citations omitted)); *King v. Bray*, 867 So. 2d 1224, 1226 (Fla. Dist. Ct. App. 2004) ("Specific performance may be

---

[9] Florida requires a contract to be interpreted according to the law of the state of the contract's execution. *Sun Life Assurance Co. of Canada v. Imperial Premium Finance, LLC*, 904 F.3d 1197, 1208 (11th Cir. 2018) (internal citations omitted). The Court determines the state of the contract's execution by the location of the "last act necessary to complete the contract." *Id*. Because the "last act" to complete the Stipulated Election Agreement was written approval by David Cohen, NLRB Regional Director, Region 12, and Region 12 is based in Tampa, Florida, the Court applies Florida contract interpretation principles to interpret the Stipulated Election Agreement.

denied when a contract is unenforceable because, based on an ambiguity in the contract, the parties never reached a meeting of the minds regarding an essential term of the agreement.").

The NLRB's process for the creation of these election agreements creates the real potential that in actuality the parties did not in fact agree on some particular issue the document purports to cover. Following the filing of a petition to hold an election to determine whether a bargaining representative should be certified to represent a unit of employees, a Board Agent is assigned to the case. Casehandling Manual § 11004. The assigned Board Agent initiates efforts between the petitioner and employer to negotiate a stipulated election agreement. *See* 29 C.F.R. § 102.62(a); Casehandling Manual § 11084. Negotiations on a stipulated election agreement take place through informal means such as telephone and email. Casehandling Manual § 11084.3. The Stipulated Election Agreement is a document largely drafted and controlled by the NLRB and Region administering the election. *See Id*., § 11086. Indeed, the parties rely on the NLRB's Form NLRB-652 for this agreement. *Id*., § 11084. The NLRB agent brokering the negotiations of the agreement ultimately submits it to the Regional Director for approval. *Id*. §§ 11084, 11094.

In the creation of this purported agreement, the parties to it rarely, if ever, actually communicate directly with each other. Rather, the NLRB agent controls

both sides of the conversation, telling each party the position and requests of the other party. The potential for crossed-signals or unrealized gaps exceeds that in a regular negotiation in which parties to an agreement communicate directly with each other and can more readily spot and clarify potential differences in understanding.

In the event that the Court concludes that there simply was no meeting of the minds on this material issue of whether the AMP maintenance technicians were to be included in the agreed-upon voting unit, the Court should declare that the "agreement" and all subsequent proceedings that enforced that alleged contract are null and void. The Court should then remand the case to the Board for another election process in which the voting group is identified very specifically in a new agreement, or if an agreement cannot be reached, is determined by the Board after the type of "R-Case" hearing that did not happen in this instance because the Board declared the parties reached a valid agreement on the voting group and details of the vote.

## CONCLUSION

In the name of silencing employee votes concerning union representation, the NLRB takes irreconcilable, contradictory positions. While holding ArrMaz and AMP are a single employer under each and every element of its analysis, the NLRB simultaneously refuses to apply that irrefutable understanding to the meaning of Employer in the Stipulated Election Agreement. There is no ambiguity to the

Stipulated Election Agreement. It clearly and conclusively establishes the AMP maintenance technicians should have their ballots opened and counted. Even if there were ambiguity, extrinsic evidence demands the same outcome. And to the extent the Court finds the Stipulated Election Agreement cannot be resolved through the agreement itself or relevant extrinsic evidence, the remedy is not to censure the employee votes – it is to hold a new election under terms to which there is in fact a meeting of the parties' minds.

The Court should overrule the NLRB, uphold the Stipulated Election Agreement, and order the NLRB to open and count the votes of AMP maintenance technicians Mr. Strickland and Mr. Hargadine.

Respectfully submitted this 21st day of April, 2023.

*s/ Bernard J. Bobber*
Bernard J. Bobber
WI Bar No. 1015499
bernard.bobber@ogletree.com
Jesse R. Dill
WI Bar No. 1061704
jesse.dill@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI 53205
Telephone: 414-239-6400
Facsimile: 414-755-8289

David M. DeMaio
Florida Bar No. 886513
david.demaio@ogletree.com
9130 South Dadeland Blvd.
Suite 1625
Miami, FL 33156
Telephone: 305-374-0506
Facsimile: 305-374-0456

Brian E. Hayes
Washington, D.C. Bar No. 203141
brian.hayes@ogletree.com
1909 K Street, N.W.
Suite 100
Washington, D.C. 20006
Telephone: 202-887-0855
Facsimile: 202-887-0866

Attorneys for Respondent ArrMaz Products
Inc.

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 8,263 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Times New Roman 14 point font.

This 21st day of April, 2023.

*s/ Bernard J. Bobber*
Bernard J. Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products, Inc.

## CERTIFICATE OF SERVICE

I certify that on April 21st, 2023, Respondent and Cross-Petitioner ArrMaz Products Inc. electronically filed its Brief of Respondent and Cross-Petitioner ArrMaz Products Inc. with the Clerk of Court using the CM/ECF system, through which the following individuals received service:

Ruth E. Burdick
Usha Dheenan
Susan Kania
National Labor Relations Board
1015 Half Street SE Fl. 4
Washington, DC 20003

August Randall Vehar
ICWUC/Union Legal Department
1655 W. Market Street Fl. 6th
Akron, OH 44313

This 21st day of April, 2023.

s/ Bernard J. Bobber
Bernard J. Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products, Inc.

55702168.v5-OGLETREE