**No. 23-10291-JJ**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

**NATIONAL LABOR RELATIONS BOARD**

Petitioner/Cross-Respondent

v.

**ARRMAZ PRODUCTS INC.**

Respondent/Cross-Petitioner

———————————

**ON APPLICATION FOR ENFORCEMENT AND
CROSS-PETITION FOR REVIEW OF AN ORDER OF
THE NATIONAL LABOR RELATIONS BOARD**

———————————

**BRIEF FOR THE NATIONAL LABOR RELATIONS BOARD**

———————————

**USHA DHEENAN**
*Supervisory Attorney*

**SUSAN L. KANIA**
*Attorney*

**National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2948
(202) 273-0107**

**JENNIFER A. ABRUZZO**
  *General Counsel*
**PETER SUNG OHR**
  *Deputy General Counsel*
**RUTH E. BURDICK**
  *Deputy Associate General Counsel*
**DAVID HABENSTREIT**
  *Assistant General Counsel*

**National Labor Relations Board**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____ )
)
NATIONAL LABOR RELATIONS BOARD )
)
       Petitioner/Cross-Respondent )  No. 23-10291-JJ
)
    v. )
)  Board Case No.
ARRMAZ PRODUCTS INC. )  12-CA-294086
)
       Respondent/Cross-Petitioner )
_____ )

### CERTIFICATE OF INTERESTED PERSONS AND
### CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1-1 of the Court's Rules, Petitioner National Labor

Relations Board (the "Board"), by and through its undersigned attorneys, hereby

certifies that the following persons and entities have an interest in the outcome of

this case:

1.    Abruzzo, Jennifer A., General Counsel for the Board

2.    AMP Trucking, Inc., related entity of Respondent ArrMaz Products Inc. and

    single employer with Respondent ArrMaz Products Inc.

3.    AMZ Holding Corp., owner of Arr-Maz Custom Chemicals, Inc.

4.    Arkema Delaware Inc., owner of AMZ Holding Corp.

5.    Arr-Maz Custom Chemicals, Inc., owner of Respondent ArrMaz Products Inc.

6.    ArrMaz Products Inc., Respondent

7.    Bobber, Bernard J., Counsel for Respondent

8.    Burdick, Ruth E., Deputy Associate General Counsel for the Board

9.    Cohen, David, Regional Director for the Board (Region 12, Tampa)

10.    Dheenan, Usha, Supervisory Attorney for the Board

11.    Habenstreit, David, Assistant General Counsel for the Board

12.    International Chemical Workers Union Council of The United Food and Commercial Workers International Union, AFL-CIO, Charging Party and Intervenor

13.    Kaltenbach, Mark, Counsel for the General Counsel for the Board

14.    Kania, Susan L., Attorney for the Board

15.    McFerran, Lauren, Board Chairman

16.    National Labor Relations Board, Petitioner

17.    Ogletree Deakins Nash Smoak & Stewart, PC, Counsel for Respondent

18.    Ohr, Peter Sung, Deputy General Counsel for the Board

19.    Ring, John F., former Board Member

20.    Vehar, August Randall, Assistant General Counsel for Charging Party and Intervenor

21.    Weitz, Eric, Counsel for the General Counsel for the Board

22.    Wilcox, Gwynne A., Board Member


/s/ Ruth E. Burdick_____
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 21st day of June 2023

## STATEMENT REGARDING ORAL ARGUMENT

This case involves the Board's application of settled legal principles to undisputed facts. Before the Court, the Company principally relies on arguments that the Board reasonably rejected as unsupported by the record or precedent or on arguments that are jurisdictionally barred from this Court's review as they were not first presented to the Board for its consideration. In addition, the Company leaves a number of aspects of the Board's decision unchallenged. Accordingly, the Board respectfully submits that the case may be decided on the briefs. However, if the Court believes that oral argument would be of assistance, the Board requests to participate.

## <u>TABLE OF CONTENTS</u>

**Headings**                                                                    **Page(s)**

Statement of subject matter and appellate jurisdiction ...........................1

Statement of the issue .....................................................................3

Statement of the case.......................................................................3

 I.  Procedural History........................................................................4

     A.  The representation proceeding .....................................................4

     B.  The unfair-labor-practice proceeding ..........................................7

II.  The Board's Conclusions and Order...................................................8

Summary of argument......................................................................9

Argument.....................................................................................12

     Substantial evidence supports the Board's finding that the Company's
     admitted refusal to bargain violated Sections 8(a)(5) and (1) of the Act..........12

     A.  Applicable principles and standard of review............................12

     B.  The stipulated election agreement clearly and unambiguously
         excluded Hargadine and Strickland from the bargaining unit ...................14

     C.  The single employer status of ArrMaz and AMP Trucking does
         not negate the clear and unambiguous terms of the stipulated
         election agreement; the Company's distinction of *Barker Steel* is
         fatally flawed...............................................................23

     D.  The Company's remaining arguments regarding the stipulated
         election agreement are irrelevant or barred by Section 10(e)....................27

## TABLE OF CONTENTS (cont'd)

**Headings**                                                                **Page(s)**

E.  The Board's Order conforms with principles of administrative finality; the Company's arguments regarding the Board's severance of an additional remedy are jurisdictionally barred and meritless ...................... 29

    1.  The Act and administrative finality principles support judicial review of the Board's Order now, severance of one issue does not affect review ................................................................................... 29

    2.  The Company's arguments regarding the Board's severance of an additional remedy are jurisdictionally barred and meritless ................. 34

Conclusion .................................................................................................... 38

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Am. Fed'n of Labor v. NLRB*,
   308 U.S. 401 (1940) ........................................................... 31

*Associated Milk Producers, Inc. v. NLRB*
   193 F.3d 539 (D.C. Cir. 1999) ....................................... 15

*Boire v. Greyhound Corp.*,
   376 U.S. 473 (1964) ........................................................... 2

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ....................................... 31

*Caesar's Tahoe*,
   337 NLRB 1096 (2002) ............................... 15, 16, 17, 23, 26, 27, 28

*Ceridian Corp. v. NLRB*,
   435 F.3d 352 (D.C. Cir. 2006) ....................................... 14

*Cooper/T. Smith, Inc. v. NLRB*,
   177 F.3d 1259 (11th Cir. 1999) ................................... 8, 13

*Ex-Cell-O Corp.*,
   185 NLRB 107 (1970) ....................................... 3, 4, 33

*Fla. Pub. Serv. Comm. v. Interstate Commerce Comm.*,
   724 F.2d 1460 (11th Cir. 1984) ....................................... 31

*Freeman Decorating Co.*,
   336 NLRB 1 (2001), *enforcement denied on other grounds sub nom.*
   *IATSE Local 39 v. NLRB*,
   334 F.3d 27 (D.C. Cir. 2003) ....................................... 32

*Freund Baking Co.*,
   330 NLRB 17 (1999) ........................................................... 3

*Hard Rock Holdings*,
   672 F.3d 1117 (D.C. Cir. 2012) ....................................... 14

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                          **Page(s)**

*IATSE Local 39 v. NLRB*,
334 F.3d 27 (D.C. Cir. 2003) ................................................... 32

*Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*,
420 U.S. 276 (1975) ................................................................ 34

*Int'l Union of Painters v. J&R Flooring, Inc.*,
656 F.3d 860 (9th Cir. 2011) .................................................. 32

*Jackson Hosp. Corp. v. NLRB*,
647 F.3d 1137 (D.C. Cir. 2011) .............................................. 32

*Kentucky River Med. Ctr.*,
355 NLRB 643 (2010), *enforcement denied on other grounds sub nom. Jackson Hosp. Corp. v. NLRB*,
647 F.3d 1137 (D.C. Cir. 2011) .............................................. 32

*Laidlaw Transit, Inc.*,
322 NLRB 895 (1997) ............................................................. 15

*Little v. T-Mobile USA, Inc.*,
691 F.3d 1302 (11th Cir. 2012) ........................................ 18, 27

*Longmont United Hospital v. NLRB*,
No. 22-1262, 2023 Lexis 14719 (D.C. Cir. Jun. 13, 2023) ............................. 33

*M & M Supermarkets, Inc. v. NLRB*,
818 F.2d 1567 (11th Cir. 1987) ............................................. 13

*Mountain States Tel. & Tel. Co. v. FCC*,
939 F.2d 1021 (D.C. Cir. 1991) ............................................. 37

*NLRB v. Allied Med. Transp., Inc.*,
805 F.3d 1000 (11th Cir. 2015) ............................................. 13

*NLRB v. Barker Steel Co.*,
800 F.2d 284 (1st Cir. 1986) .................................. 23, 24, 25, 26, 27

*NLRB v. Contemporary Cars, Inc.*,
667 F.3d 1364 (11th Cir. 2012).................... 13, 14, 20, 29, 34, 35

# TABLE OF AUTHORITIES (cont'd)

**Cases**                                                                    **Page(s)**

*NLRB v. Dynatron/Bondo Corp.*,
    992 F.2d 313 (11th Cir. 1993) ..................................................... 12-13

*NLRB v. G & T Terminal Packaging Co.*,
    246 F.3d 103 (2d Cir. 2001) ...................................................... 35, 36

*NLRB v. Gimrock Constr., Inc.*,
    247 F.3d 1307 (11th Cir. 2001) ...................................................... 13

*NLRB v. Imperial House Condominium, Inc.*,
    831 F.2d 999 (11th Cir. 1987) ....................................................... 35

*NLRB v. Katz's Delicatessen of Houston Street, Inc.*,
    80 F.3d 755 (2d Cir. 1996) .............................................................. 36

*NLRB v. Ochoa Fertilizer Corp.*,
    368 U.S. 318 (1961) ............................................................. 20-21, 29

*Outokumpo Stainless USA, LLC v. NLRB*,
    773 F. App'x 531 (11th Cir. 2019) ............................................... 13-14

*Pace University v. NLRB*,
    514 F.3d 19 (D.C. Cir. 2008) ........................................................ 21

*PCC Structurals, Inc.*,
    365 NLRB No. 160 (2017) ........................................................... 24

*Picini Flooring*,
    355 NLRB 606 (2010), *enforced sub nom.*
    *Int'l Union of Painters v. J&R Flooring, Inc.*,
    656 F.3d 860 (9th Cir. 2011) ........................................................ 32

*Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*,
    400 U.S. 62 (1970) ..................................................................... 31

*Reuters, Ltd. v. FCC*,
    781 F.2d 946 (D.C. Cir. 1986) ...................................................... 37

*Seidman v. Office of Thrift Supervision*,
    37 F.3d 911 (3d Cir. 1994) ........................................................... 37

## TABLE OF AUTHORITIES (cont'd)

**Cases**                                                       **Page(s)**

*Shell Chem. Co. v. NLRB*,
   495 F.2d 1116 (5th Cir. 1974) ..................................................................... 30-31

*Small v. Avanti Health Sys., LLC*,
   661 F.3d 1180 (9th Cir. 2011) ...................................................................... 33

*Stein v. Reynolds Securities, Inc.*,
   667 F.2d 33 (11th Cir. 1982) ........................................................................ 31

*Stephens Media, LLC*,
   356 NLRB 661 (2011), *enforced*,
   677 F.3d 1241 (D.C. Cir. 2012) .......................................................... 32, 33, 37

*Trident Seafoods Corp.*,
   642 F.2d 1148 (9th Cir. 1981) ...................................................................... 36

*TRW-United Greenfield Div. v. NLRB*,
   716 F.2d 1391 (11th Cir. 1983) .............................................................. 13, 14

*United States v. L.A. Tucker Truck Lines, Inc.*,
   344 U.S. 33 (1952) ...................................................................................... 21

*Universal Camera Corp. v. NLRB*,
   340 U.S. 474 (1951) .................................................................................... 13

*Wayneview Care Ctr. v. NLRB*,
   664 F.3d 341 (D.C. Cir. 2011) ..................................................................... 12

*Woelke & Romero Framing, Inc. v. NLRB*,
   456 U.S. 645 (1982) ........................................................................ 20, 29, 34

**Statutes**                                                         **Page(s)**

National Labor Relations Act, as amended
  (29 U.S.C. § 151 et seq.)
Section 2(6) (29 U.S.C. § 152(6))........................................................... 20
Section 2(7) (29 U.S.C. § 152(7))........................................................... 20
Section 7 (29 U.S.C. § 157) ............................................................... 9, 12
Section 8(a)(1) (29 U.S.C. § 158(a)(1)) ................................... 3, 8, 12, 14
Section 8(a)(5) (29 U.S.C § 158(a)(5)) ................................... 3, 8, 12, 14
Section 9(c) (29 U.S.C. § 159(c)) ..................................................... 2, 8, 20

## TABLE OF AUTHORITIES (cont'd)

**Statutes**                                **Page(s)**

Section 9(d) (29 U.S.C. § 159(d)) ............................................................. 2
Section 10(a) (29 U.S.C. § 160(a)) ............................................................. 2
Section 10(c) (29 U.S.C. § 160(c)) ....................................................... 11, 29, 30
Section 10(e) (29 U.S.C §§ 160(e)) ........................ 2, 11, 20, 27, 28, 29, 30, 31, 34
Section 10(f) (29 U.S.C. § 160(f)) ............................................................. 2

**Other**                                     **Page(s)**

29 C.F.R. § 102.48(c) ....................................................................... 34
29 C.F.R. § 102.68 .......................................................................... 28
29 C.F.R. § 102.69(d)(1) ................................................................... 28
NLRB Casehandling Manual, Part Two, Representation Proceedings,
  Section 11338.5 ........................................................................ 28

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

————————————

## No. 23-10291-JJ

————————————

## NATIONAL LABOR RELATIONS BOARD

### Petitioner/Cross-Respondent

### v.

## ARRMAZ PRODUCTS INC.

### Respondent/Cross-Petitioner

————————————

## ON APPLICATION FOR ENFORCEMENT
## AND CROSS-PETITION FOR REVIEW OF
## AN ORDER OF THE NATIONAL LABOR RELATIONS BOARD

————————————

## BRIEF FOR
## THE NATIONAL LABOR RELATIONS BOARD

————————————

## STATEMENT OF SUBJECT MATTER AND
## APPELLATE JURISDICTION

This case is before the Court on the application of the National Labor

Relations Board to enforce, and the cross-petition of ArrMaz Products Inc. ("the

Company") to review, a Board Order issued against the Company on December 6,

2022, and reported at 372 NLRB No. 12.[1]  The Board had jurisdiction pursuant to Section 10(a) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(a). The Court has jurisdiction pursuant to Section 10(e) and (f) of the Act, 29 U.S.C. § 160(e) and (f), because the unfair labor practice occurred in Florida.  The Board's Order is final, and the Board's application and the Company's cross-petition were timely because the Act imposes no time limit on such filings.

The Board's Order is based, in part, on findings made in an underlying representation (union election) proceeding, in which the Board certified the International Chemical Workers Union Council of the United Food and Commercial Workers Union, AFL-CIO ("the Union") as the bargaining representative of a unit of the Company's employees.  *See Arr-Maz Products, Limited Partnership*, Board Case No. 12-RC-255997.  Pursuant to Section 9(d) of the Act, 29 U.S.C. § 159(d), the record before this Court includes the record in the representation proceeding.  *Boire v. Greyhound Corp.*, 376 U.S. 473, 477-79 (1964).  The Court may review the Board's actions in the representation proceeding for the limited purpose of deciding whether to enforce, modify, or set aside the Board's Order in whole or part.  29 U.S.C. § 159(d).  The Board retains authority under Section 9(c) of the Act, *id.* § 159(c), to resume processing the

---

[1] On February 3, 2023, the Board issued a correction of its Decision and Order to remove an erroneous comma from the Company's name.

representation case in a manner consistent with the Court's ruling. *Freund Baking Co.*, 330 NLRB 17, 17 & n.3 (1999).

## STATEMENT OF THE ISSUE

The ultimate issue is whether substantial evidence supports the Board's finding that the Company violated Section 8(a)(5) and (1) of the Act, 29 U.S.C § 158(a)(5) & (1), by refusing to recognize and bargain with the Union. The underlying issue is whether the Board acted within its discretion in overruling challenges to two ballots cast in the representation election and therefore certifying the Union as the unit employees' bargaining representative.

## STATEMENT OF THE CASE

This case involves the Company's admitted refusal to recognize and bargain with the Union, its employees' certified bargaining representative, in violation of Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1). Its only defense is that the Union was improperly certified because the Board erroneously excluded and did not count two determinative challenged ballots cast in the representation election. In addition to the Company's refusal to recognize and bargain with the Union, the Board also considered the General Counsel's request that the Board adopt a compensatory remedy making employees whole for the lost opportunity to bargain, and to thus, overrule *Ex-Cell-O Corp.*, 185 NLRB 107 (1970). The Board

3

decided to sever the *Ex-Cell-O Corp.* issue and retain it for further consideration.
(AR 2442.)

## I.   PROCEDURAL HISTORY

### A.   The Representation Proceeding

The Company is a Delaware corporation with an office and place of business located in Mulberry, Florida, where it is engaged in the business of manufacturing and providing specialty chemical additives to the fertilizer, manufacturing, mining, and asphalt paving industries.  (AR 2441; Tr. 12-13, 23, 44, 96-97.)[2]

On February 10, 2020, the Union filed an election petition with Region 12 of the Board in Tampa, Florida seeking to represent the Company's production, warehouse, rail side workers, maintenance, and electrical workers at the Mulberry, Florida location.  (AR 1483.)  On February 18, 2020, the Regional Director approved a Stipulated Election Agreement between the Union and the Company. (AR 1107, 1485-88, 1636.)  The Stipulated Election Agreement names and describes "Arr-Maz Products, Limited Partnership"[3] as the Employer, details the

---

[2] "Br." references are to the Company's opening brief.  From the Agency-certified record, "Tr." references refer to the transcript.  All other references to the Agency-certified record will be referenced as "AR."  References preceding a semicolon are to the Board's findings; those following are to the supporting evidence.

[3] At the time the parties entered the Stipulated Election Agreement, ArrMaz Products Inc. was known as Arr-Maz Products, Limited Partnership.  At the outset of the September 24, 2020 hearing on the two determinative challenged ballots, the

procedure for the election including the date and time the election is scheduled to take place, describes the bargaining unit, and closes with a signature block in which it again names "Arr-Maz Products, Limited Partnership" as the Employer. (AR 1480-82). With respect to the bargaining unit, the agreement states:

> Included: All full-time and regular part-time production operators, sulfonation operators, railside operators, small blends and warehouse operators, maintenance technicians, electrical and instrumentation technicians, custodians, and parts clerks employed by the Employer at its Mulberry, Florida facility.

> Excluded: All other employees, professional laboratory technicians, quality assurance laboratory technicians, engineers, office clerical employees, managers, guards, and supervisors as defined in the Act.

The Board's regional office conducted a manual representation election on March 12 and 13, 2020. (AR 2442; Tr. 6.) The tally of ballots after the election showed 20 votes cast for the Union and 18 votes cast against the Union. There were challenged ballots cast by Jesse Hargadine and Robert Strickland that were determinative in that they could have affected the 20-18 election result. (AR 1620; 1504.) Hargadine and Strickland worked as maintenance technicians for AMP Trucking, Inc., a company managed and controlled by Arkema, which is the parent organization of both ArrMaz Products Inc. and AMP Trucking, Inc. (AR 1624; Tr. 121, 212, 298.) AMP Trucking, Inc. specializes in the delivery of the Company's

---

Company represented that its name had changed. (AR 1549 & n.1; Tr. 12.) For simplicity, this brief will refer to either name as the Company or ArrMaz.

chemical products and is wholly owned by ArrMaz Products Inc.  (AR 1623; Tr. 26, 106-07.)   Although AMP Trucking is wholly owned by ArrMaz, it is a separate corporate entity that was established, in part, to shield ArrMaz from the liability of having AMP Trucking vehicles travel outside of its facilities.  (AR 1623; Tr. 111-12, 143.)  AMP Trucking vehicles are owned by AMP Trucking.  (AR 1623; Tr. 163.)  The Union challenged the ballots of Hargadine and Strickland based on its contention that they are not employed by the Employer named in the Stipulated Election Agreement (ArrMaz), but rather AMP Trucking, and that, therefore, they were not included in the bargaining unit.  (AR 1620; AR 1495, 1714.)

On April 22, 2020, the Regional Director ordered a hearing on the challenged ballots.  (AR 1494-95.)  The hearing was held over 5 days from September 24 to October 1, 2020.  (AR 1, 173, 462, 695, 976.)  On January 29, 2021, the Hearing Officer issued her report, finding that the ballots of Hargadine and Strickland should be excluded and that AMP Trucking, Inc. and ArrMaz Products Inc. constituted a single integrated enterprise and single employer.  (AR 1549-50, 1568, 1577, 1620, 1622.)  The Company filed exceptions to the Hearing Officer's Report, which the Union opposed.  (AR 1580-1606, 1611-18.)  On August 25, 2021, the Regional Director issued a Decision on Challenged Ballots and Certification of Representative, overruling the Company's exceptions and

determining that the challenged ballots should be excluded. The Regional Director also adopted the Hearing Officer's finding that ArrMaz and AMP Trucking constituted a single integrated enterprise and single employer. (AR 1549-50, 1568, 1577, 1620, 1622.) The Regional Director certified the Union as the exclusive collective-bargaining representative of the bargaining-unit employees. (AR 2442; AR 1619-56.)

On September 8, 2021, the Company filed a Request for Review of the Regional Director's decision, appealing that decision to the Board. On February 17, 2022, the Board (Chairman McFerran and Members Kaplan and Ring) denied the Respondent's Request for Review. (AR 2053; AR 1657-94.) The Board determined that the Stipulated Election Agreement clearly and unambiguously excluded employees of AMP Trucking from the bargaining unit, such that the challenged ballots of Hargadine and Strickland were properly excluded from the ballot count. (AR 2053.)

**B.      The Unfair-Labor-Practice Proceeding**

On February 24, 2022, the Union requested that the Company bargain with the Union as the exclusive collective-bargaining representative of the unit. (AR 2442; AR 2054.) The Company refused in order to force a review of the Union's

certification.[4]  In response, the Union filed an unfair-labor-practice charge, and the Board's General Counsel issued a complaint alleging that the Company's refusal to recognize and bargain with the Union violated Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1).  (AR 2054.)  The Company's answer admitted its refusal to bargain but challenged the Union's certification.  The General Counsel moved for summary judgment.  (AR 2441 & n.2.)

## II.     THE BOARD'S CONCLUSIONS AND ORDER

On December 6, 2022, the Board (Chairman McFerran and Members Ring and Wilcox) issued its Decision and Order in the unfair-labor-practice case presently before the Court.  The Board granted the motion for summary judgment, finding that all representation issues raised by the Company were or could have been litigated in the prior representation proceeding and that the Company unlawfully refused to recognize and bargain with the Union.  (AR 2441-42.)

The Board's Order requires the Company to cease and desist from refusing to recognize and bargain with the Union and from, in any like or related manner,

---

[4]  Board certifications under Section 9(c) of the Act, 29 U.S.C. § 159(c), are not directly reviewable.  *See Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1261 n.1 (11th Cir. 1999).  "[A]n employer can obtain review … only by refusing to bargain," triggering a final Board Order finding that the employer has violated the Act by doing so.  *Id.*  The court "can then examine the Board's representation decision as part of its review of the unfair labor order."  *Id.*

interfering with its employees' exercise of their rights under Section 7 of the Act, 29 U.S.C. § 157.  Affirmatively, the Order directs the Company to recognize and bargain with the Union upon request, to embody any understanding reached in a signed agreement, and to post a remedial notice.  (AR 2442-43.)

## SUMMARY OF ARGUMENT

The Company admittedly refused to recognize and bargain with the Union to challenge the Board's certification of the Union.  The Company claims that the Board erred in determining that two employees were ineligible to vote in the election because they were not in the bargaining unit.  Because the Board acted well within its discretion in resolving those ballot challenges, substantial evidence supports the determination that the Company's refusal to bargain violates the Act.

Specifically, applying its settled test, the Board reasonably concluded that Hargadine and Strickland were excluded from the unit pursuant to the Stipulated Election Agreement.  That agreement clearly and unambiguously included only employees employed by ArrMaz to the exclusion of employees of AMP Trucking, including as Hargadine and Strickland.  The Board relied on various aspects of the agreement, such as the agreement only defining and describing the "Employer" as ArrMaz (the only signatory for the Employer) and never mentioning AMP Trucking or addressing the status of other AMP Trucking employees like the drivers.

Several of those findings are not addressed by the Company in its opening brief, and accordingly, any challenges to those findings are waived. Further, the Company's strained reading of the Stipulated Election Agreement is jurisdictionally barred because it was not first raised to the Board and, in any event, stretches vague terminology beyond reason to assert that the agreement describes AMP Trucking's operations. It ignores that the parties easily could have included plain language in the agreement had they intended to encompass AMP Trucking's employees in the bargaining unit.

Relying on a strikingly similar case, the Board also rejected the Company's argument that the finding of single-employer status for ArrMaz and AMP Trucking was determinative of the parties' intent in the election stipulation. The Board relied on circuit court precedent holding that a single employer finding was irrelevant to the parties' intent regarding the bargaining unit and that a trucking company's employees were not included in a unit of the employees of a manufacturing employer, which was the only entity named in the stipulated election agreement. The Company's attempts to distinguish that case fall flat as they are simplistic or based on its jurisdictionally barred and strained reading of the Stipulated Election Agreement.

The Company's remaining arguments fare no better as they are irrelevant or jurisdictionally barred. To the extent the Company relies on extrinsic evidence of

the parties' intent, the Board reasonably concluded that those claims were unnecessary to reach because the Stipulated Election Agreement expressed the parties' intent in clear and unambiguous terms.  The Company's arguments that the Stipulated Election Agreement lacked a "meeting of the minds" between parties and that there exists a strong presumption in favor of the enfranchisement of voters in representation elections were never raised to the Board at all or were not raised at the appropriate time and, thus, are jurisdictionally barred from consideration by the Court.

Lastly, the Company wrongly claims that the Board Order is not final simply because the Board severed and retained for further consideration a discrete remedial issue.  The Order is final under Section 10(c) and (e) of the Act, and courts readily review cases in which the Board severs single issues.  Indeed, the D.C. Circuit recently confirmed its jurisdiction in a similar case with the identical severed remedial issue.  Further, the Board Order here meets the two requirements for administrative finality: judicial review will not disrupt the orderly process of adjudication and legal consequences flow from the Order.  Moreover, the Company's argument that the Board's Order is not final because it improperly severed an additional remedial request is jurisdictionally barred by Section 10(e) of the Act because the Company never raised any challenge to the Board's severance of the remedial issue in a motion for reconsideration before the Board.

11

## ARGUMENT

## SUBSTANTIAL EVIDENCE SUPPORTS THE BOARD'S FINDING THAT THE COMPANY'S ADMITTED REFUSAL TO BARGAIN VIOLATED SECTION 8(a)(5) AND (1) OF THE ACT

### A.    Applicable Principles and Standard of Review

Section 7 of the Act, 29 U.S.C. § 157, grants employees the right, among others, to choose a collective-bargaining representative. Employers have a corresponding duty to bargain with their employees' chosen representatives. Therefore, it is a violation of Section 8(a)(5) of the Act, 29 U.S.C. § 158(a)(5) for an employer "to refuse to bargain collectively" with its employees' chosen representative. Moreover, a violation of Section 8(a)(5) results in a derivative violation of Section 8(a)(1) of the Act, 29 U.S.C. § 158(a)(1), which makes it unlawful for employers to interfere with employees' exercise of their Section 7 rights. *Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 347 n.1 (D.C. Cir. 2011).

The Company admits (Br. 7-8, AR 2070-76) that it refused to bargain with the Union, so the dispositive issue is whether the Board erred in excluding two determinative challenged ballots and consequently certifying the Union as bargaining representative. The Board enjoys "wide discretion" to conduct representation elections, including the determination of voter eligibility, and its representation decisions "warrant special respect on review." *NLRB v. Dynatron/Bondo Corp.*, 992 F.2d 313, 315 (11th Cir.

12

1993) (quoting *M & M Supermarkets, Inc. v. NLRB*, 818 F.2d 1567, 1573

(11th Cir. 1987)); *see also TRW-United Greenfield Div. v. NLRB*, 716 F.2d

1391, 1393 (11th Cir. 1983) (" the only question for this court is whether the

Board reasonably exercised its discretion in overruling the company's

election objections and ballot challenges").

The Court reviews the Board's factual findings and the finding of an

unlawful refusal to bargain for substantial evidence on the record as a whole.

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487-91 (1951); *accord*

*Cooper/T. Smith*, 177 F.3d at 1260, 1261 & n.1.  *See also NLRB v. Allied Med.*

*Transp. Inc.*, 805 F.3d 1000, 1005 ("We will enforce an order of the Board if its

factual findings "are supported by substantial evidence on the record considered as

a whole.") (quoting *NLRB v. Gimrock Constr., Inc.*, 247 F.3d 1307, 1309 (11th Cir.

2001) (citing 29 U.S.C. §160(e))).  "Provided any inferences drawn from the

record were plausible, this Court may not overturn the Board's determination even

if it would make a different finding under a *de novo* review."  *NLRB v.*

*Contemporary Cars, Inc.*, 667 F.3d 1364, 1370 (citing *Cooper/T. Smith, Inc. v.*

*NLRB*, 177 F.3d 1259, 1261 (11th Cir. 1999)).  This Court recognizes that this is a

"narrow standard of review designed to allow disruption of the NLRB's decision

only when the NLRB exercises its discretion 'in an arbitrary or capricious

manner.'"  *Outokumpo Stainless USA, LLC v. NLRB*, 773 F. App'x 531, 533 (11th

Cir. 2019) (quoting *Contemporary Cars*, 667 F.3d at 1370).  This Court gives

deference to the Board's "interpretation of its own precedent."  *Id.* at 534 (11th Cir.

2019) (citing *Ceridian Corp. v. NLRB*, 435 F.3d 352, 355 (D.C. Cir. 2006)).

Because the Board acted within its discretion in sustaining each of the

ballot challenges and certifying the Union, the Company's refusal to

recognize and bargain with the Union (Br. 7-8) violates Section 8(a)(5) and

(1) of the Act.  *TRW-United Greenfield Div.*, 716 F.2d at 1393; *see also*

*Hard Rock Holdings*, 672 F.3d 1117, 1120 (D.C. Cir. 2012) (holding "court

must determine whether the Board abused its discretion" in sustaining

challenges to ballots).

## B.  The Stipulated Election Agreement Clearly and Unambiguously Excluded Hargadine and Strickland from the Bargaining Unit

The Company challenges the certification of the Unit by claiming that

the Stipulated Election Agreement clearly and unambiguously included

Hargadine and Strickland in the bargaining unit, and that, therefore, the

Board wrongly excluded their determinative ballots from being counted.  As

shown below, the Board acted well within its discretion in finding that the

Stipulated Election Agreement clearly and unambiguously included only

employees of ArrMaz in the bargaining unit. As Hargadine and Strickland

14

were employees of AMP Trucking, their ballots were appropriately excluded, and the Board's certification of the Union was proper.

The Board holds that a Stipulated Election Agreement is a binding contract, and the parties are bound by the "clear and unambiguous" terms of the agreement.  *Caesar's Tahoe*, 337 NLRB 1096, 1097 (2002); *Laidlaw Transit, Inc*., 322 NLRB 895, 895 (1997).   In *Caesar's Tahoe*, 337 NLRB 1096 (2002), the Board adopted a three-prong test for resolving ballots challenged based on whether the disputed employees were included in the bargaining unit and eligible to vote.  That test was first articulated by the D.C. Circuit in *Associated Milk Producers, Inc. v. NLRB*, 193 F.3d 539 (D.C. Cir. 1999).  Under this test, the Board must first determine whether the election stipulation is ambiguous regarding which employees are in the bargaining unit and eligible to vote in a representation election.  *Caesar's Tahoe*, 337 NLRB at 1097.  "If the objective intent of the parties is expressed in clear and unambiguous terms in the stipulation," the parties are bound by them and the Board "simply enforces the agreement."  *Id*.  "If, however, the stipulation is ambiguous," the Board must proceed to the second prong and "determine the parties' intent through normal methods of contract interpretation, including the examination of extrinsic evidence."  *Id*. "If the parties' intent still cannot be discerned," the Board moves to the third

15

prong and determines whether the challenged employees should be included in the bargaining unit "by employing its normal community-of-interest test." *Id*.

In the instant case, the Board reasonably found that the clear and unambiguous terms of the Stipulated Election Agreement demonstrate that the Company and the Union's objective intent was to only include employees of the Company (ArrMaz) in the bargaining unit, not employees of AMP Trucking. As the Board explained, several aspects of the agreement demonstrate that intent.

First, the Stipulated Election Agreement describes "the Employer" as ArrMaz, "a Delaware limited partnership" that is "engaged in the business of manufacturing and providing specialty chemical additives to the fertilizer manufacturing, mining, and asphalt paving industries." (AR 1480.) At the time of the agreement, ArrMaz was a limited partnership engaged in that described business, while AMP Trucking was a corporation engaged in the transportation, not the manufacture, of the Company's chemical products. (AR 1640-41; Tr. 26, 106-7.) Thus, the name of the Employer and the description of its business show that the parties were referring to ArrMaz, not AMP Trucking, as "the Employer." Indeed, the *only* employing entity named in the Stipulated Election Agreement is "Arr-Maz Products, Limited Partnership," the undisputed prior name of ArrMaz. And it is listed three times – in the name of the case, the commerce facts, and the

signature block, while AMP Trucking, Inc. is not mentioned at all.  (AR 1636; AR 1480-83.)

Furthermore, the Board reasonably found that the parties' failure to address the status of other AMP Trucking Inc. employees shows that they intended to exclude all AMP Trucking employees from the bargaining unit.  As the Board explained, had the parties intended to include AMP Trucking maintenance technicians Hargadine and Strickland in the bargaining unit, they necessarily would have listed AMP Trucking's truck drivers among the positions excluded from the bargaining unit, to make clear the drivers were not included in the unit. But the job title "truck driver" is not among the specific job titles excluded from the bargaining unit.  (AR 1641; AR 1481.)  Rather, the status of the drivers is not addressed at all, which would be a significant omission if, as the Company claims, the parties intended to include the AMP Trucking maintenance technicians in the bargaining unit.  The omission of AMP Trucking and any of its employees in the Stipulated Election Agreement demonstrates that the parties clearly and unambiguously intended to include only employees of ArrMaz in the bargaining unit.  Because the Stipulated Election Agreement is clear and unambiguous on its face, the Board acted well within its wide discretion in enforcing that agreement under the first step of *Caesar's Tahoe* and excluding the ballots of Hargadine and Strickland.

17

Although the Company posits that the Stipulated Election Agreement unambiguously requires Hargadine's and Strickland's ballots to be counted (Br. 19-27), it fails to address the aspects of the agreement relied upon by the Board. These include: the signature block in which ArrMaz alone signed the Agreement; the description of the Employer as a Delaware limited partnership (which ArrMaz was at the time it signed the agreement) rather than as a Delaware corporation (which AMP Trucking, Inc. is); and the unit description of excluded job classification section which did not list AMP truck drivers as an excluded classification.  (AR 1480-82.)  Accordingly, the Company has waived any such challenges to the Board's reliance on those aspects of the Stipulated Election Agreement.  *See Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012) (collecting cases regarding waiver of issues for failure to raise in opening brief).

 Instead, the Company claims that Hargadine and Strickland fit into the Stipulated Election Agreement's description of the bargaining unit and that the description provided in the agreement's commerce section describes work done only by AMP Trucking.  Neither of these claims further its cause.

First, the Company argues that the description of the bargaining unit in the agreement contains three essential elements for inclusion in the stipulated bargaining unit: 1) the job title is listed in the included category of

18

employees, 2) the employees work at the Employer's Mulberry, Florida

facility, and 3) the employees are employed by the stipulated Employer.

(Br. 19-20.)  The Company claims that because Hargadine and Strickland

are maintenance technicians (a listed job title) at Mulberry, they meet all

three of these elements, and therefore, they are in the unit and their ballots

should be counted.  (Br. 20.)  However, the Company fails to mention that

the "Employer" named by the Stipulated Election Agreement and included

in the agreement's signature block is "Arr-Maz Products, Limited

Partnership" and not "AMP Trucking, Inc."  (AR 1480-82.)  Because

Hargadine and Strickland were maintenance technicians for AMP Trucking,

Inc., not ArrMaz, they fail to meet the essential element of being employed

by the stipulated Employer and their votes were properly excluded by the

Board.

Second, the Company argues that, because the commerce section of the

Stipulated Election Agreement includes in the description of the Employer's

business work performed only by employees of AMP Trucking, Hargadine and

Strickland are in the unit.  More specifically, it claims that the terms "providing"

and "received" refer to AMP Trucking's transportation of ArrMaz's products to

19

other facilities or customers and supplies coming to ArrMaz's facility.[5]  (Br. 23.)
The Court, however, is jurisdictionally barred from considering that argument
under Section 10(e) of the Act, 29 U.S.C. 160(e), because it was not first raised to
the Board.

Section 10(e) provides in relevant part: "No objection that has not been
urged before the Board . . . shall be considered by the court, unless the failure or
neglect to urge such objection shall be excused because of extraordinary
circumstances."  29 U.S.C. § 160(e).  *See also NLRB v. Contemporary Cars, Inc.*,
667 F.3d 1364, 1368 (11th Cir. 2012) (citing *Woelke & Romero Framing, Inc. v.
NLRB*, 456 U.S. 645, 665-66 (1982); *NLRB v. Ochoa Fertilizer Corp*., 368 U.S.

---

[5] The Commerce provision states:

> **2. COMMERCE.** The Employer is engaged in commerce within the
> meaning of Section 2(6) and (7) of the National Labor Relations Act
> and a question affecting commerce has arisen concerning the
> representation of employees within the meaning of Section 9(c).
>
> Arr-Maz Products, Limited Partnership is a Delaware limited
> partnership with an office and place of business located at 4800 State
> Road 60 E, Mulberry, Florida, and is engaged in the business of
> manufacturing and providing specialty chemical additives to the
> fertilizer manufacturing, mining, and asphalt paving industries.
> During the past 12 month period, in conducting these business
> operations described above, the Employer purchased and received at
> its Florida facilities goods valued in excess of $50,000 directly from
> points located outside the State of Florida.

(AR 1480.)

318, 322 (1961)).  Here, the Company failed to raise any argument relying on the "providing" and "received" language in its Request for Review in the representation case as required.  (AR 1657-94.)  While the Company relied on the "providing" language (not "received") in its opposition to the General Counsel's motion for summary judgment in the unfair-labor-practice case (AR 2322), that assertion came too late as all issues related to the election were to be raised in the representation case.  *See Pace University v. NLRB*, 514 F.3d 19, 23, 26-27 (D.C. Cir. 2008) ("The Board has drawn a "well established" line between representation and unfair labor practice proceedings, requiring that any issues that may be presented during the representation proceeding must be offered there."); *see generally United States v. L.A. Tucker Truck Lines, Inc.,* 344 U.S. 33, 37 (1952) ("[S]imple fairness to those who are engaged in the task of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice").  Accordingly, the Court cannot consider the argument that the "providing" and "received" language demonstrates the parties' intent to include AMP Trucking employees in the unit.

In any event, the Company's argument stretches the meaning of the terms "providing" and "received" beyond reason in claiming that they specifically refer

to AMP Trucking's transportation of ArrMaz's products to other facilities or customers and delivery of supplies to ArrMaz's facility.  The Company overlooks that "the Employer" named in the commerce provision as being engaged in the business of providing and receiving is "Arr-Maz Products, Limited Partnership." Moreover, had the Company and Union wanted to include employees involved in the transport of the Company's goods and supplies, they could have done so easily by naming AMP Trucking Inc. in the agreement.  Even aside from that obvious solution, the parties could specifically have used the term "transport" to indicate that type of work.  Crafting language to include the AMP Trucking employees was not difficult.  Following the Company's trail of breadcrumbs based on vague language is unnecessary and fails to show clear and unambiguous intent to include Hargadine and Strickland in the unit.  And, as described above, the parties failed to address the status of AMP Trucking Inc.'s *drivers*, who would be covered by the "providing" and "received" language even more so than Hargadine and Strickland, who are maintenance technicians.  In short, the parties plainly intended to include only ArrMaz employees in the bargaining unit and the Company's claims fail to show otherwise.

22

**C.    The Single Employer Status of ArrMaz and AMP Trucking Does Not Negate the Clear and Unambiguous Terms of the Stipulated Election Agreement; the Company's Distinction of *Barker Steel* is Fatally Flawed**

In its brief, the Company fails to grasp that a finding that two companies are a single employer does not, as a matter of law, result in the inclusion of both companies' employees in the bargaining unit.  Therefore, the Board's legal finding here that ArrMaz and AMP Trucking are a single employer fails to demonstrate that the parties intended to encompass both entities in the Stipulated Election Agreement.  Under *Caesar's Tahoe*, the parties' intent in making that agreement is paramount.  Indeed, at the time the parties reached and signed that agreement, there had been no claim of, litigation over, or a finding of, a single employer and, as described above, that agreement does not mention AMP Trucking in any capacity.

Moreover, as the Board explained, the Company's position that the single employer finding trumps the language in the Stipulated Election Agreement has been rejected under strikingly similar circumstances.  In *NLRB v. Barker Steel Co.*, 800 F.2d 284 (1st Cir. 1986), which the Board here explicitly relied on (AR 2441), the First Circuit denied enforcement of a Board order where the Board found that the bargaining unit at issue included employees of BNP Trucking Inc. in addition to employees of Barker Steel Co.  The Board initially found that Barker Steel and BNP Trucking were a single employer, and that the parties' stipulated election

23

agreement did not clearly exclude BNP Trucking employees from the unit. *Id.* at 286. After coming to this conclusion, the Board applied its traditional community-of-interest test[6] and determined that BNP Trucking employees should be included in the bargaining unit. *Id.* The court disagreed, holding that, when analyzing the language of the stipulated election agreement, it did not matter that Barker Steel and BNP Trucking were a single employer, because the language of the agreement made it clear that the parties intended to include only Barker Steel's employees in the bargaining unit. *Id.* at 287.

The court relied on the following facts in concluding that the stipulated election agreement was intended to only include employees of Barker Steel in the bargaining unit:

- the description of Barker Steel's business in the election agreement as involving manufacturing and not transportation

- the description of the unit employees as being employed by the "Employer" named specifically as Barker Steel

---

[6] The Board's community-of-interest test is applied in various contexts to determine "whether employees in a petitioned-for group share a community of interest sufficiently distinct from the interests of employees excluded from the petitioned-for group to warrant a finding that the proposed group constitutes a separate appropriate unit." (AR 1643) (citing *PCC Structurals, Inc.,* 365 NLRB No. 160 (2017)).

- Barker Steel's payroll being the basis for the voter eligibility list

- the election being held at Barker Steel

- the lack of language specifying that BNP Trucking employees were to be included in the bargaining unit

- Barker Steel as the sole signatory for the employer and

- the lack of BNP Trucking's name anywhere on the agreement.

*Id.* And the court flatly rejected the same argument espoused by the Company here, concluding that "it is spurious to contend that it was the intention of either Barker Steel or the Union at the time of the signing of the stipulation, to include in the unit the employees of BNP. Had this been the intention of the parties they could easily have specified that additional entity as an employer or as a joint employer, e.g., Barker Steel/BNP." *Id.* Moreover, the court stated that "[t]he joint employer issue is a red herring" that "has no relevance to a determination regarding the *intention* of the parties in signing the consent agreement[,]" *Id.* (emphasis in original) and that the Board "need go no further than the plain words of the Stipulation to determine who is the employer named in that document." *Id.*

Likewise, in the instant case, the Board needed to go no further than the plain words of the Stipulated Election Agreement to determine that, like the agreement in *Barker Steel Co.*, it clearly and unambiguously includes only employees of ArrMaz and not AMP Trucking. The Stipulated Election Agreement

25

here, like the one in *Barker Steel*, only mentions ArrMaz as the Employer, describes the Employer's business as manufacturing not transportation, does not specifically include (or address in any way) employees of AMP Trucking, and describes unit employees as being employed by ArrMaz rather than AMP Trucking.  The finding that ArrMaz and AMP Trucking constitute a single employer does not render the Board's decision to exclude Hargadine and Strickland's ballots illogical as the Company argues, but rather, it is a red herring and irrelevant to the issue of the parties' intent regarding the bargaining unit.

The Company's contention (Br. 26) that the Board incorrectly relied on *NLRB v. Barker Steel Inc.*, 800 F.2d 284 (1st Cir. 1986), because that decision pre-dated *Caesar's Tahoe*, 337 NLRB 1096 (2002), is simplistic and ignores the identical principles in both cases.  It makes no difference that *Barker Steel* pre-dated *Caesar's Tahoe*, because the test under both cases was the same: whether the parties' stipulated election agreement clearly expressed their intent as to the challenged employees.  *Compare Barker Steel*, 800 F.2d at 286 ("If the intent of the parties concerning the challenged voter is expressed in the stipulation in clear and unambiguous terms, the Board will hold the parties to their literal agreement.") *with Caesar's Tahoe*, 337 NLRB at 1097 ("the Board must first determine whether the stipulation is ambiguous. If the objective intent of the parties is expressed in

26

clear and unambiguous terms in the stipulation, the Board simply enforces the agreement").

The Company's additional distinction of *Barker Steel*—that the instant agreement's inclusion of the terms "providing" and "received" supposedly to describe AMP Trucking's operations somehow is an improvement over the language in *Barker Steel*—fails procedurally and substantively. (Br. 23.) As explained in the prior section, the Company's "providing" and "received" argument is jurisdictionally barred by Section 10(e). And, again, it is meritless, especially given the many ways the parties could have clearly described a trucking operation and the inclusion of those employees within the agreement.

The Company raises no other challenges to the Board's reliance on *Barker Steel*, including to the many similarities between the two cases and the court's statement that the legal finding regarding the relationship between the two companies is irrelevant to parties' intent regarding the bargaining unit. Accordingly, it has waived any such challenges. *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1306 (11th Cir. 2012).

### D.    The Company's Remaining Arguments Regarding the Stipulated Election Agreement Are Irrelevant or Barred by Section 10(e)

The Company wrongly points to extrinsic evidence regarding the parties' intent in the event that the Court finds that the Stipulated Election Agreement was

ambiguous and requires the analysis to move to prong two of the three-prong analysis laid out in *Caesar's Tahoe*. (Br. 28-30.) As explained above, because the Board reasonably found that the Stipulated Election Agreement unambiguously excluded Hargadine and Strickland from the proposed bargaining unit, it had no need to consider extrinsic evidence to ascertain the intent of the parties and, accordingly, neither does the Court.[7]

Finally, the Company raises additional arguments that are jurisdictionally barred by Section 10(e) of the Act because they were not raised to the Board. (Br. 34-36.) First, the Company raises for the first time in its brief to this Court the arguments that the parties' lacked a "meeting of the minds" (AR 1657-94) and that there is a strong presumption in favor of the enfranchisement of voters. (Br. 15.) Accordingly, the Board had no opportunity to consider either argument and

---

[7] The Company's reliance on the voter list, which was unilaterally compiled by the employer, as one such piece of extrinsic evidence is particularly unfounded as the Union's failure to object to the inclusion of Strickland and Hargadine on the list is irrelevant. (Br. 6, 31.) Per Board procedure, parties need not challenge the eligibility of voters until they actually show up to vote. *See* Section 11338.5 of the Board's Casehandling Manual, Part Two, Representation Proceedings (regarding the proper time to challenge voter), *available at* https://www.nlrb.gov/sites/default/files/attachments/pages/node-174/chm-part-ii-rep2019published-9-17-20.pdf. (AR 1637.) And, contrary to the Company's claim (Br. 3 n.3), the voter list is not part of the administrative record per the Board's Rules and Regulations. *See* 29 C.F.R. 102.68, 102.69(d)(1) (listing contents of representation case records).

Section 10(e) of the Act bars the Court from addressing them, absent a showing of extraordinary circumstances. *NLRB v. Contemporary Cars, Inc.*, 667 F.3d 1364, 1368 (11th Cir. 2012) (citing *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982); *NLRB v. Ochoa Fertilizer Corp.*, 368 U.S. 318, 322 (1961)). As the Company shows no extraordinary circumstances, the Court cannot consider those claims.

### E. The Board's Order Conforms with Principles of Administrative Finality; the Company's Arguments Regarding the Board's Severance of an Additional Remedy Are Jurisdictionally Barred and Meritless

#### 1. The Act and administrative finality principles support judicial review of the Board's Order now; severance of one issue does not affect review

The Board's Order is final under Section 10(c) and (e) of the Act (29 U.S.C §§ 160(c), (e)) and conforms with principles of administrative finality. The Board ordered the Company to bargain with the Union and severed and retained for further consideration a discrete make-whole remedy requested by the General Counsel and opposed by the Company. It did so "to expedite the issuance of this decision regarding the remaining issues in this case."[8] (AR 2442.) The Board

---

[8] The Company's repeated statements that the Board held the severed issue in "abeyance" (Br. vii, ix, 12) are incorrect. The Board made no mention of abeyance; it only severed and retained the issue for further consideration. Thus, to the extent that the Company implies that the Board is not actively considering the severed issue, it has no basis for that suggestion.

routinely severs issues in unfair-labor-practice cases, just as it did here, without affecting the finality of the order.

Section 10(c) of the Act provides that if the Board determines "that any person named in [an unfair-labor-practice] complaint has engaged in or is engaging in any such unfair labor practice, then the Board shall state its findings of fact and shall issue … an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action … as will effectuate the policies of this Act." 29 U.S.C. § 160(c). Section 10(e) of the Act empowers the Board to petition an appropriate court of appeals "for enforcement of such order," and provides that upon the filing of such petition, the court "shall have jurisdiction of the proceeding and of the question determined therein." 29 U.S.C. § 160(e).

The Order before the Court on the Board's application for enforcement is precisely the type of reviewable order identified in Section 10(c) and (e) of the Act. The Board determined that the Company violated the Act and issued a remedial Order directing the Company to "[c]ease and desist from" this violation and to take specified "affirmative action" deemed "necessary to effectuate the policies of the Act" including immediately bargaining with the Union on request. (AR 2442-43.)

Thus, the Board's Order unmistakably "grant[s] … relief relating to an unfair labor practice" and "result[s] from the culmination of the procedure outlined in" Section 10(c) of the Act. *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1120 (5th

30

Cir. 1974).[9]  Accordingly, Section 10(e) gives the Court jurisdiction to review the Order.  Indeed, the Supreme Court long ago affirmed courts of appeals' jurisdiction to review Board orders "prohibiting an unfair labor practice" or "directing [an] employer to do something" to remedy such a violation, including where, as here, such an order is "predicated upon the results of [a representation] election." *Am. Fed'n of Labor v. NLRB*, 308 U.S. 401, 406-11 & n.3 (1940) (quotation marks omitted).

Principles of administrative finality further support the Court's review of this case now.  "'The relevant considerations in determining finality [of administrative orders] are whether the process of administrative decisionmaking has reached a stage where judicial review will not disrupt the orderly process of adjudication and whether rights or obligations have been determined or legal consequences will flow from the agency action.'" *Fla. Pub. Serv. Comm. v. Interstate Commerce Comm*., 724 F.2d 1460, 1462 (11th Cir. 1984) (quoting *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970)) (dismissing for lack of finality because no rights had been determined).

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down by September 30, 1981, as well as all decisions by a Unit B panel of the former Fifth Circuit, *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir. 1982).

Here, both requirements for finality have been met.  First, the Court's review now will not disrupt the case as there must be affirmation and enforcement of the bargaining obligation for the case to proceed any further.  As in *Stephens Media, LLC v. NLRB*, "the severed issue is not intertwined with the findings that [the Court] review[s] here, so [the Court's] review will not 'disrupt the orderly process of adjudication' over the [severed issue]."  677 F.3d 1241, 1250 (D.C. Cir. 2012) (citation omitted).  Second, obligations and legal consequences flow from the Board's Order that requires the Company to bargain with the Union.

Moreover, the Board's severance determination does not affect the Court's review of the instant final order.  The Board routinely severs issues in its unfair-labor-practice proceedings.  For example, the Board has, with court approval, severed a substantive or remedial issue for further consideration while simultaneously issuing a final unfair-labor-practice order providing other immediate remedies—just as it did here.[10]  Indeed, the D.C. Circuit recently

---

[10] *See e.g., Picini Flooring*, 355 NLRB 606, 612 & n.23 (2010) (severing electronic-notice-posting issue), *enforced sub nom. Int'l Union of Painters v. J&R Flooring, Inc.*, 656 F.3d 860 (9th Cir. 2011) (reviewing non-severed portions of case); *Kentucky River Med. Ctr.*, 355 NLRB 643, 647-48 & n.13 (2010) (severing compound-interest issue), *enforcement denied on other grounds sub nom. Jackson Hosp. Corp. v. NLRB*, 647 F.3d 1137 (D.C. Cir. 2011) (reviewing non-severed portions); *Freeman Decorating Co.*, 336 NLRB 1, 12 (2001) (remanding to ALJ issue of potential instatement-and-backpay remedy), *enforcement denied on other grounds sub nom. IATSE Local 39 v. NLRB*, 334 F.3d 27 (D.C. Cir. 2003)

confirmed its jurisdiction in affirming an employer's bargaining obligation despite the Board's severing and retaining for consideration the same *Ex-Cell-O Corp.* make-whole issue as here. The court stated: "That the Board severed a remedial issue for future consideration does not affect our jurisdiction to consider [the employer]'s petition for review and adjudicate issues that the Board has resolved." *Longmont United Hospital v. NLRB*, No. 22-1262, slip op. at 5-6, 2023 Lexis 14719 at *6 (D.C. Cir. Jun. 13, 2023). This procedure is appropriate to expedite review of the resolved issue of the Company's bargaining obligation and, if affirmed, bring the Company to the bargaining table while the matter of the additional make-whole remedy is considered. Delays in the commencement of bargaining deprive employees of their chosen representative and create a "myriad of irreparable harm." *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191-94 (9th Cir. 2011). And there may be no practical effect of the severance of the additional remedial issue as it is unknown whether the Board will order the relief requested by the General Counsel, which (as pointed out by the Company) would require overruling Board precedent.

---

(reviewing non-severed portions); *see also Stephens Media, LLC*, 356 NLRB 661, 663 (2011) (severing issue of employer duty to provide witness statements), *enforced*, 677 F.3d 1241, 1249-50 (D.C. Cir. 2012) (reviewing non-severed portions).

### 2. The Company's arguments regarding the Board's severance of an additional remedy are jurisdictionally barred and meritless

The Company's challenge to the Board's severing and retaining for further consideration the make-whole-relief request is not properly before the Court because the Company never challenged that determination before the Board. Here, when the Board *sua sponte* determined in its Decision and Order to sever the additional remedial issue, the Company sat silent rather than filing a motion for reconsideration.

It is well established that where, as here, a party could not have raised a contention prior to the issuance of the Board's decision, the party must present that contention to the Board in a motion for reconsideration to preserve it for judicial review. *See* 29 C.F.R. § 102.48(c) (allowing motions for reconsideration within 28 days of Board's decision). As explained above (pp. 20-21), Section 10(e) jurisdictionally bars courts from considering arguments that were not raised to the Board. 29 U.S.C. § 160(e); *Woelke & Romero Framing, Inc. v. NLRB*, 456 U.S. 645, 665-66 (1982) ("[The relevant party] could have objected to the Board's decision in a petition for reconsideration or rehearing. The failure to do so prevents consideration of the question by the courts."); *Int'l Ladies' Garment Workers' Union v. Quality Mfg. Co.*, 420 U.S. 276, 281 n.3 (1975); *Contemporary Cars, Inc.*, 667 F.3d at 1368.

By failing to seek reconsideration, the Company denied the Board the opportunity to consider or address the objections it belatedly raises and has thereby denied the Court the benefit of the Board's opinion and expertise on these matters. Moreover, the Company has not alleged, much less shown, extraordinary circumstances that would excuse its failure to raise its objections to the Board. *See Contemporary Cars, Inc.*, 667 F.3d at 1368. Thus, the Court lacks jurisdiction to entertain the Company's challenges to the Board's severance determination. 29 U.S.C. § 160(e).

In any event, the Company relies on cases that do not support its argument that the Board's severance of the remedial issue rendered the order nonfinal. It cites *NLRB v. Imperial House Condominium, Inc.*, 831 F.2d 999, 1002 (11th Cir. 1987), for the undisputed principle that a Board order must be final for a reviewing court to have jurisdiction. (Br. 17.) In *Imperial House Condominium*, this Court rejected the employer's argument that the order there was not final because, the employer contended, the Board erred in finding its motion for reconsideration untimely. *Id.* at 1000-02. The case did not involve, as here, the Board's severing and retaining a discrete issue for further consideration and therefore does not show that the Board's Order here is not final.

*NLRB v. G & T Terminal Packaging Co.*, 246 F.3d 103 (2d Cir. 2001), likewise does not further the Company's argument. (Br. 17.) There, the Second

Circuit stated another uncontroversial principle that, when the Board leaves remedial details to be addressed in a subsequent compliance proceeding, the remaining issues "must merely flesh out and follow from the remedy ordered by the Board."[11] *Id.* at 125. Here, the Board did not leave anything to a compliance proceeding. It severed and retained for further consideration the request for make-whole relief, a remedy distinct from the bargaining remedy already ordered. *G & T Terminal Packaging* does not undermine the Board's ability to sever and retain an issue for further consideration.

Further, the Company's claims that enforcing the Board's final order would lead to "piecemeal" litigation or would subject it to a "wholly different standard" are unsupported. (Br. 18-19.) Again, there is no certainty whether there will even be another piece in this litigation as it is unknown whether the Board will overturn Board precedent and grant the additional make-whole remedy. Additional litigation is therefore speculative. And if such additional litigation came to pass, it would not be unusual in Board cases where compliance proceedings are bifurcated as explained above. Moreover, an agency's order or other action "may be final [for purposes of judicial review] though it is not the very last step in the

---

[11] Board proceedings are bifurcated into a liability phase and, if necessary, a damages phase, which is referred to as a compliance proceeding. *See NLRB v. Trident Seafoods Corp.*, 642 F.2d 1148, 1150 (9th Cir. 1981) (explaining process); *NLRB v. Katz's Delicatessen of Houston Street, Inc.,* 80 F.3d 755, 771 (2d Cir. 1996) (likening compliance to the damages phase of a civil trial).

administrative process." *Mountain States Tel. & Tel. Co. v. FCC*, 939 F.2d 1021, 1027 (D.C. Cir. 1991); *accord Reuters, Ltd. v. FCC*, 781 F.2d 946, 947 n.1 (D.C. Cir. 1986); *see also Seidman v. Office of Thrift Supervision*, 37 F.3d 911, 915, 922-23 (3d Cir. 1994) ("cease and desist" order was final although agency remanded to an administrative law judge to determine potential civil penalties). This principle is reflected in *Stephens Media, LLC*, where the D.C. Circuit squarely held the Board's order to be final notwithstanding that the Board had severed and retained a distinct allegation and thereby "removed [it] . . . from the realm of [the] case [before the court]." 677 F.3d at 1249-50.

## CONCLUSION

The Board respectfully requests that the Court enter a judgment denying the

Company's petition for review and enforcing the Board's Order in full.

Respectfully submitted,

/s/ Usha Dheenan
USHA DHEENAN
*Supervisory Attorney*

/s/ Susan L. Kania
SUSAN L. KANIA
*Attorney*
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2948
(202) 273-0107

JENNIFER A. ABRUZZO
    *General Counsel*
PETER SUNG OHR
    *Deputy General Counsel*
RUTH E. BURDICK
    *Deputy Associate General Counsel*
DAVID HABENSTREIT
    *Assistant General Counsel*

National Labor Relations Board
June 2023

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____  )
                                                 )
NATIONAL LABOR RELATIONS BOARD                   )
                                                 )
                Petitioner/Cross-Respondent      )   No. 23-10291-JJ
                                                 )
        v.                                       )
                                                 )   Board Case No.
ARRMAZ PRODUCTS INC.                             )   12-CA-294086
                                                 )
                Respondent/Cross-Petitioner      )
_____  )

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board

certifies that its brief contains 8,391 words of proportionally-spaced, 14-point

type, and the word processing system used was Microsoft Office 365.

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 21st day of June 2023

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

_____

|  |  |  |
|---|---|---|
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Petitioner/Cross-Respondent | ) | No. 23-10291-JJ |
| | ) | |
| v. | ) | |
| | ) | Board Case No. |
| ARRMAZ PRODUCTS INC. | ) | 12-CA-294086 |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

_____

**CERTIFICATE OF SERVICE**

I certify that on June 21, 2023, I electronically filed the foregoing with the

Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit

by using the appellate CM/ECF system.  I further certify that the foregoing

document was served on all parties or their counsel of record through the CM/ECF

system.

Respectfully submitted,

/s/ Ruth E. Burdick
Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, SE
Washington, DC 20570
(202) 273-2960

Dated at Washington, DC
this 21st day of June 2023