U.S. Court of Appeals Docket No. 23-10291

NLRB Case No. 372 NLRB No. 12

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

National Labor Relations Board,

*Petitioner,*

vs.

ArrMaz Products, Inc.,

*Respondent.*

---

## REPLY BRIEF OF RESPONDENT AND CROSS-PETITIONER ARRMAZ PRODUCTS INC.

---

On Application for Enforcement of an Order of
The National Labor Relations Board

---

Bernard J. Bobber
bernard.bobber@ogletree.com
Jesse R. Dill
jesse.dill@ogletree.com
David M. DeMaio
david.demaio@ogletree.com
Brian Hayes
brian.hayes@ogletree.com


OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI 53205

Telephone: 414-239-6400
Facsimile:  414-755-8289

Attorneys for Respondent ArrMaz Products, Inc.

_____

U.S. Court of Appeals Docket No. 23-10291
NLRB Case No. 372 NLRB No. 12

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

National Labor Relations Board,
*Petitioner & Cross-Respondent,*

vs.

ArrMaz Products, Inc.,
*Respondent.*

---

On Application for Enforcement and
Cross-Petition for Review of
an Order of the National Labor Relations Board

---

## RESPONDENT AND CROSS-PETITIONER'S CERTIFICATE OF INTERESTED PERSONS

---

Pursuant to 11th Cir. R. 26.1-2, Respondent ArrMaz Products Inc. hereby files its notice regarding Respondent's Certificate of Interested Persons. The following constitute interested persons and entities in this case.

Arkema Delaware Inc. – Parent Corporation of Respondent. Pursuant to 11th Cir. R. 26.1-3(b), Respondent identifies that Arkema Delaware Inc. is wholly owned by Arkema Ameriques S.A.S, which in turn is wholly owned by Arkema S.A., which is publicly traded on the Euronext Paris stock exchange under stock symbol AKE.

C-1

Abruzzo, Jennifer A. – General Counsel, National Labor Relations Board

ArrMaz Products Inc. – Respondent

Bobber, Bernard J. – Counsel to Respondent

Burdick, Ruth E. – Counsel to Petitioner

Cohen, David – Regional Director (Region 12), National Labor Relations Board

DeMaio, David M. – Counsel to Respondent

Dheenan, Usha – Counsel to Petitioner

Dill, Jesse R. – Counsel to Respondent

Hayes, Brian – Counsel to Respondent

International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union – Charging Party and Intervenor

McFerran, Lauren – Chairman, National Labor Relations Board

National Labor Relations Board – Petitioner

Ogletree, Deakins, Nash, Smoak & Stewart, P.C. – Law Firm of Counsel to Respondent

Ring, John F. – former Member, National Labor Relations Board

Vehar, August Randall – Counsel to Charging Party and Intervenor International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union

Wilcox, Gwynn A. – Member, National Labor Relations Board

## <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTERESTED PERSONS**................................................ **C-1**

**TABLE OF CONTENTS** ......................................................................**i**

**TABLE OF CITATIONS** .................................................................. **ii**

I. **Introduction**................................................................................**1**

II. **Clarification of Statement of the Issue** ......................................**2**

III. **Argument**.................................................................................**4**

    A. **To Avoid Piecemeal Appeals and Fundamental Unfairness, the Court Should Decline Jurisdiction Over the Board's Incomplete Ruling Because that Ruling is Not a "Final Order."** ........**4**

    B. **The Undisputed Facts Belie the Board's Only Argument on the Merits.** ...................................................................................**10**

    C. **The Board Made No Ruling at the Second-Stage of the *Caesars Tahoe* Analysis, and the Extrinsic Evidence Confirms the Parties' Intent to Include These Maintenance Technicians in the Voting Unit**.............................................................................**16**

    D. **If the Court Concludes that the Parties in Fact Made No Enforceable Agreement, It Should Remand the Case for Another Election Process that Clearly Establishes the Voting Unit.**......................................................................................**21**

IV. **Conclusion** ................................................................................**23**

**CERTIFICATE OF COMPLIANCE** ....................................................**25**

**CERTIFICATE OF SERVICE** ...........................................................**26**

## <u>TABLE OF CITATIONS</u>

**Page(s)**

**Cases**

*Adtranz ABB Daimler-Benz Transp., N.A., Inc. v. N.L.R.B.*,
  253 F.3d 19 (D.C. Cir. 2001)............................................................8

*Bennett v. Spear*,
  520 U.S. 154 (1997).......................................................................5

*Re Bristitzky*,
  323 NLRB 524 (1997) ...................................................................13

*Caesar's Tahoe*,
  337 NLRB 1096 (2002) .................................................................10

*Consol. Freightways v. NLRB*,
  669 F.2d 790 (D.C. Cir. 1981)......................................................15

*Dear v. Q Club Hotel, LLC*,
  933 F.3d 1286 (11th Cir. 2019) .....................................................3

*Edward J. White, Inc.*,
  237 NLRB 1020 (1978) .................................................................12

*HTH Corp. v. N.L.R.B.*,
  823 F.3d 668 (D.C. Cir. 2016).......................................................14

*Longmont United Hosp. v. Nat'l Lab. Rels. Bd.*,
  70 F.4th 573 (D.C. Cir. 2023).........................................................8

*Masland Indus.*,
  311 NLRB 184 (1993) ...................................................................20

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996) ...........................................................12

*Nathan Katz Realty, LLC v. NLRB.*,
  251 F.3d 981 (D.C. Cir. 2001).......................................................15

*NLRB. v. Browning-Ferris Indus. of Pennsylvania, Inc.*,
    691 F.2d 1117 (3d Cir. 1982) ...............................................................12

*NLRB v. Siren Retail Corp.*,
    No. 22-1969 (9th Cir.) .........................................................................8

*Ridgewood Health Care Ctr., Inc. v. NLRB*,
    8 F.4th 1263 (11th Cir. 2021) .............................................................3

*Sackett v. EPA.*,
    566 U.S. 120 (2012)...........................................................................5

*Shell Chem. Co. v. NLRB*,
    495 F.2d 1116 (5th Cir. 1974) .............................................................4

*Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*,
    549 U.S. 422 (2007)...........................................................................4

*In Re St. Edmund's Roman Cath. Church, Brooklyn*,
    337 NLRB 1260 (2002) ....................................................................13

*Stephens Media, LLC v. N.L.R.B.*,
    677 F.3d 1241 (D.C. Cir. 2012)...........................................................9

*United Tel. Workers, AFL-CIO v. NLRB*,
    571 F.2d 665 (D.C. Cir. 1978)....................................................12, 20

**Statutes**

29 U.S.C. § 160........................................................................................4

29 U.S.C. § 160(e) ...................................................................................8

29 U.S.C. § 160(f)....................................................................................4

**Other Authorities**

372 NLRB No. 12 (Dec. 6, 2022) ............................................................6

Respondent ArrMaz Products, Inc., by and through its counsel, submits its Reply Brief in support of its Cross Petition to Review the Board's order and in opposition to the Board's Petition for Enforcement of its order.

## I.    Introduction

The parties' principal briefs confirmed undisputed facts that compel reversal of the Board's order:

- The parties' Stipulated Election Agreement ("SEA") requires inclusion in the voting unit of "All full-time…**maintenance technicians** …Employed by the Employer at its Mulberry, Florida facility." (RCP App. Vol. 1, R. 1485-88, p. 20, Dkt. 26-1.)[1]

- The SEA does not contain a definition of "Employer" as the Union and Board claim; rather, it references ArrMaz on the form of the SEA, in its caption, commerce section, and in its signature section. Nowhere in the substantive body of the agreement's terms does the SEA define "Employer."

- The Board's employee, and not ArrMaz, drafted the SEA.

- At the time of the SEA, Jesse Hargadine and Robert Strickland were employed on a full-time basis as **Maintenance Technicians** at the Mulberry, Florida facility.

- These employees were paid through ArrMaz's wholly-owned subsidiary, AMP Trucking Co., Inc. That technical, corporate formality is immaterial here. The Board readily concluded, and not even the Union has ever contested, that ArrMaz and AMP are a "single employer" for labor law purposes. Thus, for these purposes of determining the employees in the unit eligible to vote, ArrMaz and its wholly-owned subsidiary AMP Trucking are one and the same employer.

---

[1] Citing to Respondent and Cross-Petitioner's Brief Appendix Volume __, R. ___, p. __, Dkt. ___, herein as "RCP App. Vol. __, R. ___, p. __, Dkt. __."

- Because these two Maintenance Technicians fell squarely within the agreed-upon definition of the unit as described in the SEA drafted by the Board, ArrMaz promptly included them, and their personal contact information, on the Voter List ArrMaz filed with the Board and served on the Union less than two days after the Regional Director approved the SEA.

- For the remainder of the campaign period leading to the election weeks later, neither the Board Agent who drafted the SEA, nor the Union raised any concerns or objections regarding the listing of Hargadine and Strickland as eligible voters.

The parties agreed to a voting unit that included Hargadine and Strickland. The Board wrongly granted the Union's challenge to these two voters, thereby disenfranchising them. If the Court proceeds to review the merits of the Board's non-final order, the Board ruling must be reversed, and the votes counted.

## II.    Clarification of Statement of the Issue

The Board's "Statement of the Issue" is confusing and inaccurate. The Board acknowledges that the real issue presented lies below the surface question of whether ArrMaz violated Section 8(a)(5) and (1) of the Act by refusing to recognize and bargain with the Union. ArrMaz refused to bargain because that is the only procedural vehicle Congress created to provide an employer access to the courts to review a faulty Board certification of election results. But that refusal did not violate the Act because the Board improperly certified the election of the Union when it refused to count the votes cast by two employees challenged by the Union. Regarding the real issue to be decided by this Court, the Board declares incorrectly

that the issue is "whether the Board acted within its discretion **in overruling challenges** to two ballots cast in the representation election and therefore certifying the Union as the unit employees' bargaining representative." (Board Br. p. 3, Dkt. No. 33; emphasis supplied) [2]  However, the Board did not "overrule" the Union's challenges to the two voters at issue.  Rather, the Board did the opposite—it granted the Union's challenges and rejected the two ballots.  ArrMaz, on the other hand, provided the more accurate statement of the issue presented for decision by this Court. (RCP Br. p. 1, Dkt. No. 24-1.)[3]

If the Court takes jurisdiction now of the Board's incomplete, non-final ruling, ArrMaz's Statement of the Issue should guide the Court's analysis.  The interpretation of the SEA is a question of law that this Court should review *de novo*, rather than defer to the Board's incorrect interpretation of that contract.[4]

---

[2] Citing to the Brief of the National Labor Relations Board herein as "Board Br. p. __, Dkt. No. __."

[3] Citing to Respondent and Cross-Petitioner's Brief herein as "RCP Br. p. __, Dkt. No. __."

[4] The Court reviews the NLRB's legal conclusions *de novo* while findings of fact are reviewed for substantial evidence. *Ridgewood Health Care Ctr., Inc. v. NLRB*, 8 F.4th 1263, 1274 (11th Cir. 2021).  Even in those circumstances where the Court evaluates a finding of fact by the NLRB, the Court does not "rubber stamp" NLRB determinations and "will not enforce a Board decision that fails to engage in reasoned decision making." *Id*. at 4th at 1274-75.  This case turns on interpretation of the Stipulated Election Agreement, and any questions of contract interpretation are subject to *de novo* review by the Court as questions of law. *Dear v. Q Club Hotel, LLC*, 933 F.3d 1286, 1293-94 (11th Cir. 2019).

### III.    Argument

**A. To Avoid Piecemeal Appeals and Fundamental Unfairness, the Court Should Decline Jurisdiction Over the Board's Incomplete Ruling Because that Ruling is Not a "Final Order."**

A court "generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in the suit (subject-matter jurisdiction) . . . ." *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007).

Section 10 of the NLRA, 29 U.S.C. § 160, "is the sole provision vesting review [of Board actions] with the courts of appeal." *Id.* That provision authorizes "[a]ny person aggrieved by a final order of the Board" to petition for review in an appropriate federal appellate court. 29 U.S.C. § 160(f). "[T]he phrase 'a final order of the Board', as used in [§160(f)], refers solely to an order of the Board either dismissing a complaint in whole or in part or directing a remedy for the unfair labor practices found." *Shell Chem. Co. v. NLRB*, 495 F.2d 1116, 1120 (5th Cir. 1974) (quoting *Laundry Workers Int'l Loc. 221 v. NLRB*, 197 F.2d 701, 703 (5th Cir. 1952)).

Supreme Court decisions elucidating general principles of administrative law are instructive here. The Supreme Court set forth the following test for finality in a case involving the Administrative Procedure Act ("APA"):

> As a general matter, two conditions must be satisfied for agency action to be "final": First, the action must mark the

4

"consummation" of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

*Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (citations omitted); *see also*

*Sackett v. EPA.*, 566 U.S. 120, 126-27 (2012) (applying the *Bennett* test).

To avoid piecemeal appellate litigation, this Court should not yet consider the Board's Petition for Enforcement because the Board's ruling is incomplete.[5] The Board chose to sever for decision later a momentous issue; namely, the General Counsel's request that the Board reverse over 50 years of settled law and thereby drastically alter the dynamics applicable to any collective bargaining that theoretically would ever occur in this case. The Board's ruling to date is not "the consummation of the [Board's] decision making process" in this case as required by the Supreme Court's view of finality of an agency action. Rather, the blockbuster part of the ruling is yet to come.

The Board and the Union try to sneak this massive issue past the Court, playing it off as a mere remedy issue as if it were a formula that simply needs a few numbers to be filled in. But the severed issue here is a potential tectonic shift in

---

[5] ArrMaz did not initiate this appeal, believing that the Board's ruling was non-final. Rather, the Board initiated this action seeking enforcement of its partial ruling and ArrMaz responded with its cross petition for review to avoid any claim that it would waive those arguments if not raised.

decades of undisturbed law guiding parties through the only procedural path for challenges to certification of elections, the "technical" refusal to bargain. The magnitude, and impropriety, of the new economic remedy pursued by the General Counsel that remains under consideration by the Board are explained in the dissenting opinion of Board Member John Ring. 372 NLRB No. 12, at *9-10 (Dec. 6, 2022)

In light of the immensity of the issue still to be decided by the Board in this case, and the practical impacts of the open remedy issue as it hovers like an economic guillotine above ArrMaz's head, it would be fundamentally unfair for the Board to obtain enforcement of its first ruling in this case, holding in its back pocket the potential show stopper second ruling yet to come.

The Board's approach treats the remedial issue as a mere academic exercise without regard for the real word impact a retroactive, amorphous back pay order would have. For example, if the Court chooses to decide only the current issues presented, and if it enforced the Board's bargaining order, ArrMaz would be forced to bargain in circumstances in which it does not yet know if its financial liability for utilizing the only procedure available to test certification is either zero—according to 53 years of settled law—or is unknown and potentially large—according to brand new law applied to it retroactively. Thus, it could not know if it would be able to incur the new liability and offer any extra economic benefits in a labor contract.

6

And, as if the inability to know how much money the Company may or may not have to spend on a labor contract was not sufficiently untenable when being forced to the bargaining table, consider further the Catch 22 for any employer in this situation.  Any wage or benefit improvements the employer might agree to in negotiations could then be weaponized against it by the Board and the union arguing for damages due under the General Counsel's novel theory of imposing on the employer an economic liability for the delayed opportunity for the union to bargain. The union would argue that because its bargaining resulted in overall increases in employee compensation, then all employees are entitled to those increases for the entire period during which the employer pursued its right to challenge the Board's rulings certifying the election result.  Thus, an employer in that situation could be very reluctant to agree to any economic improvements for fear of fortifying the damages case against it in the ULP proceeding for its technical refusal to bargain. Negotiations in the face of that peril are much more likely to fail to reach any agreement.

The Board tries to dodge the consequences of its *sua sponte* choice to sever for future consideration the potential ground-breaking change to long-standing labor law by claiming that ArrMaz is barred from so much as arguing to the Court that it should not yet take jurisdiction over the Board's partial ruling this case.  The Board claims that ArrMaz cannot raise this issue of court jurisdiction because it did not

first move the Board to reconsider its choice to rule on some but not all of the issues presented. But that notion is misplaced here. ArrMaz's argument here focuses on this Court's jurisdiction which only applies to a "final order" of the Board. Here, the sheer enormity of the still-undecided issues confirms there is no "final order" yet over which this Court has jurisdiction. The Court's jurisdiction is under consideration here, not the Board's authority to decide cases in stages if it chooses.[6]

The Board is flat wrong when it proclaims, "[T]he Court lacks jurisdiction to entertain the Company's challenges to the Board's severance determination. 29 U.S.C. § 160(e)." (Board Br. p. 35, Dkt. No. 33.) The Board's procedures cannot ever preclude this Court's inherent authority, and indeed the obligation, to determine if it has jurisdiction over an appeal of an agency's partial ruling on issues presented in a case. *See Adtranz ABB Daimler-Benz Transp., N.A., Inc. v. N.L.R.B.*, 253 F.3d

---

[6] A motion for reconsideration in this context would have been futile, if not speculatively silly. Futility is confirmed by the fact that the Board has severed this very issue in other pending cases, proving that it is committed to this approach. *See Longmont United Hosp. v. Nat'l Lab. Rels. Bd.,* 70 F.4th 573 (D.C. Cir. 2023); *NLRB v. Siren Retail Corp.*, No. 22-1969 (9th Cir.). Such a motion would have been merely speculative because ArrMaz did not know during the 28-day period for motions for reconsideration that the Board would later file a petition seeking enforcement of its partial ruling. The Board's argument here posits that ArrMaz was required to move Board to reconsider and not to sever for future ruling its General Counsel's request that it overrule 53 years of established law, arguing that if the Board were to proceed to Court in the future to seek enforcement of the first part of its partial ruling, ArrMaz would argue to the Circuit Court that it should decline to exercise jurisdiction to decide the case piecemeal. "Just in case" or "what if" motions to an agency to reconsider its process for deciding a case cannot be a requirement for an argument to a Circuit Court that it does not have jurisdiction over a non-final order.

19, 24 (D.C. Cir. 2001) ("As an initial matter, we must address our jurisdiction, or lack thereof, over petitioner Adtranz's claims.").

The Board's 1970 ruling in *Ex-Cell-O* that a union may not recover economic damages when an employer engaged in a technical refusal to bargain in order to test certification has remained settled and stable law for over 50 years for compelling reasons. The number of amici briefs filed with the Board, summarized by Member Ring's dissenting opinion, highlight the numerous, insurmountable problems with the General Counsel's proposal to upend the settled law, which the Board has severed for further consideration in this case.

There can be no doubt that the issue that the Board severed and has not yet decided here carries very large consequences. Contrary to the General Counsel's argument, these issues are intertwined with the merits issues because the new, expanded remedies sought by the General Counsel flow directly from the exercise by Arrmaz of its right to seek court review of the Board's faulty certification (via the only procedural path to court created by Congress). *Contra Stephens Media, LLC v. N.L.R.B.*, 677 F.3d 1241, 1250 (D.C. Cir. 2012) (accepting matter as "final" because the severed issue was not intertwined with the issue before the court). If the Board later agrees with its General Counsel and makes a sea change to the scope of remedies in these "technical refusal to bargain" cases, ArrMaz and others will be right back in this Court on appeal. This Court should prevent that piecemeal

appellate litigation and require the Board to issue a final ruling on all major issues presented before it seeks enforcement of a part of its rulings. That is especially true where the issues yet to be decided by the Board are so large and important, and any possible enforcement of the Board's partial ruling and bargaining order would shackle ArrMaz into an untenable bargaining situation.

### B. The Undisputed Facts Belie the Board's Only Argument on the Merits.

If the Court reviews and decides the merits of the Board's partial ruling, it should review the ruling *de novo* and deny enforcement because that ruling is wrong.

The parties agree that the Board decides questions about the scope of a voting unit and challenged ballots using a three-stage analysis it adopted in *Caesar's Tahoe*, 337 NLRB 1096 (2002). The Board rested its conclusion to reject Hargadine's and Strickland's votes exclusively on the first-stage of that analysis. (Board Br. pgs. 16-22, Dkt. No. 33.)

In its limited analysis, the Board argues that the SEA "clearly and unambiguously excluded Hargadine and Strickland from the bargaining unit." (Board Br. p. 14, Heading B, Dkt. No. 33.) But that conclusion is plainly wrong. The SEA specifies that Maintenance Technicians employed at the Mulberry, Florida facility are included in the unit. Moreover, the SEA contains a specific section that clearly and unambiguously spells out the employees on site who are "Excluded" from the voting unit. The "Excluded" section does not reference Hargadine,

10

Strickland, or their job classification. Nor does the "Excluded" language suggest that any Maintenance Technicians employed at the Mulberry, Florida facility would be excluded if they were paid by ArrMaz's wholly-owned subsidiary, AMP Trucking, rather than ArrMaz. Nor does the "Excluded" section, or any part of the SEA for that matter, address the issue of persons technically employed at the Mulberry facility by ArrMaz affiliates with which ArrMaz is a "single employer" for labor law purposes.

One can appreciate that ArrMaz believed that the Board Agent used ArrMaz's name in the caption of the SEA, its commerce section, and the signature block because ArrMaz was the highest-level entity in the Arkema corporate structure at that site. The Union's original petition for election sought to include all on-site employees of parent company Arkema Inc. (RCP App. Vol. 3, R. 2151, p. 38, Dkt. No. 26-3.) The Union apparently learned later that Arkema's subsidiary, ArrMaz, was the highest-level entity employing people at the Mulberry, Florida facility. But ArrMaz knew at the time that the factors contributing to a conclusion of a single employer under labor law's single employer doctrine render immaterial to the Board for labor law purposes the distinctions a company may try to make based merely on its own corporate family-tree formalities.

Here, Arkema chose to make AMP Trucking a separately incorporated entity, wholly-owned by ArrMaz. But what if Arkema did not separately incorporate AMP

11

Trucking and instead operated it as an unincorporated division of ArrMaz?  In that case, the Board and Union would have no argument against counting the votes of these two Maintenance Technicians.  This highlights the oddity in the Board's position—its sole reason for rejecting these two voters contradicts the rationale for its own single employer doctrine which precludes employers from dividing people out of a particular voting unit simply by employing them in a separately incorporated, wholly-owned subsidiary.  *See e.g. NLRB. v. Browning-Ferris Indus. of Pennsylvania, Inc.*, 691 F.2d 1117, 1122 (3d Cir. 1982) (quoting *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402 (1960)) ("[T]he 'single employer' standard is relevant to the determination that 'separate corporations are not what they appear to be, that in truth they are but divisions or departments of a single enterprise.'"); *Edward J. White, Inc.*, 237 NLRB 1020 (1978) (finding that single employer violated the Act by transferring work to one entity's nonunion employees to avoid applying collective bargaining agreement); *United Tel. Workers, AFL-CIO v. NLRB*, 571 F.2d 665, 670 (D.C. Cir. 1978) (Bazelon, C.J., dissenting) ("The theory underlying this concept is that where several nominally separate businesses integrate their operations, thereby combining their resources and gaining leverage over their employees, they should be treated as a single employer for purposes of enforcing duties imposed by the [NLRA]."); *cf. Murray v. Miner*, 74 F.3d 402, 405 (2d Cir. 1996) ("The rationale for the [single employer doctrine] is the fairness of imposing

12

responsibility on an entity that shares decision-making authority with the employing entity.").

No court could read the SEA and conclude that the Board reasonably and correctly decided that the SEA "clearly and unambiguously excluded Hargadine and Strickland" as the Board argues.  (Board Br. p. 14, Dkt. No. 33.)  That is particularly evident because the SEA lacks any actual definition of the "Employer," much less one that clearly and unambiguously excludes persons employed by ArrMaz's wholly-owned subsidiary with which ArrMaz is a "single employer."  This is the Board's only basis for its ruling, and it is patently wrong.  The Court should deny enforcement.

Contrary to the Board's argument, the SEA clearly and unambiguously does the opposite – it includes Hargadine and Strickland.  All agree that these two employees were Maintenance Technicians working at the Mulberry, Florida facility. Their immediately direct employer, AMP Trucking, is a "single employer" with ArrMaz.  Under the same Board law giving rise to the present dispute, there was no significant difference between these entities.  *See In Re St. Edmund's Roman Cath. Church, Brooklyn,* 337 NLRB 1260 (2002) (finding no jurisdiction where single employer status was uncontested over religious organizations and reversing regional director finding allowing election); *Re Bristitzky*, 323 NLRB 524, 525, n. 3 (1997) (finding employees of four separate commercial buildings that comprised of single

13

employer were employed by the single employer).  The two entities are thus one and same employer for labor law purposes.

Moreover, the Board Agent who drafted the SEA's description of the ArrMaz's business included references to shipping/receiving work ArrMaz conducts through its wholly-owned subsidiary, AMP Trucking.  (RCP App. Vol. 1, R. 1485-88, p. 20, Section 2, Dkt. No. 26-1, referencing the "providing" of products and the receipt of goods.)  Moreover, the SEA specifically described the "Excluded" employees, and nothing in that exclusion section even vaguely applies to Hargadine or Strickland.  The only reasonable conclusion is that the SEA included these two, un-excluded Maintenance Technicians in the voting unit.  The Board ignores these facts to assert that its reading of SEA is plain and unambiguous, but these facts refute the Board's reading.

The Board claims that ArrMaz waived any argument about the language of the Commerce section "because it was not first raised to the Board."  (Board Br. p. 20, Dkt. No. 33.)  This waiver argument both misstates the law by implying that specific arguments must be raised with the Board to be preserved for review by a court, when Section 10(e) only requires that the overarching issue be raised to be preserved.  *See HTH Corp. v. N.L.R.B.,* 823 F.3d 668, 357 (D.C. Cir. 2016) (finding that where an objection was made that a remedy was extraordinary but "did not specify the attributes of the notice-reading remedy that called for special judicial

concern" it was not barred by Section 10(e)); *see also Nathan Katz Realty, LLC v. NLRB.,* 251 F.3d 981, 987 (D.C. Cir. 2001) ("When the Board already has had an opportunity to consider an issue in an earlier proceeding, the party simply needs to provide a firm indication that it has not abandoned the issue in a later unfair labor practice proceeding."); *Consol. Freightways v. NLRB,* 669 F.2d 790, 794 (D.C. Cir. 1981) ("But when the issues implicated by an imprecisely drafted objection are made evident by the context in which it is raised, section 10(e) does not shield the Board's resolution of those issues from review.")

In addition to overstating the argument preservation requirements of Section 10(e), the Board's argument here is factually wrong.  Contrary to the Board's claims, ArrMaz argued to it that the language of the Commerce section of the SEA including product handling activities handled by AMP Trucking.  On page 6 of its August 26, 2022 brief entitled "ArrMaz Products, Inc. Opposition to Motion for Summary Judgment," ArrMaz laid out this argument regarding the SEA description of the employer's business including transportation aspects of the business performed through AMP Trucking.  ArrMaz argued to the Board:

> Furthermore, the Stipulated Election Agreement describes the Employer's business as, in pertinent part, "manufacturing and providing specialty chemicals to the fertilizer manufacturing, mining, and asphalt paving industries." The Regional Director did not explain how AMP's role in transporting products does not comport with the concept of "providing" those products to the named industries. Similar to the use of the corporate

15

umbrella name, the use of the word "providing" in the
Stipulated Election Agreement's description of the
business provides another reason to find the Agreement
unambiguously includes AMP maintenance technicians.

The entire issue of whether the terms of the SEA include or exclude the two
Maintenance Technicians at issue was the focus of the Board's analysis of the
Union's challenges.  Under the umbrella of that issue, arguments regarding the
import of particular words of the SEA are not waived when the Board had the
obligation to decide the overarching issue.  Here, especially considering the
language in the Commerce section of the SEA that ArrMaz argued to the Board, the
SEA reveals the parties' agreement that these two Maintenance Technicians were
included in the voting unit.

### C. The Board Made No Ruling at the Second-Stage of the *Caesars Tahoe* Analysis, and the Extrinsic Evidence Confirms the Parties' Intent to Include These Maintenance Technicians in the Voting Unit.

If the Court does not conclude that the SEA unambiguously includes
Hargadine and Strickland in the voting unit, it should nonetheless deny enforcement
of the Board's ruling by following the second-stage of the *Caesars Tahoe* analysis
and assessing the parties' intent through reference to the extrinsic evidence.  The
greater weight of the extrinsic evidence shows that the parties intended Hargadine
and Strickland to be included in the voting unit.

Notably, the Board made no ruling about the conclusion that follows from the weight of the extrinsic evidence, and it offered no argument to this Court that the extrinsic evidence confirmed the parties' intent to *exclude* Hargadine and Strickland. Thus, if the Court concludes that the SEA is not clear and unambiguous, and it thereby rejects both the Board's and ArrMaz's arguments at the first stage of the *Caesars Tahoe* analysis, it should rule in ArrMaz's favor at the second stage at which the Board offers no position contrary to ArrMaz's.

The inclusion of Hargadine and Strickland on the list of eligible voters constitutes compelling extrinsic evidence of the parties' intent to include the two Maintenance Technicians at issue at the time they agreed to the SEA. Promptly after the Regional Director approved the SEA, ArrMaz complied with its obligation to file with the Board and serve on the Union a list of the names, job classifications, and personal contact information for all employees in the unit and eligible to vote. ArrMaz included Hargadine and Strickland on the list – unequivocally evidencing its intent to include these persons and its belief that the SEA included them.[7]

While ArrMaz's intent was clear, the Union proceeded more elusively. It received and presumably used the Voter List for its campaign efforts over the next

---

[7] While the Voter List is not in the Board's record for some reason unknown to ArrMaz, that may simply be an oversight by someone at the Board. Regardless, this fact has been discussed throughout the course of the case and neither the Board nor the Union has ever contested the reality that Hargadine and Strickland were included on the Voter List ArrMaz timely filed and served.

weeks prior to the election, never once objecting to the listing of Hargadine and Strickland as eligible voters. Nor did the Board's Regional office that administered this election process raise any disagreement. Note that the Board's brief does not respond to ArrMaz's argument that the Board's Casehandling Manual envisions that the Board's responsible agent "should have the parties check and approve the list promptly, to allow maximum time to resolve eligibility questions and thus reduce the number of challenges." (RCP Br. p. 32, Dkt. No. 24-1, citing NLRB Casehandling Manual, § 11312.3) In this case, the Union first raised its eligibility challenges to Hargadine's and Strickland's votes at the last moment -- on election day -- when those persons were at the polling place to cast their vote. Presumably, in its campaign efforts, the Union tried for weeks but failed to convince these two employees to support the Union. But its original intent in executing the SEA is revealed when it acquiesced by silence for weeks to the accuracy of the Voter List, including Hargadine's and Strickland's names and contact information.

The Court should also consider as extrinsic evidence the undisputed facts relied on by the Board's agent, Regional Director and the Board itself to conclude that ArrMaz and AMP Trucking are a single employer. The Board argues that the "single employer" conclusion should be ignored when considering the intent of the parties at the time they signed the SEA because the ruling was not yet made. But the timing of the Board's ruling on the facts misses the point. It is the undisputed

facts that support the Board's "single employer" conclusion that matter. Those facts existed when the parties signed the SEA. ArrMaz certainly knew when it signed the SEA that despite paying Hargadine and Strickland through its wholly-owned subsidiary AMP Trucking, it [ArrMaz] controlled the terms and conditions of the Maintenance Technicians' employment at the Mulberry facility.

The Board argues that ArrMaz's intent regarding the scope of the agreed-upon bargaining unit should be discerned by reference to what the SEA does not say. (Board Br. p. 22, Dkt. No. 33.) Throughout its brief, the Board repeatedly chides ArrMaz for what theoretically could have been stated in the SEA to avoid any future disagreements, but never does the Board dispute ArrMaz's point that it was the Board's Agent who drafted the SEA. For its part, ArrMaz intended to include in the voting unit all of the full-time maintenance technicians employed at the Mulberry, Florida facility. That is what the SEA says, and ArrMaz promptly confirmed its view by including Hargadine and Strickland on the Voter List. Of course, ArrMaz knows that AMP Trucking was its wholly-owned subsidiary covered by all the same employment policies and human resources professionals as every other employee at the site, and that it had no basis to believe that the two entities would be treated by the Board as separate, distinct and independent employers under the SEA. Any drafting deficiencies revealed by later disagreements about the intent of the SEA have to fall on the Board Agent that drafted it.

19

The Board arguments here that the "single employer" status of ArrMaz and AMP Trucking is irrelevant is inexplicably unusual. The Board's reliance here on the precise boundaries of the technical corporate formalities chosen by the employer is hypocritical because that is antithetical to the purpose of the Board's own single employer doctrine. *See United Tel. Workers*, *AFL-CIO v. NLRB,* 571 F.2d at 670. The Board's "single employer" doctrine prevents corporate manipulation of units through the vagaries of complicated corporate structures of affiliated entities, as manipulated by the corporations. *See Masland Indus*., 311 NLRB 184, 186 (1993) ("A single-integrated enterprise, derived from ostensibly separate corporate entities, is characterized by the absence of an "arm's length" relationship found among unintegrated entities.")

Instead of being directed by a corporation's structure of its affiliated entities, the Board utilizes its "single employer" doctrine to determine the full scope of the "employer" in any particular case by reference to practical realities. One cannot imagine the Board allowing an employer to slice and dice a proposed unit based merely on how it structures the affiliated corporate entities that pay the employees. Yet, the Board relies on that same type of corporate structure technicality here to grant a union's request to disenfranchise two voters that the Union must have concluded did not support the Union.

The Board cannot be permitted to utilize randomly its "single employer" doctrine when a union wants it to apply to the union's benefit, but ignore the consequences of its own "single employer" conclusion when a union instead pleads for it to do that. That type of arbitrariness abuses the Board's discretion and reveals the impropriety of its support for the Union's challenge to the votes of Hargadine and Strickland.

In sum, the material and compelling extrinsic evidence confirms that when they signed the SEA, the parties intended to include Maintenance Technicians Hargadine and Strickland in the bargaining unit.  Thus, it was not only incorrect, but also unreasonable and an abuse of its authority, for the Board to agree with the Union's challenges and reject these votes.

> ### D. If the Court Concludes that the Parties in Fact Made No Enforceable Agreement, It Should Remand the Case for Another Election Process that Clearly Establishes the Voting Unit.

ArrMaz's final argument in its opening brief asked the Court to declare the underlying proceedings null and void, and remand the case for another election process, in the event that the Court cannot conclude that the parties had a requisite "meeting of the minds" as to the scope of the voting unit to form an enforceable contract in the first instance.  The Board does not dispute that the SEA is a contract, and to be enforceable the parties have to have a "meeting of the minds" on its essential terms, such as the unit of eligible voters.  Rather, the Board tries to dodge

the merits of the argument by claiming it is barred because the Company did not first raise a "no meeting of the minds" argument to the Board. But this waiver argument by the Board yet again relies on an overreach of Section 10(e) of the Act.

Here, the issue before the Board obviously was determining what agreement the parties' reached regarding the voting unit. The possibility that the decision maker might conclude that the parties thought different things, and that no agreement therefore was made is necessarily implicit and inherent in that fundamental issue presented. ArrMaz maintains that the Union intended, just like ArrMaz did, to include Hargadine and Strickland. Indeed, there is no evidence that when the Union signed the SEA and included all Maintenance Technicians at the Mulberry, Florida facility that the Union even knew that these two were paid through the wholly-owned subsidiary, AMP Trucking, rather than directly by ArrMaz. Of course, the Union, like ArrMaz, believed that the SEA included all Maintenance Technicians working on site at the Mulberry, Florida facility. Thus, ArrMaz is not arguing for a conclusion of "no meeting of the minds," and the waiver argument is inapplicable.

Rather, ArrMaz acknowledges the possibility that the Court may conclude that the evidence demonstrates that the parties never reached a mutual understanding on this issue, and therefore had no enforceable agreement. If the Court determines that, ArrMaz urges it to declare the prior proceedings void because they were all premised on, and followed from, the SEA. The Court in that instance should remand for a

22

new election process in which all parties can be careful to confirm specifically the included and excluded voters, and the Board Agent can document the agreement unambiguously.

## IV. Conclusion

The Court should decline to rule on the merits of this case until the Board finalizes its ruling by deciding the historic remedy issue that it severed to be decided later. The Court should not facilitate in the Board's attempt to obtain a Circuit Court ruling on the first part of its decision when the next part will almost certainly result in another appeal. The Final Order requirement for jurisdiction seeks to avoid multiple, piecemeal appeals in a case, and consistent with that this Court should decline deciding the merits at this time and until the Board disposes of the issue it has reserved for future ruling.

If the Court proceeds to the merits, it should overrule the Board and order it to open and count the votes of Hargadine and Strickland. The SEA included, and certainly did not exclude, these employees by its terms. The parties' intent in this regard is reflected in the most pertinent of the extrinsic evidence—the voter eligibility list written by ArrMaz and used by the Union.

Respectfully submitted this 11th day of August, 2023.

_s/ Bernard J. Bobber_
Bernard J. Bobber
WI Bar No. 1015499

bernard.bobber@ogletree.com
Jesse R. Dill
WI Bar No. 1061704
jesse.dill@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI 53205
Telephone: 414-239-6400
Facsimile: 414-755-8289

David M. DeMaio
Florida Bar No. 886513
david.demaio@ogletree.com
9130 South Dadeland Blvd.
Suite 1625
Miami, FL 33156
Telephone: 305-374-0506
Facsimile: 305-374-0456

Brian E. Hayes
Washington, D.C. Bar No. 203141
brian.hayes@ogletree.com
1909 K Street, N.W.
Suite 100
Washington, D.C. 20006
Telephone: 202-887-0855
Facsimile: 202-887-0866

Attorneys for Respondent ArrMaz Products,
Inc.

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the brief contains 5,907 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Times New Roman 14 point font.

This 11th day of August, 2023.

*s/ Bernard J. Bobber*
Bernard J. Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products, Inc.

## **CERTIFICATE OF SERVICE**

I certify that on August 11th, 2023, Respondent and Cross Petitioner ArrMaz Products, Inc. electronically filed its Reply Brief of Respondent and Cross-Petitioner ArrMaz Products, Inc. with the Clerk of Court using the CM/ECF system, through which the following individuals received service:

Ruth E. Burdick
Usha Dheenan
Susan Kania
National Labor Relations Board
1015 Half Street SE Fl. 4
Washington, DC 20003

Randall Vehar
ICWUC/Union Legal Department
1655 W. Market Street Fl. 6th
Akron, OH 55313

This 11th day of August, 2023.


*/s/ Bernard J. Bobber*
Bernard Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products, Inc.