## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

NATIONAL LABOR RELATIONS BOARD

Petitioner

v.

ARRMAZ PRODUCTS INC.

Respondent

On Application for Enforcement and Cross-Petitioner for Review
of an Order of The National Labor Relations Board

NLRB Case 12–CA–294086
December 6, 2022

## UNION INTERVENOR'S BRIEF IN REPLY/RESPONSE TO "REPLY BRIEF OF RESPONDENT AND CROSS-PETITIONER ARRMAZ PRODUCTS INC." AND CERTIFICATE OF INTERESTED PERSONS

Randall Vehar, Esq. (Ohio Bar No. 0008177)
UFCW Assistant General Counsel/
  Counsel for ICWUC/UFCW
1655 W. Market Street
Akron, Ohio 44313
330/926-1444
330/926-0950 FAX
rvehar@ufcw.org

*Attorney for Intervenor Union*

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

| | | |
|---|---|---|
| National Labor Relations Board | ) | Case No.: 23-10291-JJ |
| | ) | |
| Petitioner/Cross-Respondent | ) | Board Case No. 12-CA-294086 |
| | ) | |
| v. | ) | |
| | ) | |
| ArrMaz Products Inc. | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## INTERVENOR UNION'S CERTIFICATE OF INTERESTED PERSONS

Pursuant to 11th Circuit Rule 26.1-2(b), Intervenor, International Chemical Workers Union Council (Intervenor, or Union), certifies that it believes the Certificate of Interested Persons and Corporate Disclosure Statement in the Brief of Respondent and Cross-Petitioner ***ArrMaz Products Inc.*** is complete, except as follows:

Respondent and Cross-Petitioner ***ArrMaz Products Inc***. failed to include ***AMP Trucking, Inc***., apparently a subsidiary, or affiliate, of ***ArrMaz Products Inc***.

# TABLE OF CONTENTS

INTERVENOR UNION'S CERTIFICATE OF INTERESTED PERSONS..............i

TABLE OF CONTENTS ........................................................................ ii

TABLE OF AUTHORITIES.................................................................. iii

INTRODUCTION ............................................................- 1 -

ARGUMENT ....................................................................- 5 -

A. Contrary to *ArrMaz*'s argument, the Board's Bargaining Order, following severance for consideration later of the General Counsel's request for "make whole" relief, is "final" and enforceable. .........................................................- 5 -

B. Unlike *ArrMaz*'s reliance on alleged "facts," that were *not* in the Record, the NLRB's determination, that the Stipulated Election Agreement clearly and unambiguously excluded the two challenged employees' ballots, was based on substantial evidence in the Record.....................................................................- 9 -

C. *ArrMaz* not only speculates what the Union did between signing the SEA, but makes false, unsupported assertions about the Union's actions. ..........................- 12 -

CONCLUSION ..................................................................- 14 -

CERTIFICATE OF COMPLIANCE ................................................- 16 -

CERTIFICATE OF SERVICE............................................................- 17 -

# TABLE OF AUTHORITIES

**Cases**

*American Steel Construction, Inc*, 372 NLRB No. 23 (2022)................. - 11 -, - 14 -

*ArrMaz Products Inc.,* NLRB Case 12-RC-255997 (Feb. 17, 2022) ...................- 9 -

*Bennett v. Spear*, 520 U.S. 154 (1997) ........................................................ - 7 -, - 8 -

*Longmont United Hospital v. NLRB,*
   70 F.4th 573 (D.C. Cir. 2023)................................................- 5 -, - 7 -, - 8 -, - 14 -

*Longmont United Hospital*, 371 NLRB No. 162 (2022) .....................................- 6 -

*Masland Industries*, 311 NLRB 184 (1993) ......................................................- 10 -

*Sackett v. EPA*, 566 U.S. 120 (2012) ..................................................................- 8 -

*White Cloud Products, Inc.,* 214 NLRB 516 (1974)................................ - 11 -, - 12 -

# **INTRODUCTION**

This Intervenor Union's brief replying to ***ArrMaz***'s reply brief ("ArrMaz Reply")(Doc. 36) is being timely filed by October 2, 2023. (Doc. 39).[1]

Resolution of this case should be prompt and simple: the Union's March 12-13, 2020, election victory – that was certified on August 25, 2021, after ***ArrMaz*** effectively forced an unnecessary 5-day hearing in September-October, 2020 – should be upheld; and this Court should summarily enforce the Board's bargaining order ("Order") without further delay. Unfortunately, ***ArrMaz*** has gone to great lengths to continue to delay complying with its legal bargaining obligations, all to the employees' and Union's unremedied detriment. This Court should not allow further delay. Justice delayed is justice denied.

In the Introduction to its ArrMaz Reply, ***ArrMaz*** – a chemical manufacturing company (Doc. 18, pp. 12-13, 23) – boldly, but unpersuasively, claims that the NLRB's and the Union's Briefs confirm undisputed facts that compel certain

---

[1]In citing to documents from the Docket, the Union will use the Docket number assigned to the document and the page number assigned to the pages in the document by the Court's eFiling system. Thus, references, for instance, to page 10 of the Union's opening brief will be cited to the page number assigned by the filing system as "(Doc. 31, p. 22)." Where page numbers to the administrative record may be confusing due to type-overs on the filed Record, citation will be to black-type page numbers added in the upper-righthand page corners, such as (Doc. 18, pp. 1485-88) for the SEA.

conclusions. They do, but not as *ArrMaz* claims. *ArrMaz* claims:

(a) that the mutually-agreed-to Stipulated Election Agreement ("SEA")(Doc. 18, p. 1485-88) *requires* the inclusion of the two challenged *AMP Trucking* employees in the *ArrMaz* proposed bargaining unit (on the contrary, as previously established by the Board and Union, the SEA requires their exclusion);

(b) that the SEA does not contain a definition of "Employer" (it essentially does, particularly since the *only* company listed throughout the SEA and on the signature page over the designation "Employer" is *ArrMaz*, not *AMP*, and the only limited liability company at the time the SEA was signed was *ArrMaz*, not *AMP*)(Doc. 18, p. 1487);

(c) that an NLRB employee, not *ArrMaz*, drafted the SEA (but there is no evidence in the Record, either way, as to which person, or persons, drafted the SEA);

(d) that the two challenged *AMP Trucking* employees were employed at the Mulberry, Florida, facility (unlike the *ArrMaz* employees, the *AMP Trucking* employees worked out of a different building at the industrial complex (Doc. 18, p. 371));

(e) that, unlike the proposed unit employees, who were paid by *ArrMaz*, the two challenged employees were paid by *AMP Trucking*, a subsidiary of *ArrMaz* (there is no evidence that, when the Union signed the SEA, it knew of the ownership and other relationships between *ArrMaz* and *AMP Trucking* sufficient to constitute

a single-employer relationship, though there is unrebutted evidence that, when the Union signed the SEA, it did *not* intend to include any, let alone the two challenged, *AMP Trucking* employees, in the proposed unit);[2/]

(f) that two days after the parties signed the SEA, *ArrMaz* included the two challenged employees in the proposed voter list, that it sent to the Union (the employer's proposed voter list is not the end all and be all of voter eligibility); and

---

[2/] *AMP Trucking* has a separate Tax ID number from *ArrMaz* and is a separate entity for tax purposes. (Doc. 18, p. 209n.2). *AMP* is separately incorporated and was formed, at least in part, to shield *ArrMaz* for insurance and liability purposes from *AMP*'s activities. (Doc. 18, p. 209). *AMP* owns about 65 trailers and several over-the-road tractors operated by nine drivers. (Doc. 18, pp. 209-10). *AMP* maintenance technicians are paid by *AMP*, while *ArrMaz* employees, including *ArrMaz* maintenance technicians, are paid by *ArrMaz*. (Doc. 18, p. 211). In practice, *AMP* maintenance technicians normally take their breaks and eat lunch in the separate truck shop, change in the *AMP* truck shop, and park just outside the separate truck shop. (Doc. 18, p. 211).

One of the *AMP* maintenance technicians, Robert Strickland, whose ballot was challenged, works primarily on *AMP* trucks. (Doc. 18, p. 214). Strickland has never performed work of the production maintenance employees. (Doc. 18, p. 215). The other *AMP* employee, Jesse Hargadine, whose ballot was challenged is not part of the production department. Both he and Strickland report to an *AMP* supervisor. He mostly works on *AMP*'s trailers. (Doc. 18, p. 216).

*ArrMaz*'s *plant* maintenance technicians primarily repair, maintain, and replace pumps, pipes, dials, and valves throughout the facility. There is no evidence of interchange, or any regular interaction, between plant maintenance technicians and the *AMP* maintenance technicians. (Doc. 18, pp. 220-21). There is no community-of-interest between *AMP* and *ArrMaz* employees sufficient to require inclusion of *AMP* employees in the *ArrMaz* unit. (Reg. Director Rept. at pp. 35-37)(Doc. 18, pp. 1619, 1654-56, 1776).

(g) that, between service of the voter list and the election, the Union raised no concerns about the two voters now in question (factually not true, since the Record has unrebutted evidence that, on the day the Union received the voter list, it promptly contacted the Board agent to raise concerns and, as provided for by the required procedures, timely challenged the two *AMP* employees' ballots (Doc. 18, p. 86)). (Doc. 33, p. 40).

Contrary to *ArrMaz*'s conclusions, the Board correctly interpreted the mutually-agreed-to SEA – which made absolutely no mention of *AMP Trucking*, or its employees – when it upheld the SEA, which on its face only included *ArrMaz* employees in the proposed unit, thereby excluding the two challenged ballots.[3/]

The Union continues to rely on its initial opening brief (Doc. 31),[4/] as well the NLRB's opening brief (Doc. 33) in this matter. It wishes, however, to further comment below on the arguments raised by *ArrMaz*, sometimes for the first time, in its Brief replying to the Union's and NLRB's opening briefs (Doc. 36)(ArrMaz Reply).

---

[3/]The SEA identified *ArrMaz* as a Delaware limited partnership, which it was at the time the SEA was entered into. (Hearing Officer Report at p.1n.1)(Doc. 18, pp. 1549n.1). *AMP Trucking, **Inc.***, however, unlike *ArrMaz* was a Delaware *corporation*.

[4/]The Union recognizes that the NLRB inadvertently misstated the issue in this case, as *ArrMaz* has noted. (Doc. 36, p. 11). The Union notes, however, that it properly stated the issues. (Doc. 31, p. 13).

# **ARGUMENT**

A. Contrary to *ArrMaz*'s argument, the Board's Bargaining Order, following severance for consideration later of the General Counsel's request for "make whole" relief, is "final" and enforceable.

While continuing to argue that the Board's Order (following severance from the "make-whole" matter) at issue, here, is not "final" and reviewable, *ArrMaz* curiously fails to even attempt to distinguish a recent "test of certification" case, where appellate jurisdiction similarly *unsuccessfully* was challenged on the identical basis, *i.e.*, that the severance of the NLRB General Counsel's request for a proposed, new "make whole" remedy from the bargaining Order precluded that Order from being considered "final" and reviewable.[5/] *Longmont United Hospital v. NLRB*, 70 F.4th 573, 578 (D.C. Cir. 2023)("*Longmont II*"). In that "test of certification" case, the NLRB, previously, had rejected that employer's challenges and objections to the representation election and, instead, certified that nurses' union as the exclusive bargaining representative. *Longmont United Hospital*, 371 NLRB No. 162

---

[5/] While *ArrMaz* was aware of the *Longmont II* court decision (Doc. 36, p. 16n.6) -- the NLRB previously having cited *Longmont II* for the *jurisdiction* issue (Doc. 33, p. 45) – *ArrMaz* curiously *only* cited *Longmont II* for a *different* reason, *i.e.*, that a motion by it for reconsideration to the NLRB would have been "futile," given that the NLRB similarly had severed the same *Ex-Cell-O* "make whole" issue in other similar cases.

One would have thought that *ArrMaz* would have at least also discussed, or attempted to distinguish, *Longmont II* on the "final" order aspect of that case. Its failure to do so is telling.

(2022)("*Longmont I*"). Subsequently, that employer – as has ***ArrMaz*** – refused to recognize that certification and refused to bargain with that union.

In finding that Longmont Hospital had violated the NLRA, the Board issued its traditional prospective remedies, but severed the NLRB General Counsel's proposed, new retroactive "make whole" remedy from the Order, so that it could more closely consider this request later. Nevertheless, the hospital continued to refuse to recognize and bargain with that union, just as ***ArrMaz*** has done here. This resulted in the NLRB seeking enforcement in the D.C. Circuit, just as it has sought enforcement of its bargaining Order in this Circuit. In turn, that employer – as has ***ArrMaz*** – raised a number of defenses, including its claim that the severed, "make whole" *Ex-Cell-O* remaining issue made judicial enforcement and review of the challenged Order premature.

The D.C. Circuit made short shrift of that argument, holding:

> We have jurisdiction to review the petition and cross-application under 29 U.S.C. § 160(e) and (f). Although we do not review the election certification directly, *see, e.g.*, *Alois Box Co. v. NLRB*, 216 F.3d 69, 76 (D.C. Cir. 2000), we may consider representation issues during our review of the Board's final order granting summary judgment in the enforcement proceeding, *see* 29 U.S.C. § 159(d); *Nat'l Hot Rod Ass'n v. NLRB*, 988 F.3d 506, 508 (D.C. Cir. 2021). ***That the Board severed a remedial issue for future consideration does not affect our jurisdiction to consider Longmont's petition for review and adjudicate issues that the Board has resolved.*** *See Stephens Media, LLC v. NLRB*, 677 F.3d 1241, 1250 (D.C. Cir. 2012).

*Longmont II, supra* (bold italics added). While ***ArrMaz*** obviously was aware of this decision, it failed to acknowledge, let alone attempt to distinguish, its jurisdictional holding. This Court, as did the *Longmont II* court, should find the Order final and appealable.

While ***ArrMaz*** cites to *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) to support its argument that the Order is not final, it really does not attempt to apply that case here. Rather than attempt to argue how *Bennett* might apply, or acknowledge, or address, the *jurisdictional* aspect of the *Longmont* decision adverse to its position, ***ArrMaz*** spends 4 ½ pages arguing against the merits of an issue that is not even before this Court, *i.e.*, the *Ex-Cell-O* "make whole" issue. (Doc 36, pp. 13-18). The Court should not only ignore this misdirection, but it should also disregard those untimely and inappropriate arguments. Not only are the merits of the "make whole" *Ex-Cell-O* issue *not* before this Court – so the Union will not belabor the Court with its response to, and strong disagreement with, those arguments at this time – the merits of which were not discussed in either the earlier NLRB, or the Union, briefs.[6/] Thus, ***ArrMaz***'s discussion in its ArrMaz Reply was inappropriate.

_____

[6/]The Union merely notes that, even under the proposed, "make-whole" remedy, such a remedy is cut-off as soon as the recalcitrant employer commences to bargain in good faith! Thus, the employer has control over the magnitude of that proposed remedy.

While *ArrMaz* does claim that the Board's Order at issue here is not "final," citing to *Bennett, supra,* and *Sackett v. EPA*, 566 U.S. 120, 126-27 (2012), *ArrMaz* really doesn't attempt to apply the principle of those cases here. Nevertheless, the Order, here, meets the two "finality" tests of those cases. Here, the Board's Order is not "merely tentative or interlocutory" in nature as to the traditional prospective relief. The *prospective* bargaining order is final. Nothing that the Board might do with the separate, severed request for a "make whole" remedy – that, unlike the Order, would be designed to remedy the *past* violations of *ArrMaz*'s duty to bargain – will, or can, affect the finality of the prospective bargaining order. Even if the Board adopts some form of a "make whole" remedy and even if it applies such a remedy retroactively – neither of which is a "sure thing" – such actions will have no effect on the finality of the Board's bargaining Order now before this Court. That bargaining Order is neither "tentative nor interlocutory." It establishes *ArrMaz*'s bargaining obligation, period.

Further, the bargaining Order before this Court is one by which "rights or obligations have been determined" and from which certain "legal consequences will flow…," *i.e., ArrMaz* hereafter has a legal obligation to bargain for at least a year with the Union. *Bennett, id*. Consequently, this Court, as has the D.C. Circuit in *Longmont II, supra*, should reject *ArrMaz*'s request to dismiss this action as premature.

B. <u>Unlike **ArrMaz**'s reliance on alleged "facts," that were **not** in the Record, the NLRB's determination, that the Stipulated Election Agreement clearly and unambiguously excluded the two challenged employees' ballots, was based on substantial evidence in the Record.</u>

The Board upheld the Regional Director's decision to exclude the two **AMP Trucking** employees from voting in the **ArrMaz** unit **stipulated** election, since the parties' intent in their Stipulated Election Agreement to exclude them was clear and unambiguous. *ArrMaz Products Inc.,* NLRB Case 12-RC-255997 (Feb. 17, 2022)(Doc. 18, p. 2053n.1). **ArrMaz** now belatedly attempts to undermine that determination through reference to alleged "facts," that are *not* in the Record.

For instance, without citation to evidence in the Record below, **ArrMaz** now repeatedly argues that the SEA was drafted solely by a Board employee, apparently suggesting that **ArrMaz,** played little, or no, role in drafting the SEA, even though **ArrMaz** undisputedly signed the SEA. (Doc. 36, pp. 9, 10, 19, 22). **ArrMaz** weakly attempts to explain – without evidence – the reason, *i.e.,* its speculation, why ***only*** **ArrMaz**'s name was used throughout the SEA *without any reference to **AMP**.* (Doc. 36, pp. 19-21, 27).

**ArrMaz** then argues – again without evidence (R.82,89-90)(Doc. 31, pp. 15-16n.3) – that it (apparently, silently), nevertheless, "intended" to include the two **AMP Trucking** employees, even though **AMP Trucking** is not named in the stipulated unit. Apparently recognizing that its silent intent is irrelevant, if not shared with the Union *prior* to execution of the SEA, **ArrMaz** again speculates,

without evidence, as to what the Union knew at the time the parties entered into the SEA. (Doc. 36, pp. 19 and 27).

Yet, there is no evidence in the Record that the Union knew, *then*, that there was a single-employer relationship between *ArrMaz* and *AMP Trucking.*[7] However, there is unrebutted evidence that the Union did *not* intend, when it entered into the SEA, to include *AMP Trucking* employees. (Doc. 18, pp. 82-83, 88-90)(Doc. 31, pp. 15-16n.3).

*ArrMaz,* in its misguided effort to have this Court interpret the SEA different from how the NLRB correctly interpreted the SEA, argues that the SEA is clear and unambiguous and, as such, this Court should interpret it *de novo*, as a legal matter, with little deference to the NLRB's interpretation. The Union believes that the SEA, in fact, is clear and unambiguous, in that there is absolutely no mention of any other entity, other than *ArrMaz,* in the SEA; there is no evidence that the Union knew of any arguable single-employer relationship with *AMP* when it signed the SEA*;* there

---

[7]It has long been recognized that a simple parent-subsidiary ownership relationship is not enough to establish a "single employer" under the NLRA. More is required. *Masland Industries*, 311 NLRB 184, 186 (1993) (Merely because one corporation is wholly-owned by another does not, of itself, cause the parent and subsidiary to constitute a single employer under the NLRA)(Doc. 31, p. 44). The evidence, that was relied on by *ArrMaz* to establish the single-employer relationship, was adduced months *after* the Union signed the SEA on February 14, 2020, during the late September-early October, 2020 hearings. *ArrMaz* cites to no evidence in the Record that the Union was aware of the information used to establish such a relationship *when it signed the SEA*.

was no discussion between the Union and *ArrMaz* about *AMP Trucking*; and the Union did not intend to include any *AMP* employees in the unit. (Tr. 83 and 86)(Doc. 18, pp. 83 and 86). In fact, without extrinsic evidence of single-employer relationship with *AMP Trucking* – which is not relevant here – *ArrMaz* would have no argument in this case.[8]

While *ArrMaz* argues that the Union's initial naming of the ultimate, apparent parent of *ArrMaz* – Arkema – in the Union's election Petition somehow supports an interpretation of the SEA to include *AMP* employees in the unit (Doc. 36, p. 19), the Union strongly disagrees. If anything, going from naming the ultimate parent down to naming *only* a specific subsidiary, or affiliate, of Arkema reflects an intent to

---

[8]The existence of a single-employer relationship is not relevant, here, since the parties to the SEA may mutually agree to a unit, that excludes *AMP* employees, so long as such a unit does not violate the NLRA. (Doc. 31, p. 36). No one has suggested that such a unit would, nor does it, violate that Act. The Board's function, then, in such cases is to enforce the contract between the company and union, *i.e.,* the SEA, even if the Board would not, initially, on its own have established such a unit. (Doc. 31, pp. 33-34, 36-37). *See, White Cloud Products, Inc.,* 214 NLRB 516, 517 (1974).

Nevertheless, *ArrMaz* has not timely challenged the NLRB Regional Director's finding that the *AMP Trucking* employees do *not* share a sufficient community-of-interest with the *ArrMaz* employees so as to *require* their inclusion (over the Union's objections) in the proposed unit, as would be required, if this had been a litigated, rather than a, stipulated unit. *American Steel Construction, Inc*, 372 NLRB No. 23 (2022) (Doc. 31, p. 32).

- 11 -

minimize the scope of the entities covered by the proposed unit, not include an unnamed apparent subsidiary's employees in the unit, *that didn't even sign the SEA*!

*ArrMaz*'s argument, that this Court give little deference to the NLRB's interpretation is undermined by its own position. *ArrMaz* must rely on extrinsic evidence of a single-employer relationship; "evidence" outside the Record of who drafted the SEA; and "evidence" outside the Record of what the Union did, or did not do, after receiving the company's proposed voter's list, in order to argue for its interpretation.  As such, that interpretation becomes a matter involving a factual, not legal, or at least a mixed factual-legal issue.  As such, this Court should grant significant deference to the Board's interpretation, even if extrinsic evidence is considered.

C. **_ArrMaz_ not only speculates what the Union did between signing the SEA, but makes false, unsupported assertions about the Union's actions**.

In a strained effort to argue that the SEA should have been interpreted such that both parties intended to include the two challenged *AMP Trucking* employees in the proposed unit, *ArrMaz* argues – again without citation to, or support in, the Record – that *it* knew (apparently without disclosure to the Union) what *its* relationship was with *AMP Trucking*, *i.e.*, a single-employer relationship, when *it* signed the SEA.  *ArrMaz*'s subjective intent, however, is at odds with the SEA and cannot be given recognition.  *White Cloud, supra* at 517.  In the absence of evidence, that the Union knew about such a relationship, *when the Union signed the SEA*, there

is no basis to argue that both parties mutually intended to include some *AMP* employees. Curiously, *ArrMaz* claims, that *its* (apparently silent, subjective) intent was "clear" and "unequivocal" to include the two *AMP* employees. *ArrMaz*, rather than citing to any evidence to show similar clear and unequivocal intent by the Union, seems to somewhat back off of its claim of mutual intent to include, suggesting that the Union "proceeded more elusively," based on not only mere speculation, but claims contradicted by unrebutted evidence in the Record, that the Union did *not* so intend. (Doc. 18, pp. 83-86).

*ArrMaz* not only again engages in speculation about the Union's intentions and actions between the signing of the SEA and the election (Doc. 35, pp. 25-26), it suggests that the Union did little, or nothing, during that time period to raise concerns about *ArrMaz* adding the two *AMP Trucking* employees to the voting list! (Doc. 36, pp. 25-27). The Record shows otherwise. Unrebutted evidence shows that, as soon as the Union received the voter list from *ArrMaz* shortly after the SEA was executed, the Union called the Board agent about the two *AMP* employees. (Tr. 83, 86)(Doc. 18, pp. 83 and 86) and it timely challenged their ballots, as required, on election day. (Doc. 33, p. 40n.7).

# **CONCLUSION**

Both the Union and the Board have established, with recent support from the D.C. Circuit in *Longmont II, supra*, that the Board's Order, following severance from it of the "make-whole" issue, is sufficiently final to invoke this Court's appellate jurisdiction. Both have shown that the contractual Stipulated Election Agreement is clear and unambiguous, and that the Board's interpretation is more than supportable, even if extrinsic evidence is considered, particularly since no other company's employees were clearly identified as being intended to, or can, be included in the proposed unit. Further, the NLRB Regional Director's finding that the ***AMP Trucking*** employees do not share a community-of-interest with the ***ArrMaz*** employees sufficient to *require* their inclusion in the unit is a further basis to dismiss ***ArrMaz***'s position. *American Steel Construction, Inc., supra* (Doc. 18, p. 1655). Consequently, the Board correctly sustained the Union's objections to counting the challenged ballots of the ***AMP Trucking*** employees.

One of the purposes of providing for a stipulated election procedure is to expedite the process. Here, ***ArrMaz*** has used (or misused) that procedure to unnecessarily lengthen and delay the effectuation of the Union's March 12-13, 2020, election victory – more than 2 ½ years ago! The SEA was clear: Only employees of the named employer, ***ArrMaz***, were to be included in the proposed unit. ***ArrMaz*** could have chosen, instead, to litigate its single-employer and community-of-interest

positions, rather than enter into the SEA. It didn't. It should be held to its contractual bargain. There should be no further delay in enforcing the unit employees' bargaining rights.

For the reasons stated above and those stated in the Union's and NLRB's prior briefs, the Order should be promptly enforced.

Dated: <u>October 2, 2023</u>.

Respectfully submitted,

<u>*s/A. Randall Vehar*</u>
A. Randall Vehar, (OH Bar 0008177)
    (EDS/Bar #000017927)
UFCW Assistant General Counsel/
    Counsel for ICWUC
ICWUC/UFCW Legal Dept., 6th Floor
1655 W. Market Street
Akron, OH 44313
330/926-1444 Ext. 115
330/926-0950 Fax
330/327-9002 Cell
rvehar@ufcw.org
rvehar@icwuc.org (alt. email)

***Counsel for International Chemical Workers Union Council of the United Food & Commercial Workers***

# CERTIFICATE OF COMPLIANCE

1.  This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B)(ii) because the brief contains <u>3,681</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Times New Roman 14-point font.


Dated: <u>October 2, 2023</u>.



/s/*Randall Vehar*
Randall Vehar, Esq. (OH Bar #0008177)
UFCW Assistant General Counsel/
Counsel for ICWUC

## CERTIFICATE OF SERVICE

I hereby certify that on the 2<u>nd</u> day of October, 2023, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system. I further certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

<u>/s/*Randall Vehar*</u>
Randall Vehar, Esq. (OH Bar #0008177)
UFCW Assistant General Counsel/
    Counsel for ICWUC