# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

National Labor Relations Board,

*Petitioner and Cross-Respondent*

vs.

ArrMaz Products, Inc.,

*Respondent and Cross-Petitioner*

---

**RESPONDENT AND CROSS-PETITIONER
ARRMAZ PRODUCTS INC.'S CORRECTED MOTION TO REMAND TO
THE NATIONAL LABOR RELATIONS BOARD FOR ITS ISSUANCE OF A
FINAL ORDER, OR IN THE ALTERNATIVE TO STAY PROCEEDINGS**

---

On Application for Enforcement of an Order of
The National Labor Relations Board

---

Bernard J. Bobber
bernard.bobber@ogletree.com
Jesse R. Dill
jesse.dill@ogletree.com
David M. DeMaio
david.demaio@ogletree.com
Brian Hayes
brian.hayes@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI  53205

Telephone: 414-239-6400
Facsimile:  414-755-8289

Attorneys for Respondent ArrMaz Products, Inc.

_____

U.S. Court of Appeals Docket No. 23-10291
NLRB Case No. 372 NLRB No. 12

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

National Labor Relations Board,
*Petitioner,*

vs.

ArrMaz Products, Inc.,
*Respondent.*

## RESPONDENT'S CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

On Appeal From Order
Of The National Labor Relations Board

Bernard J. Bobber
bernard.bobber@ogletree.com
Jesse R. Dill
jesse.dill@ogletree.com
David M. DeMaio
david.demaio@ogletree.com
Brian Hayes
brian.hayes@ogletree.com

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI 53205

Telephone: 414-239-6400
Facsimile:  414-755-8289

Attorneys for Respondent ArrMaz Products Inc.

**RESPONDENT'S NOTICE REGARDING CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT**

Pursuant to 11th Cir. R. 26.1-2, Respondent ArrMaz Products Inc. hereby files its notice regarding Respondent's Certificate of Interested Persons and Corporate Disclosure Statement:

1.      Certificate of Interested Persons

The following constitute interested persons and entities in this case.

Arkema Delaware Inc. – Parent Corporation of Respondent. Pursuant to 11th Cir. R. 26.1-3(b), Respondent identifies that Arkema Delaware Inc. is wholly owned by Arkema Ameriques S.A.S, which in turn is wholly owned by Arkema S.A., which is publicly traded on the Euronext Paris stock exchange under stock symbol AKE.

Abruzzo, Jennifer A. – General Counsel, National Labor Relations Board

ArrMaz Products Inc. – Respondent

Bobber, Bernard J. – Counsel to Respondent

Burdick, Ruth E.  – Counsel to Petitioner

Cohen, David – Regional Director (Region 12), National Labor Relations Board

DeMaio, David M.  – Counsel to Respondent

Dheenan, Usha – Counsel to Petitioner

Dill, Jesse R. – Counsel to Respondent

Hayes, Brian – Counsel to Respondent

Heller, Joel A. – Counsel to Respondent

International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union – Charging Party and Proposed Intervenor

McFerran, Lauren – Chairman, National Labor Relations Board

National Labor Relations Board – Petitioner

Ogletree, Deakins, Nash, Smoak & Stewart, P.C. – Law Firm of Counsel to Respondent

Ring, John F. – former Member, National Labor Relations Board

Vehar, August Randall – Counsel to Charging Party and Proposed Intervenor International Chemical Workers Union Counsel of the United Food and Commercial Workers International Union

Wilcox, Gwynn A. – Member, National Labor Relations Board

2.      Corporate Disclosure Statement

The parent corporation of Respondent ArrMaz Products Inc. is Arkema Delaware Inc. Arkema Delaware Inc. is wholly owned by Arkema Ameriques S.A.S, which in turn is wholly owned by Arkema S.A., which is publicly traded on the Euronext Paris stock exchange the under stock symbol AKE.

Respectfully submitted this 24th day of September, 2024.

s/ Bernard J. Bobber

Bernard J. Bobber
WI Bar No. 1015499
bernard.bobber@ogletree.com
Jesse R. Dill
WI Bar No. 1061704
jesse.dill@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI  53205
Telephone: 414-239-6400
Facsimile:  414-755-8289

David M. DeMaio
Florida Bar No. 886513
david.demaio@ogletree.com
9130 South Dadeland Blvd.
Suite 1625
Miami, FL 33156
Telephone:  305-374-0506
Facsimile:  305-374-0456

Brian E. Hayes
*Admission pending*
Washington, D.C. Bar No. 203141
brian.hayes@ogletree.com
1909 K Street, N.W.
Suite 100
Washington, D.C. 20006
Telephone:  202-887-0855
Facsimile:  202-887-0866

Attorneys for Respondent ArrMaz Products
Inc.

## CORRECTED MOTION TO REMAND TO THE NATIONAL LABOR RELATIONS BOARD FOR ITS ISSUANCE OF A FINAL ORDER, OR IN THE ALTERNATIVE TO STAY PROCEEDINGS

Respondent ArrMaz Products, Inc. ("ArrMaz") requests that the Court remand this action to the National Labor Relations Board ("NLRB") with instructions that it not seek enforcement until the NLRB has issued a final order that disposes of all substantial issues in the case, or in the alternative, to stay.  In support of this motion, ArrMaz avers as follows:

1. In this case, the General Counsel of the NLRB seeks an order enforcing a ruling that Respondent ArrMaz refused to recognize the Union Intervenor as the duly certified collective bargaining representative of certain of ArrMaz's employees at its facility in Mulberry, Florida.

2. In its opening brief (Dkt. No. 24-1), and again in its reply brief (Dkt. No. 35), ArrMaz urged this Court to decline to assert jurisdiction over this action because the NLRB seeks enforcement of its non-final order, creating the probability of piecemeal appeals in this case.  The NLRB expressly reserved for its future ruling the request of its General Counsel to overturn settled law established 54 years ago in *Ex-Cell-O Corp.*, 185 NLRB 107 (1970).  That long-settled Board law prohibits a remedy of money damages in a "technical refusal to bargain" case like this one in which an employer utilizes the only

1

pathway created by Congress for it to seek court review of an improper certification of a union.

3. Briefing on the appellate jurisdictional issue, and on the merits of the part of the case that the Board has ruled on so far, is completed. Oral argument is set for November 19, 2024.

4. However, active litigation before the Board continues on the scope of remedy issue the Board reserved for its future ruling. On September 20, 2024, ArrMaz filed with the Board its Motion to Dismiss Reserved Remedial Issues. A copy of that filed motion is included here as Exhibit A, and it is incorporated by reference.

5. ArrMaz's new motion to the Board turns on the Supreme Court's recent holding in *SEC v. Jarkesy*, 144 S.Ct. 2117, 2128-29 (U.S. 2024). In short, the ground-breaking, concocted damages theory that the General Counsel asks the NLRB to adopt—requiring it to break from 54 years of established Board law on this precise issue—violates the Seventh Amendment. Regardless of what the General Counsel labels the argument, its requested consequential money damages remedy is a thinly-disguised common law claim for breach of a hypothetical labor contract the General Counsel urges the NLRB to create based merely on the agency's speculation and zero collective bargaining between the employer and the union.

6. A substantial Constitutional issue is now being litigated before the NLRB on the remedy issues it reserved in this case. Piecemeal appeals are a near certainty if the NLRB's current enforcement action on its partial ruling is allowed to proceed further in this Court now, even before the NLRB has ruled on the Constitutional and other substantive arguments presented below on the ground-breaking remedy issue it reserved for later ruling on some undetermined date. The avoidance of such piecemeal appeals is the purpose of the Court's rule allowing appeals only of final orders from the agency or district court.

7. The Board's disposition of some but not all issues in this case is simply not a "final order" sufficient to confer appellate jurisdiction consistent with the law or with the common sense and efficient use of this Court's resources. This is now especially clear as a new Constitutional issue in this case is being litigated currently before the NLRB.

8. The NLRB's enforcement action in this Court is premature given its choice to reserve for future ruling the critical issue of whether it will grant the General Counsel's request that it overturn long-standing law and create a new damages remedy necessarily premised on speculation about what would have happened in collective bargaining if any had occurred between the parties.

## CONCLUSION

To avoid further appellate litigation on a non-final order, and the probability of multiple appeals in this case, this Court should remand this case to the NLRB and prohibit any enforcement efforts until the NLRB has ruled on all substantial issues presented in the case, including ArrMaz's pending Motion to Dismiss on the grounds that the new remedy sought by the General Counsel would violate the Seventh Amendment. Alternatively, this Court should stay further proceedings until the NLRB issues a final ruling on the issues pending before it so that appeal of such ruling can be joined in this case.

Respectfully submitted this 24th day of September, 2024.

s/ Bernard J. Bobber
Bernard J. Bobber
WI Bar No. 1015499
bernard.bobber@ogletree.com
Jesse R. Dill
WI Bar No. 1061704
jesse.dill@ogletree.com
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
Pabst Boiler House
1243 North 10th Street
Suite 200
Milwaukee, WI 53205
Telephone: 414-239-6400
Facsimile: 414-755-8289

David M. DeMaio
Florida Bar No. 886513
david.demaio@ogletree.com
9130 South Dadeland Blvd.

Suite 1625
Miami, FL 33156
Telephone:  305-374-0506
Facsimile:  305-374-0456

Brian E. Hayes
Washington, D.C. Bar No. 203141
brian.hayes@ogletree.com
1909 K Street, N.W.
Suite 100
Washington, D.C. 20006
Telephone:  202-887-0855
Facsimile:  202-887-0866

Attorneys for Respondent ArrMaz Products, Inc.

**UNITED STATES OF AMERICA**
**BEFORE THE NATIONAL LABOR RELATIONS BOARD**

---

ARRMAZ PRODUCTS, INC.

    **and**                                   **Case 12-CA-294086**

**INTERNATIONAL CHEMICAL WORKERS**
**UNION COUNCIL OF THE UNITED FOOD**
**AND COMMERCIAL WORKERS**
**INTERNATIONAL UNION, AFL-CIO, CLC**

---

**ARRMAZ PRODUCTS, INC.**
**MOTION TO DISMISS RESERVED REMEDIAL ISSUES**

---

### I.    <u>Introduction</u>

Pursuant to section 102.24 of the National Labor Relations Board's ("NLRB" or "Board") Rules and Regulations, Respondent ArrMaz Products, Inc. ("ArrMaz" or "Respondent") files this Motion to Dismiss Reserved Remedial Issues. Under the recent decision issued by the Supreme Court in *SEC v. Jarkesy*, 144 S.Ct. 2117 (U.S. 2024) ("*Jarkesy*"), the NLRB lacks the authority to impose the new remedy sought by the General Counsel in this test of certification case.

*Jarkesy* compels the rejection of the General Counsel's improper efforts to create a novel remedy of compensation calculated on the basis of a nonexistent contract the NLRB hypothesizes would have applied to employees if the parties had engaged in bargaining, rather than completing the statutory appeal process on a challenge the certification. The General Counsel further proposes the NLRB should determine the amount of this compensatory remedy by conducting quantitative and qualitative analysis of "comparator" collective bargaining agreements. Thus, while the General Counsel attempts to loosely disguise her proposed new remedy as "make-whole" relief—typically understood as returning the injured party to a *status quo* ante—her proposed methodology for determining the amount of such "relief" is not based on any status quo that has ever existed in

1



reality.  Rather, this novel remedy is a thinly-disguised common law claim for consequential damages alleged to result from a breach of a contract – or, put another way, a claim for expectation damages and alleged "lost opportunity" and/or "lost profits" flowing from a breach of the employer's duty to bargain with the union, which the General Counsel proposes should be valued on the basis of what amounts to the terms of a hypothetical collective bargaining agreement.

As explained herein, under the Seventh Amendment to the U.S. Constitution, the Board lacks the authority to grant the remedy the General Counsel pursues, because Respondent is entitled to a jury trial under *Jarkesy* before the desired "consequential damages" sought by the General Counsel could properly be imposed.  ArrMaz therefore respectfully requests the Board to grant Respondent's Motion to Dismiss the General Counsel's untenable remedial request.

## II.  *Jarkesy* **and the Seventh Amendment**

The Seventh Amendment creates a right to a jury trial for controversies cognizable at common law.  The Supreme Court has held:

> [T]he Seventh Amendment guarantees that in "[s]uits at common law, ... the right of trial by jury shall be preserved."  In construing this language, we have noted that the right is not limited to the "common-law forms of action recognized" when the Seventh Amendment was ratified. As Justice Story explained, the Framers used the term "common law" in the Amendment "in contradistinction to equity, and admiralty, and maritime jurisprudence." The Amendment therefore "embrace[s] all suits which are not of equity or admiralty jurisdiction, whatever may be the peculiar form which they may assume."

> The Seventh Amendment extends to a particular statutory claim if the claim is "legal in nature." […] [W]hether that claim is statutory is immaterial to this analysis. […] To determine whether a suit is legal in nature, we directed courts to consider the cause of action and the remedy it provides. Since some causes of action sound in both law and equity, we concluded that the remedy was the "more important" consideration. […]

*SEC v. Jarkesy*, 144 S.Ct. 2117, 2128-29 (U.S. 2024).

Thus, as the Supreme Court made clear, the Constitutional right to a jury trial applies to all common law claims, "whatever may be the peculiar form which they may assume" – and the fact that a claim is "statutory" does not operate to shield it from application of the Seventh Amendment. "Congress cannot 'conjure away the Seventh Amendment by mandating that traditional legal claims be . . . taken to an administrative tribunal.' " *Id*. at 2136, citing *Granfinanciera, S.A. v Nordberg,* 492 U. S. 33, 52 (1989). "[W]hat matters is the substance of the suit, not where it is brought, who brings it, or how it is labeled." *Ibid*., citing *Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 69 n. 23 (1982). Rather, the "cause of action and the remedy it provides" drives the determination of whether there is a right to a jury trial. And, the Court in *Jarkesy* further held, "While monetary relief can be legal or equitable, money damages are the prototypical common law remedy." *Id*. at 2129.

Because the claim in *Jarkesy* was found to be legal in nature (*i.e.*, replicating a common law claim for fraud), the Seventh Amendment applied and prohibited the claim in the agency context. The same is true here, where the General Counsel's desired remedy replicates a common law claim for breach of contract, and seeks consequential damages under that theory. *See, e.g., AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1374 (11th Cir. 2021) ("The Seventh Amendment applies here because breach of contract is a traditional action at law, and a money judgment, even if based on restitution, is generally a legal remedy.") citing *Teamsters v. Terry*, 494 U.S. 558, 570 (1990) ("[A]n action for money damages was the traditional form of relief offered in the courts of law.")

To the extent the General Counsel may argue the claim herein is not for breach of a contract, but for breach of the duty to bargain a contract, that is a distinction without a difference and in no way material. First, as noted above, merely "re-labeling" the claim does not remove it from Seventh Amendment purview. *See Granfinanciera, supra.* More importantly, even if the

General Counsel's distinction were correct, and the claim sounded more in tort (*i.e.*, breach of a duty) the remedy sought is precisely the same in both instances. Thus, regardless of the theory, *both* theories seek consequential monetary damages as a traditional remedy at common law. *See*, *e.g.*, *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854). In both instances, an award of consequential damages requires a determination that the damage was "foreseeable," "a natural consequence of the act or omission," not "uncertain," "speculative" or hypothetical." Such determinations are ones of fact, and are quintessentially ones for a jury to decide under common law. *See*, *e.g.*, *Parsons v. Bedford*, 28 U.S. 433 (1890); *Curtis v. Loether,* 415 U.S. 189 (U.S. 1974).

The General Counsel urges the Board to go beyond actual losses (there are none), and to instead provide a new remedy for speculative or supposed consequences of the technical refusal to bargain. This is not permitted. *Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (1984) ("[I]t remains a cardinal, albeit frequently unarticulated assumption, that a backpay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices."); *NLRB v. Coca-Cola Bottling Co. of Buffalo, Inc.*, 191 F.3d 316, 324 (2nd Cir. 1999) ("Because the policies of the Act are 'essentially remedial,' an award must compensate only for the injury actually suffered by the employees.") The General Counsel's remedy request that remains pending as reserved by the Board violates these principals and, per *Jarkesy*, the Seventh Amendment.[1]

---

[1] Moreover, the General Counsel's proposed remedy requires the Board to assume an agreement that the employer would have made but for the refusal to bargain. This this Board cannot do. *Capital Cleaning Contractors, Inc. v. NLRB*, 147 F.3d 999, 1010-1011 (D.C. Cir. 1998) ("[W]e reject the Board's implicit assumption that, if Capital had not violated §§ 8(a)(1) and (5) by unilaterally setting the initial terms of employment, then it would have agreed to the CBA into which its predecessor had entered. Neither the 'perfectly clear' exception in Burns nor the Board's corollary thereto for cases (such as this) in which the successor discriminates against union adherents requires that the successor agree to the terms of the CBA between the predecessor and the union; nor could they. By engaging in anti-union discrimination the successor loses only the right to set initial terms without first bargaining with the union; it does not lose the right to take an initial bargaining position with the union and to bargain hard from that point.") citing *H.K. Porter Co. v. NLRB*, 397 U.S. 99, 102 (1970).

### III.    The Legal Standard for Recovery of Consequential Damages Resulting from a Common Law Claim for Breach of Contract.

Under the common law, an "injured party" in a breach of contract case generally has a right to recover "damages based on his expectation interest," which include consequential damages caused by the other party's breach of the agreement. Restatement (Second) of Contracts § 347 (1981); *see also Penncro Associates, Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007) ("[C]onsequential damages refer to economic harm beyond the immediate scope of the contract.") Under the common law:

> Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. In some situations the sum awarded will do this adequately as, for example, where the injured party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated by damages based on that amount. In other situations the sum awarded cannot adequately compensate the injured party for his disappointed expectation as, for example, where a delay in performance has caused him to miss an invaluable opportunity. The measure of damages stated in this Section is subject to the agreement of the parties, as where they provide for liquidated damages (§ 356) or exclude liability for consequential damages.

Restatement (Second) of Contracts § 347 cmt. a (1981). (Internal citations omitted.) "Recovery can be had only for loss that would not have occurred but for the breach." Restatement (Second) of Contracts § 347 cmt. e (1981). As Williston has elaborated:

> Consequential damages are those damages that do not flow directly and immediately from the breach, but only from some of the consequences or results of the breach.
>
> Consequential damages include those damages that, although not an invariable result of every breach of this sort, were reasonably foreseeable or contemplated by the parties at the time the contract was entered into as a probable result of a breach. These, too, must

be proximately caused by the breach, and the difference is that they do not always follow a breach of this particular character. Thus, for example, although lost profits often result from a failure to deliver goods that have been contracted for, and therefore are proximately caused by the breach, they do not always flow from such a breach; whether they are recoverable in a particular case depends on whether they are the proximate result of the breach and whether they were foreseeable.

24 Williston on Contracts § 64:16 (4th ed.); *see also Cincinnati Development III, LLC v. Cincinnati Terrace Plaza, LLC*, 2023 WL 2487348 at *13 (6th Cir. 2023) ("Consequential damages are a special form of expectation damages that correspond not to the direct loss of the bargained-for promise but the foreseeable consequences that proximately result from the breach.")

**IV.** **The General Counsel's Demand for a New Compensatory Remedy Is Effectively a Common Law Claim for Consequential Damages Resulting from an Alleged Breach of a Hypothetical Contract.**

In its decision that issued on December 6, 2022, the Board held:

> [T]he General Counsel requests that we adopt a compensatory remedy requiring the Respondent to make its employees whole for the lost opportunity to bargain at the time and in the manner contemplated by the Act. To do so would require overruling *Ex-Cell-O Corp.*, 185 NLRB 107 (1970), and outlining a methodological framework for calculating such a remedy. The Board has decided to sever this issue and retain it for further consideration to expedite the issuance of this decision regarding the remaining issues in this case. The Board will issue a supplemental decision regarding a make-whole remedy at a later date.

*ArrMaz Products Inc.*, 372 NLRB No. 12, slip op. at 2 (2022). (Internal citations omitted.)

Tellingly, the General Counsel's proposed calculation of this purported "make-whole remedy" is entirely based on what amounts to the construction of a hypothetical collective bargaining agreement. Notwithstanding the General Counsel's incredible claims to the contrary, the General Counsel effectively seeks to have the NLRB determine the substantive terms of an agreement that the NLRB would effectively presume the parties would have reached, had the

employer chosen not to exercise its legal right to contest the union's certification according to the long-time, standard, and only, procedure available for that purpose.

As set forth in the General Counsel's "Motion to Transfer Case to the Board and for Summary Judgment" dated July 1, 2022[2], the proposed "methodology" for calculating the proposed new remedy would be based on a review of "a range of 'comparator' contracts," and a determination of "the average added value of the comparator contracts." (MSJ, p. 48.) The NLRB would then "use the comparator contracts as a yardstick" and award employees the difference between the compensation and benefits actually received during the relevant period, and the compensation and benefits employees would have received, had they been covered by a contract containing terms equivalent to the "average" of the referenced "comparator contracts." (MSJ, pp. 48-53.) As the General Counsel explains it:

> After the agency has estimated the value of the lost opportunity to bargain by calculating the average total compensation or average increase in total compensation employees could have expected to receive under the comparator collective-bargaining agreements, the Board would then be able to compare that figure to the actual compensation received by the employees during the relevant make-whole period. The amount of the make-whole award would simply be the difference between the two.

(MSJ, p. 53.)

The Board must reject the General Counsel's efforts to characterize this novel relief as a "make-whole" remedy "to compensate employees for the lost *opportunity* to engage in collective bargaining." (MSJ, p. 43. [Emphasis in original.]) Patently, the General Counsel's desired remedy is at its core a claim for consequential damages based on a theory that an employer must be forced to "compensate" employees for "breaching" the terms of an approximation of a collective bargaining agreement, which the General Counsel urges the Board to effectively conclude would

---

[2] Referenced herein as "MSJ."

have applied to the affected employees, had the employer bargained with the union instead of testing the NLRB's certification. This is simply a claim for consequential damages based on a common law breach of contract theory. The Board should look past the General Counsel's sophistry, and see her requested remedy for what it actually is. Indeed, the General Counsel's request is so far out of bounds that for 54 years, the Board has left undisturbed the holding in *Ex-Cell-O Corp.* prohibiting this very thing. And now, under *Jarkesy*, the Board should also conclude that such relief cannot be granted by the NLRB without violating Respondent's right to a jury trial under the Seventh Amendment.

## V. Granting the General Counsel's Proposed Remedy Would Violate Respondent's Rights Under the Seventh Amendment.

As explained above, the General Counsel's proposed remedy that remains pending before the Board indisputably presumes employees would have received the benefit of some amalgamation of a collective bargaining agreement. Her proposed "make-whole relief" would have the Board compel the employer to compensate employees for an effective "breach" of this hypothetical contract. *Jarkesy* makes clear that the Board has no authority to override an employer's Seventh Amendment right to a jury trial for such a common law cause of action.

Notwithstanding the General Counsel's efforts to couch her desired new remedy as "make-whole relief" that would fall within the scope of the Board's remedial authority under the Act, the General Counsel's proposed remedy is nothing more than a thinly-disguised common law claim for consequential damages based on an alleged breach of contract. *See Ex-Cell-O Corp.*, 185 NLRB 107, 109-110 (1970) ("Our colleagues contend that a compensatory remedy is not the "writing of a contract" because it does not 'specify new or continuing terms of employment and does not prohibit changes in existing terms and conditions.' But there is no basis for such a remedy unless the Board finds, as a matter of fact, that a contract would have resulted from bargaining.")

The Supreme Court has made clear that the NLRB's remedial authority under Section 10(c) does not encompass the authority to order the consequential damages sought by the General Counsel in this case. *See, e.g., Sure-Tan, Inc. v. NLRB*, 467 U.S. 883, 900 (U.S. 1984) ("[A] backpay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices.")

*Jarkesy* further establishes the Board's authority cannot extend to the imposition of the novel consequential damages urged by the General Counsel, where the proposed basis for determining those damages mirrors a common law claim for breach of contract. As boldly set forth in the General Counsel's MSJ, the proposed process for assessing and imposing these damages on an employer would indisputably require that the NLRB first construct a hypothetical collective bargaining agreement. (*See* MSJ, pp. 48-53.)

The NLRB would then effectively take the approach that by not bargaining with the union while testing its certification, the employer has deprived employees of the benefit of the hypothetical "bargain," such that the employer must be forced to compensate employees for its "breach." Given these facts, there is no merit to the General Counsel's disingenuous claims that this approach does not entail "inferring that the parties 'would have' agreed to such benefit" (MSJ, p. 52), because *that is exactly what this approach does.*

Notably, the General Counsel's proposed remedy ignores the legal reality that neither party to a collective bargaining relationship can be compelled to agree to any substantive terms. *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 45 (1937) ("The act does not compel agreements between employers and employees. It does not compel any agreement whatever. It does not prevent the employer 'from refusing to make a collective contract and hiring individuals on whatever terms' the employer 'may by unilateral action determine.' ") They can only be compelled to engage in a process of good-faith bargaining, which may result in an agreement or a valid impasse – *i.e.*,

the *absence* of an agreement. Yet the General Counsel would have the Board compel an employer to compensate employees based on substantive terms established by what amounts to a hypothetical collective bargaining agreement, to which the employer would have had no obligation to agree, all while denying the employer's Seventh Amendment rights in the process. This, *Jarkesy* makes clear, the Board cannot do.

## VI.    Conclusion

For all of these reasons, the Board lacks the authority to grant the General Counsel's desired new remedy. To the contrary, granting the proposed remedy would violate Respondent's Constitutional rights. As a result, ArrMaz respectfully requests the Board to dismiss the reserved remedial issues.

Dated this 20th day of September, 2024.

> Bernard J. Bobber
> WI State Bar No.  1015499
> Ogletree, Deakins, Nash, Smoak & Stewart
> Pabst Boiler House
> 1243 North 10th Street, Suite 210
> Milwaukee, WI  53205-2559
> Telephone:  414-239-6411 (Direct)
> Facsimile:  414-755-8289
> bernard.bobber@ogletree.com
>
> Brian E. Hayes
> Ogletree, Deakins, Nash, Smoak & Stewart
> 1909 K Street, N.W., Suite 1000
> Washington, DC 20006
> Telephone: 202-263-0261 (Direct)
> brian.hayes@ogletree.com
>
> **ATTORNEYS FOR RESPONDENT**
> **ARRMAZ PRODUCTS, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that I will serve a true and correct copy of the foregoing Motion to Dismiss Reserved Remedial Issues, via e-mail and U.S., on the below individuals. This mailing will occur on the next business day, Monday, September 23, 2024.

Jason Callaway, International Representative
International Chemical Workers Union
Council/UFCW Region 5
4243 Thomas Wood Lane
Winter Haven, FL 33880
jjcallaway@icwus.org

Randall Vehar, Esq., Assistant General Counsel
International Chemical Workers Union Council
Of the United Foods and Commercial Workers
Union, AFL-CIO
1655 West Market St., 6th Floor
Akron, OH 44313
rvehar@ufcw.org

David Cohen
Regional Director
National Labor Relations Board, Region 12
201 East Kennedy Boulevard, Suite 530
David.Cohen@nlrb.gov

Ruth E. Burdick
appellatecourt@nlrb.gov
Usha Dheenan
Usha.dheenan@nlrb.gov
Susan Lynn Kania
susan.kania@nlrb.gov
National Labor Relations Board
Division of Legal Counsel
1015 Half St. SE FL 4
Washington, DC 20003


*/s/ Evelyn J. Henschel*
Paralegal
Ogletree Deakins Nash Smoak & Stewart, P.C.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because the motion contains 743 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7).

2.      This motion complies with the typeface requirements of Fed. R. App. P. 27 and 11th Cir. R. 27-1 and the type style requirements of Fed. R. App. P. 27 and 11th Cir. R. 27-1 because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in Times New Roman 14 point font.

This 24th day of September, 2024.

*s/ Bernard J. Bobber*
Bernard J. Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products,
Inc.

## CERTIFICATE OF SERVICE

I certify that on September 24, 2024, Respondent and Cross Petitioner ArrMaz Products, Inc. electronically filed its CORRECTED MOTION TO REMAND TO THE NATIONAL LABOR RELATIONS BOARD FOR ITS ISSUANCE OF A FINAL ORDER, OR IN THE ALTERNATIVE TO STAY PROCEEDINGS with the Clerk of Court using the CM/ECF system, through which the following individuals received service:

Ruth E. Burdick
Usha Dheenan
Susan Kania
Joel A. Heller
National Labor Relations Board
1015 Half Street SE Fl. 4
Washington, DC 20003

Randall Vehar
ICWUC/Union Legal Department
1655 W. Market Street Fl. 6
Akron, OH 55313

*/s/ Bernard J. Bobber*
Bernard Bobber
WI Bar No. 1015499
Attorney for Respondent ArrMaz Products, Inc.