[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-10291

_____

NATIONAL LABOR RELATIONS BOARD,

                                                                     Petitioner,

INTERNATIONAL CHEMICAL WORKERS UNION COUNCIL
OF THE UNITED FOOD AND
COMMERCIAL WORKERS INTERNATIONAL UNION,

                                                                     Intervenor,

*versus*

ARRMAZ PRODUCTS INC.,

                                                                     Respondent.

_____

Application for Enforcement of a Decision of the
National Labor Relations Board
Agency No. 12-CA-294086

_____

Before WILSON, BRASHER, and HULL, Circuit Judges.

HULL, Circuit Judge:

The International Chemical Workers Union Council of the United Food and Commercial Workers Union, AFL-CIO (the "Union") and ArrMaz Products, Inc. ("ArrMaz"), a specialty chemical manufacturer, entered into a stipulated election agreement to govern an election to decide whether the Union would be the collective bargaining representative of the employees of ArrMaz. On the day of the representation election, the Union challenged two ballots because they were filed by employees of AMP Trucking, Inc. ("AMP"), a separate company but a wholly owned subsidiary of ArrMaz. The two disputed AMP ballots were not counted, and the Union won the election by a 20 to 18 vote.

In its certification order, the National Labor Relations Board (the "Board") sustained the Union's challenge to the two disputed AMP employee ballots and certified the Union as the bargaining representative of ArrMaz's employees. The Board found that under the stipulated election agreement between ArrMaz and the Union, only ArrMaz's employees—and not AMP's employees— were eligible to vote in the election.

Despite the certification order, ArrMaz refused to bargain. In a second order, the Board ordered ArrMaz to bargain with the Union. The Board severed and retained for further consideration the issue of whether to require ArrMaz to compensate its employees for the lost opportunity to engage in collective bargaining during the pendency of the post-election proceedings.

The Board now applies for enforcement of its orders, and ArrMaz cross-petitions for review.

After careful review, and with the benefit of oral argument, we grant the Board's application for enforcement and deny ArrMaz's petition for review. As a threshold matter, we have jurisdiction to review the Board's orders because the Board consummated its decisionmaking process on the validity of the Union's certification and ArrMaz's duty to bargain with the Union. On the merits, we agree with the Board that the parties' stipulated election agreement plainly and unambiguously provided that only ArrMaz employees were eligible to vote. As a result, AMP's employees were not eligible to vote, and the Board properly sustained the Union's challenge.

## I. BACKGROUND

### A. ArrMaz

ArrMaz adopted its current name, ArrMaz Products, Inc., in July 2020. Before the election at issue, ArrMaz's legal name was "Arr-Maz Products, Limited Partnership," which was the name used in the election agreement with the Union.

At all relevant times, ArrMaz manufactured specialty chemicals used in the mining, fertilizer, phosphate, industrial ammonium nitrate, asphalt, and oil and gas industries. ArrMaz's business includes sourcing raw materials, developing formulas, producing chemicals, and delivering those chemicals to its customers. ArrMaz employs about 18 Production Operators, 4 Sulfonation Operators, 1 Railside Operator, 3 Small Blend and Warehouse Operators, 6 Plant Maintenance Technicians, 1 Facilities Maintenance Technician, and 5 or 6 Electrical and Instrumentation Technicians. ArrMaz previously employed a Parts Clerk, but that position is now vacant.

ArrMaz operates out of a facility in Mulberry, Florida. The Mulberry facility consists of 18 buildings, rail lines, parking areas, and a single entrance/exit point that is used by everyone who enters or exits the facility. The facility houses all of ArrMaz's operations, including administration, research and development, information technology, laboratories, production, and distribution.

**B. AMP**

As mentioned above, AMP is ArrMaz's wholly owned subsidiary. AMP has a private truck fleet that transports and delivers ArrMaz's chemicals. AMP was created as an entity separate from ArrMaz for liability purposes—to protect ArrMaz from liability related to transportation of its chemicals over public roads.

23-10291               Opinion of the Court                        5

AMP operates out of a truck shop within the Mulberry facility. AMP delivers finished chemicals from the Mulberry facility to ArrMaz's customers, transports raw materials to the Mulberry facility, and inspects and maintains a fleet of trucks, trailers, and other heavy equipment.

AMP owns about 65 trailers, some of which are used to store raw, intermediate, and finished chemical products. AMP also owns and operates several trucks, but the trucks bear decals identifying them as ArrMaz. AMP's trailers also bear ArrMaz decals so customers will know where the trailer is coming from.

AMP employs a supervisor, nine drivers, and two maintenance technicians. Jesse Hargadine and Robert Strickland are the two maintenance technicians. Hargadine and Strickland are responsible for maintaining and repairing AMP's trucks, trailers, and other heavy equipment. Like all AMP employees, Hargadine and Strickland work in the truck shop at the Mulberry facility.

AMP does not have any of its own customers; AMP transports only ArrMaz's products and materials. ArrMaz fully funds AMP's operations and files a consolidated federal tax return that includes AMP. ArrMaz and AMP do not bill each other for services rendered. AMP's accounting, human resources, and safety functions are performed by ArrMaz.

### C. Arkema

ArrMaz and AMP are both part of a larger five-level corporate structure that is principally owned by Arkema Delaware, Inc. ("Arkema"). ArrMaz and AMP are entirely responsible for the day-to-day operations of the whole enterprise and are the only companies with employees.

### D. The Stipulated Election Agreement

On February 10, 2020, the Union filed with the Board a petition for a representation election. The Union sought to represent a bargaining unit of "Production, Warehouse, Rail Side Workers, Maintenance & Electrical Workers" at the Mulberry facility.

On February 18, 2020, ArrMaz and the Union entered into a stipulated election agreement (the "Agreement"). The Agreement detailed the procedure for the representation election and defined which employees would be included in the collective bargaining unit.

The Agreement was between and executed by only ArrMaz as the employer and the Union. Specifically, the Agreement listed (1) "Arr-Maz Products, Limited Partnership" at the top of the document next to the case number, and (2) "Arr-Maz Products, Limited Partnership" at the end of the document on the signature line under which "(Employer)" is typed. Neither Arkema nor AMP were referenced anywhere in the Agreement.

The Agreement contained a "Commerce" section, which similarly referred to only ArrMaz as the "Employer" as follows:

> Arr-Maz Products, Limited Partnership is a Delaware limited partnership with an office and place of business located at 4800 State Road 60 E, Mulberry, Florida, and is engaged in the business of manufacturing and providing specialty chemical additives to the fertilizer manufacturing, mining, and asphalt paving industries. During the past 12 month period, in conducting these business operations described above, the Employer purchased and received at its Florida facilities goods valued in excess of $50,000 directly from points located outside the State of Florida.

The Agreement defined the "Unit and Eligible Voters" as those persons "employed by the Employer" as follows:

> **Included**: All full-time and regular part-time production operators, sulfonation operators, railside operators, small blends and warehouse operators, maintenance technicians, electrical and instrumentation technicians, custodians, and parts clerks *employed by the Employer* at its Mulberry, Florida facility.
>
> **Excluded**: All other employees, professional laboratory technicians, quality assurance laboratory technicians, engineers, office clerical employees, managers, guards, and supervisors as defined in the Act.

(emphasis added). The Agreement also provided that employees in the "Included" unit who were employed during the payroll period ending February 16, 2020 were eligible to vote in the representation election.

**E. The 2020 Election**

The Board administered the representation election on March 12 and 13, 2020. Hargadine and Strickland, the two AMP maintenance technicians, attempted to vote in the election, but the Union challenged their ballots. The Union contended that Hargadine and Strickland were not eligible to vote because they were employed by AMP, not ArrMaz.

Because of the Union's challenge, Hargadine's and Strickland's ballots were not counted. Of the remaining eligible voters, 20 employees voted in favor of the Union, 18 employees voted against the Union, and 2 employees abstained.

For the Union to be certified as a collective bargaining representative, a majority of the eligible employees choosing to vote needed to vote in favor of the Union. *See* 29 U.S.C. § 159(a); *Regal 8 Inn*, 222 NLRB 1258, 1259 (1976). Hargadine's and Strickland's ballots were therefore potentially determinative of the election outcome. With Hargadine's and Strickland's ballots excluded, the Union received a majority—20 out of 38—of the eligible votes. But if Hargadine's and Strickland's ballots counted and both voted against the Union, the vote would be 20 to 20, and the Union would not have a majority.

**F. Board Proceedings on the Union's Challenge**

The Board's Regional Director ordered a hearing on the Union's challenge to Hargadine's and Strickland's ballots. Following the hearing, a Hearing Officer issued a report sustaining the Union's challenge. In the report, the Hearing Officer concluded that ArrMaz was "the sole employer named in the Agreement and the evidence presented establishe[d] that Hargadine and Strickland [we]re employed by AMP, not [ArrMaz]." ArrMaz filed exceptions to the Hearing Officer's report.

Subsequently, the Regional Director upheld the Hearing Officer's decision. The Regional Director concluded that the Agreement was unambiguous and the parties did not intend to include Hargadine and Strickland in the bargaining unit. The Regional Director therefore certified the Union as the bargaining representative.

ArrMaz filed a request for the Board's review of the Regional Director's certification decision. The Board denied ArrMaz's request, stating that it raised no substantial issues warranting review. The Board agreed with the Regional Director that the Agreement "expressed the parties' intent in clear and unambiguous terms to exclude the two challenged employees."

After the Union's certification, ArrMaz refused to bargain with the Union. The Union filed a charge against ArrMaz with the

| 10 | Opinion of the Court | 23-10291 |

Board, and the Regional Director commenced an enforcement proceeding.[1]

The Board's General Counsel filed a combined motion to transfer the enforcement proceeding from an administrative law judge to the Board and for summary judgment. The General Counsel asked the Board to require ArrMaz to bargain with the Union in good faith. Under its long-standing *Ex-Cell-O Corp.* precedent, the Board lacked authority to order any compensatory remedies in enforcement proceedings for an employer's refusal to bargain. *Ex-Cell-O Corp.*, 185 NLRB 107, 108-10 (1970). Despite that, the General Counsel requested that the Board overrule its *Ex-Cell-O Corp.* precedent and provide a new compensatory remedy for ArrMaz's employees' lost opportunity to bargain.

The Board granted the General Counsel's motions to transfer and for summary judgment. The Board declined to reexamine the Union's certification and determined that ArrMaz unlawfully refused to bargain. The Board thus ordered ArrMaz to bargain with the Union.

---

[1] The Board's certification decision was not directly reviewable by this Court as a final order of the Board. *See Cooper/T. Smith, Inc. v. NLRB*, 177 F.3d 1259, 1261 n.1 (11th Cir. 1999). Thus, an employer who seeks judicial review of a certification decision must first refuse to bargain with the certified union. *See id.* The Union then files a charge with the Board, and the Board then will rule typically that the employer engaged in an unfair labor practice by refusing to bargain. The employer can then petition for judicial review of that subsequent Board order and challenge the certification decision. *See id.* That is what the employer ArrMaz did here.

The Board reserved ruling on the General Counsel's request to overrule its *Ex-Cell-O* precedent as to a compensatory remedy. The Board severed that issue and retained it for further consideration. The Board stated that it would issue a supplemental decision at a later time.

The Board timely applied for this Court's enforcement of the Board's order, and ArrMaz cross-petitioned for review.

## II. STANDARDS OF REVIEW

We review the Board's legal conclusions *de novo* and its factual findings for substantial evidence on the record as a whole. *Ridgewood Health Care Ctr. v. NLRB*, 8 F.4th 1263, 1274 (11th Cir. 2021). "Provided any inferences drawn from the record were plausible, this Court may not overturn the Board's determination even if it would make a different finding under a *de novo* review." *NLRB v. Contemporary Cars, Inc.*, 667 F.3d 1364, 1370 (11th Cir. 2012). "But this deferential standard is not merely a rubber stamp on agency decisionmaking." *Ridgewood*, 8 F.4th at 1275 (quotation marks and alteration omitted). We will not enforce a Board decision that bases its decision on facts not supported by the record, misconstrues or fails to consider relevant evidence, or fails to engage in reasoned decision-making. *Id.*

We review our jurisdiction *de novo*. *Allen v. AT&T Mobility Servs.*, 104 F.4th 212, 215 (11th Cir. 2024).

### III. JURISDICTION

Before reaching the merits of the Board's certification and enforcement orders, we must first assess our jurisdiction. ArrMaz argues that we lack jurisdiction to review them because the enforcement order was not a final order. ArrMaz asserts that the Board's enforcement order is not final because the Board severed and retained the issue of whether to overrule its long-standing *Ex-Cell-O* precedent precluding a compensatory remedy.

This Court has jurisdiction over petitions for enforcement and review of the Board's final orders. *See* 29 U.S.C. § 160(e), (f); *NLRB v. Imperial House Condo., Inc.*, 831 F.2d 999, 1002 (11th Cir. 1987). Two conditions must be satisfied for an agency action such as the Board's to be final and reviewable. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature." *Id.* (quotation marks and citation omitted). "And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Id.* at 178 (quotation marks omitted).

Whether a Board order that severs and retains a remedial issue is final is a question of first impression in this Circuit. Three of our sister circuits have answered the question, though, and all three held that the Board's severance of the *Ex-Cell-O* remedial issue "does not affect [the court's] jurisdiction to . . . adjudicate issues that the Board has resolved." *Longmont United Hosp. v. NLRB*, 70 F.4th 573, 578 (D.C. Cir. 2023); *see also NLRB v. Siren Retail Corp.*,

23-10291               Opinion of the Court                    13

99 F.4th 1118, 1123-24 (9th Cir. 2024) ("[W]e see no reason to conclude that severing the *Ex-Cell-O* issue from the other issues in the case renders the Board's decision nonfinal."); *NLRB v. United Scrap Metal PA, LLC*, 116 F.4th 194, 197 (3d Cir. 2024) ("[T]he orders represent the 'consummation of the agency's decisionmaking process' and are therefore both final and reviewable." (quoting *Bennett*, 520 U.S. at 178)).[2]

We agree with our sister circuits and conclude that the Board's enforcement order is final and reviewable. The Board's enforcement order is a "consummation" of the Board's decisionmaking process regarding the unfair labor practice charge against ArrMaz. *See Bennett*, 520 U.S. at 178. The Board's enforcement order makes clear that ArrMaz must immediately begin bargaining with the Union; the order is not "tentative or interlocutory" in nature. *Id.* The enforcement order determines ArrMaz's obligations and imposes prospective liabilities on ArrMaz "from which legal consequences will flow." *Id.* (quotation marks omitted).

Notably too, it is undisputed that the Board's *Ex-Cell-O* precedent provides that it lacks the authority to award a compensatory remedy. *See Ex-Cell-O*, 185 NLRB at 108-10. That rule has been followed for over 50 years. The hypothetical chance that the Board might someday overrule its precedent and provide

---

[2] The Third Circuit's opinion does not expressly reference the *Ex-Cell-O* issue, but the Board's order before the Third Circuit severed and retained the *Ex-Cell-O* issue, just as the Board's enforcement order here did.

a compensatory remedy—which the Board may never do—has no effect on the Board's decisions to certify the Union and to order ArrMaz to bargain with the Union. The compensatory remedy "is not linked—inextricably or otherwise—with the order to recognize and bargain with the Union." *Siren Retail Corp.*, 99 F.4th at 1123 (quotation marks omitted). The severed *Ex-Cell-O* issue "is not intertwined" with the Board's findings about the Union's certification, so our review of those findings "will not disrupt the orderly process of adjudication." *Stephens Media, LLC v. NLRB*, 677 F.3d 1241, 1250 (D.C. Cir. 2012) (quotation marks omitted).

For these reasons, the Board's enforcement order for ArrMaz to bargain with the Union is final and reviewable. *See Bennett*, 520 U.S. at 178. We have jurisdiction over the Board's application for enforcement and ArrMaz's cross-petition for review. *See* 29 U.S.C. § 160(e), (f).

## IV. BALLOT CHALLENGE

The Board issued its enforcement order after it sustained the Union's ballot challenge and the Regional Director's certification of the Union. The Union's ballot challenge is the heart of the dispute here.

In cases involving stipulated election agreements, the Board employs a three-step process to evaluate ballot challenges. *Caesar's Tahoe*, 337 NLRB 1096, 1097 (2002); *accord Associated Milk Producers v. NLRB*, 193 F.3d 539, 543 (D.C. Cir. 1999). The Board first determines whether the stipulation is ambiguous. *Caesar's Tahoe*, 337 NLRB at 1097. "If the objective intent of the parties is

expressed in clear and unambiguous terms in the stipulation, the Board simply enforces the agreement." *Id.*  Only if the stipulation is ambiguous does the Board proceed beyond the first step.  *Id.*

In its order certifying the Union, the Board determined that the Agreement "expressed the parties' intent in clear and unambiguous terms to exclude" Hargadine and Strickland from the bargaining unit, rendering them ineligible to vote in the election.  The Board thus found it unnecessary to proceed past the first step of its three-step test.

We agree with the Board that the Agreement unambiguously included only ArrMaz employees within the bargaining unit.  First, the Agreement clearly defines ArrMaz, not AMP, as the "Employer."  The Agreement listed Arr-Maz Products, Limited Partnership, ArrMaz's name at the time, above the signature line for the "(Employer)."  The Agreement also listed ArrMaz's name at the top of the document next to the case number.  AMP, on the other hand, was not mentioned anywhere in the Agreement.

Second, the Agreement's Commerce section also signaled that ArrMaz was the "Employer."  The Commerce section stated that ArrMaz was a limited partnership located in Mulberry, Florida.  The next sentence in the Commerce section stated that the "Employer" purchased and received goods from outside the state of Florida.  The reference to ArrMaz in the preceding sentence implies that ArrMaz is the "Employer" who purchased and received goods.

Third, the Agreement defined as "Included" in the bargaining unit and among the eligible voters only those employees who were "employed by the Employer at its Mulberry, Florida facility." Hargadine and Strickland are not "employed by the Employer" because they are maintenance technicians for AMP, not ArrMaz.

Interestingly, ArrMaz primarily contends that the Agreement *unambiguously includes* Hargadine and Strickland in the bargaining unit because the Agreement lists "maintenance technicians" as "Included" in the bargaining unit and Hargadine and Strickland were maintenance technicians. ArrMaz's argument ignores that the Agreement also provided that only employees who are "employed *by the Employer*" are "Included" (emphasis added). As discussed above, "Employer" is a defined term in the Agreement—and it is defined as ArrMaz, not AMP. Thus, to be included in the bargaining unit, the "maintenance technicians" had to be "employed by [ArrMaz]." Hargadine and Strickland were employed by AMP, not ArrMaz.

Moreover, ArrMaz itself had maintenance technicians. The inclusion of "maintenance technicians" in the bargaining unit is best read as a reference to the six Plant Maintenance Technicians and the Facilities Maintenance Technician employed by ArrMaz. This reading is further strengthened by the fact that the Agreement lists the other job titles of ArrMaz's non-supervisory employees as "Included." Read in this context, the Agreement's inclusion of "maintenance technicians" is intended to include ArrMaz's Plant

and Facilities Maintenance Technicians, not AMP's Hargadine and Strickland. The Agreement's reference to "maintenance technicians" does not create an ambiguity as to whether Hargadine and Strickland were included in the bargaining unit.

ArrMaz also relies on the Hearing Officer's conclusion that ArrMaz and AMP were "a single integrated enterprise." To be sure, no party disputes that ArrMaz and AMP were and are "integrated." But that does not mean the parties intended the Agreement to encompass *both* ArrMaz and AMP employees. As discussed above, the clear and unambiguous terms of the Agreement provide that ArrMaz is the "Employer" and only employees of the "Employer" are "Included."

Our reasoning is supported by the First Circuit's decision in *NLRB v. Barker Steel Co.*, 800 F.2d 284 (1st Cir. 1986). Like this case, *Barker Steel* involved a challenge to the ballot of an employee of a subsidiary trucking company that, together with a parent company, formed a "single employer." *Id.* at 286-87. The First Circuit held that the employee was not eligible to vote because the parties' stipulated election agreement defined only the parent company as the "Employer." *Id.* at 287. The First Circuit noted that if the parties intended to include the trucking company's employees in the bargaining unit, "*they could easily have specified that additional entity as an employer or as a joint employer.*" *Id.* (emphasis added). But because no mention of the trucking company was ever made, "[t]he joint employer issue [wa]s a red herring" and "ha[d] no relevance to a determination regarding the *intention* of the

18              Opinion of the Court              23-10291

parties in signing the consent agreement." *Id.* So too here. The parties could have listed AMP as an additional entity or a joint employer in the Agreement, but they did not do so.

ArrMaz points to the Commerce section's statements that it is "engaged in the business of manufacturing *and providing*" chemicals and that it "purchased *and received*" goods from outside of Florida" (emphasis added). ArrMaz argues that because AMP is the entity responsible for "providing" and "receiving" its products and goods, the parties must have intended the Agreement to include both ArrMaz and AMP as employers.

However, the Commerce section does not state, much less require, that ArrMaz must use its wholly-owned subsidiary to "provid[e]" and "receive[]" goods. In order to be "engaged in the business" of "providing" products and "receiving" goods, ArrMaz does not have to operate and use its own trucking company. It could, for example, hire an independent trucking company to handle those tasks. The Commerce section's reference to "providing" and "receiving" goods therefore does not create an ambiguity regarding whether ArrMaz is the "Employer" under the Agreement.

As a final, alternative argument, ArrMaz contends that the case should be remanded for another election process with a clearly established voting unit. ArrMaz suggests that the parties "never reached a mutual understanding" on the issue of whether Hargadine and Strickland were included in the bargaining unit and eligible to vote.

As both the Union and the Board point out, ArrMaz never raised any challenge to the parties' mutual understanding before the Board, nor did it ask the Board to order a new election process. "No objection that has not been urged before the Board . . . shall be considered by the court [of appeals], unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances." 29 U.S.C. § 160(e). ArrMaz has not identified any "extraordinary circumstances" that excuse its failure to raise these points below, so we decline to address them now.[3]

## V. CONCLUSION

For the foregoing reasons, we hold that (1) this Court has jurisdiction; and (2) the Board properly certified the Union and ordered ArrMaz to bargain with the Union.[4] Accordingly, we grant the Board's application for enforcement and deny ArrMaz's cross-petition for review.

**APPLICATION FOR ENFORCEMENT GRANTED; CROSS-PETITION FOR REVIEW DENIED.**

---

[3] We also do not address ArrMaz's arguments that are based on extrinsic evidence such as the contents of the Union's election petition and the pre-election voter list. We conclude, as the Board did, that the Agreement is unambiguous, and therefore we simply enforce the Agreement under the first step of the three-step analysis. *See Caesar's Tahoe*, 337 NLRB at 1097.

[4] ArrMaz's motion to remand to the Board or for a stay of this proceeding is DENIED.